IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 06-547 (GMS) |
| American International Group, Inc.; AIG Retirement Services, Inc.; 21st Century Insurance Group; 21st Century Insurance Company; 21st Century Casualty Company; AIG Marketing, Inc.; AIG SunAmerica Asset Management Corp.; AIG Annuity Insurance Company; AIG Federal Savings Bank; The United States Life Insurance Company in the City of New York; AIG Life Insurance Company; American General Assurance Company; American General Indemnity Company; American General Life and Accident Insurance Company; American General Life Insurance Company; The Variable Annuity Life Insurance Company; VALIC Financial Advisors, Inc.; VALIC Retirement Services Company; National City Corporation; National City Bank; National City Bank of Indiana; Wilmington Trust Company; Wilmington Brokerage Services Company; Aquila, Inc.; DHL Holdings (USA) Inc.; DHL Express (USA), Inc.; Sky Courier, Inc.; CIGNA Corporation; CIGNA Health Corporation; CIGNA HealthCare of Delaware, Inc.; Tel-Drug, Inc.; Tel-Drug of Pennsylvania, L.L.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Jury Demanded |
| Defendants. | ) ) | |

**THE CIGNA DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S ORIGINAL COMPLAINT**

Defendants CIGNA Corporation, CIGNA Health Corporation, CIGNA HealthCare of

Delaware, Inc., Tel-Drug, Inc., and Tel-Drug of Pennsylvania, L.L.C. (collectively "CIGNA

Defendants") respectfully submit this answer and affirmative defenses to the original complaint

filed by Ronald A. Katz Technology Licensing, L.P. ("Katz"), as well as their counterclaims against Katz, and state as follows:

## THE PARTIES

1.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 1, which statement has the effect of a denial of these allegations.

2.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 2, which statement has the effect of a denial of these allegations.

3.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 3, which statement has the effect of a denial of these allegations.

4.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 4, which statement has the effect of a denial of these allegations.

5.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 5, which statement has the effect of a denial of these allegations.

6.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 6, which statement has the effect of a denial of these allegations.

7.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 7, which statement has the effect of a denial of these allegations.

8.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 8, which statement has the effect of a denial of these allegations.

9.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 9, which statement has the effect of a denial of these allegations.

10.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 10, which statement has the effect of a denial of these allegations.

11.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 11, which statement has the effect of a denial of these allegations.

12.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 12, which statement has the effect of a denial of these allegations.

13.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 13, which statement has the effect of a denial of these allegations.

14.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 14, which statement has the effect of a denial of these allegations.

15. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 15, which statement has the effect of a denial of these allegations.

16. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 16, which statement has the effect of a denial of these allegations.

17. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 17, which statement has the effect of a denial of these allegations.

18. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 18, which statement has the effect of a denial of these allegations.

19. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 19, which statement has the effect of a denial of these allegations.

20. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 20, which statement has the effect of a denial of these allegations.

21. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 21, which statement has the effect of a denial of these allegations.

22.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 22, which statement has the effect of a denial of these allegations.

23.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 23, which statement has the effect of a denial of these allegations.

24.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 24, which statement has the effect of a denial of these allegations.

25.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 25, which statement has the effect of a denial of these allegations.

26.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 26, which statement has the effect of a denial of these allegations.

27.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 27, which statement has the effect of a denial of these allegations.

28.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 28, which statement has the effect of a denial of these allegations.

29.    The CIGNA Defendants admit that CIGNA Corporation is a Delaware corporation with its principal place of business at Two Liberty Place, Philadelphia, Pennsylvania 19192.

30.    The CIGNA Defendants admit that CIGNA Health Corporation is (a) a Delaware corporation with its principal place of business at 900 Cottage Grove Road, Hartford, Connecticut 06152, and an indirect subsidiary of CIGNA Corporation.

31.    The CIGNA Defendants admit that CIGNA HealthCare of Delaware, Inc. is (a) a Delaware corporation with its principal place of business at 1777 Sentry Park West Gwynedd Hall, Suite 100, Blue Bell, Pennsylvania 19422, and an indirect subsidiary of CIGNA Corporation.

32.    The CIGNA Defendants admit that Tel-Drug, Inc. is a South Dakota corporation with its principal place of business at 4901 North Fourth Street, Sioux Falls, South Dakota 57104, and an indirect subsidiary of CIGNA Corporation.

33.    The CIGNA Defendants admit that Tel-Drug of Pennsylvania, L.L.C. is a Pennsylvania corporation with its principal place of business at 206 Welsh Road, Horsham, Pennsylvania 19044, and an indirect subsidiary of CIGNA Corporation.

## JURISDICTION AND VENUE

34.    The CIGNA Defendants admit that Katz purports to bring a civil action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.* The CIGNA Defendants do not contest this Court's jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

35.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 35, which statement has the effect of a denial of these allegations.

36.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 36, which statement has the effect of a denial of these allegations.

37.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 37, which statement has the effect of a denial of these allegations.

38.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 38, which statement has the effect of a denial of these allegations.

39.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 39, which statement has the effect of a denial of these allegations.

40.    The CIGNA Defendants admit that CIGNA Corporation, CIGNA Health Corporation, and CIGNA HealthCare of Delaware, Inc. are Delaware corporations and have designated a registered agent in Delaware.  The CIGNA Defendants admit that Tel-Drug, Inc. and Tel-Drug of Pennsylvania, L.L.C. have designated a registered agent in Delaware.  The CIGNA Defendants deny the remainder of the allegations in paragraph 40, including a denial that the CIGNA Defendants are subject to personal jurisdiction in this Court.

41.    The CIGNA Defendants deny that venue in this judicial district under 28 U.S.C. §§ 1391(c) and 1400(b) is proper as to the CIGNA Defendants.  The CIGNA Defendants lack

sufficient knowledge or information regarding the other Defendants, which statement has the effect of a denial of these allegations.

42.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegation that Ronald A. Katz is the founder of Katz Technology Licensing, which statement has the effect of a denial of this allegation. The CIGNA Defendants deny all remaining allegations in paragraph 42.

43.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegation that Katz co-founded Telecredit, Inc., which statement has the effect of a denial of this allegation. The CIGNA Defendants deny all remaining allegations in paragraph 43.

44.    The CIGNA Defendants admit that Certegy is a public company traded on the New York Stock Exchange. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 44, which statement has the effect of a denial of these allegations.

45.    The CIGNA Defendants deny the allegations in paragraph 45.

46.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 46, which statement has the effect of a denial of these allegations.

47.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 47, which statement has the effect of a denial of these allegations.

48.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 48, which statement has the effect of a denial of these allegations.

49.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 49, which statement has the effect of a denial of these allegations.

50.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 50, which statement has the effect of a denial of these allegations.

51.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 51, which statement has the effect of a denial of these allegations.

52.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 52, which statement has the effect of a denial of these allegations.

53.    As to the allegations that are directed toward the CIGNA Defendants, the CIGNA Defendants admit that A2D, L.P. and CIGNA Corporation have had prior communications concerning the Katz patent portfolio, and that Katz filed this action without any notice, either oral or written to the CIGNA Defendants.  As to the remaining allegations that are directed toward the CIGNA Defendants, the CIGNA Defendants deny the allegations in paragraph 53. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 53, which statement has the effect of a denial of these allegations.

## THE ASSERTED PATENTS

54.     The CIGNA Defendants admit that, on December 20, 1988, U.S. Patent No. 4,792,968 ("the '968 patent") entitled "Statistical Analysis System For Use With Public Communication Facility" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 54, which statement has the effect of a denial of these allegations.

55.     The CIGNA Defendants admit that, on May 29, 1990, U.S. Patent No. 4,930,150 ("the '150 patent") entitled "Telephonic Interface Control System" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 55, which statement has the effect of a denial of these allegations.

56.     The CIGNA Defendants admit that, on July 7, 1992, U.S. Patent No. 5,128,984 ("the '984 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 56, which statement has the effect of a denial of these allegations.

57.     The CIGNA Defendants admit that, on October 5, 1993, U.S. Patent No. 5,251,252 ("the '252 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 57, which statement has the effect of a denial of these allegations.

58.     The CIGNA Defendants admit that, on September 27, 1994, U.S. Patent No. 5,351,285 ("the '285 patent") entitled "Multiple Format Telephonic Interface Control System" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information

to either admit or deny the truth of the remaining allegations in paragraph 58, which statement has the effect of a denial of these allegations.

59.     The CIGNA Defendants admit that, on November 4, 1997, U.S. Patent No. 5,684,863 ("the '863 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 59, which statement has the effect of a denial of these allegations.

60.     The CIGNA Defendants admit that, on July 28, 1998, U.S. Patent No. 5,787,156 ("the '156 patent") entitled "Telephonic-Interface Lottery System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 60, which statement has the effect of a denial of these allegations.

61.     The CIGNA Defendants admit that, on September 29, 1998, U.S. Patent No. 5,815,551 ("the '551 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 61, which statement has the effect of a denial of these allegations.

62.     The CIGNA Defendants admit that, on October 27, 1998, U.S. Patent No. 5,828,734 ("the '734 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 62, which statement has the effect of a denial of these allegations.

63.     The CIGNA Defendants admit that, on April 27, 1999, U.S. Patent No. 5,898,762 ("the '762 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 63, which statement has the effect of a denial of these allegations.

64.     The CIGNA Defendants admit that, on June 29, 1999, U.S. Patent No. 5,917,893 ("the '893 patent") entitled "Multiple Format Telephonic Interface Control System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 64, which statement has the effect of a denial of these allegations.

65.     The CIGNA Defendants admit that, on October 26, 1999, U.S. Patent No. 5,974,120 ("the '120 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 65, which statement has the effect of a denial of these allegations.

66.     The CIGNA Defendants admit that, on March 7, 2000, U.S. Patent No. 6,035,021 ("the '021 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 66, which statement has the effect of a denial of these allegations.

67.     The CIGNA Defendants admit that, on November 14, 2000, U.S. Patent No. 6,148,065 ("the '065 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to

either admit or deny the truth of the remaining allegations in paragraph 67, which statement has the effect of a denial of these allegations.

68.    The CIGNA Defendants admit that, on January 1, 2002, U.S. Patent No. 6,335,965 ("the '965 patent") entitled "Voice-Data Telephonic Interface Control System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 68, which statement has the effect of a denial of these allegations.

69.    The CIGNA Defendants admit that, on February 19, 2002, U.S. Patent No. 6,349,134 ("the '134 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 69, which statement has the effect of a denial of these allegations.

70.    The CIGNA Defendants admit that, on July 23, 2002, U.S. Patent No. 6,424,703 ("the '703 patent") entitled "Telephonic-Interface Lottery System" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 70, which statement has the effect of a denial of these allegations.

71.    The CIGNA Defendants admit that, on August 13, 2002, U.S. Patent No. 6,434,223 ("the '223 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 71, which statement has the effect of a denial of these allegations.

72.    The CIGNA Defendants admit that, on January 28, 2003, U.S. Patent No. 6,512,415 ("the '415 patent") entitled "Telephonic-Interface Game Control System" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 72, which statement has the effect of a denial of these allegations.

73.    The CIGNA Defendants admit that, on January 13, 2004, U.S. Patent No. 6,678,360 ("the '360 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 73, which statement has the effect of a denial of these allegations.

## FIRST CLAIM
## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST AIG ENTITIES)

74.    The CIGNA Defendants incorporate by reference their responses to paragraphs 1-73 as though fully set forth herein.

75.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 75, which statement has the effect of a denial of these allegations.

76.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 76, which statement has the effect of a denial of these allegations.

77.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 77, which statement has the effect of a denial of these allegations.

78.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 78, which statement has the effect of a denial of these allegations.

79.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 79, which statement has the effect of a denial of these allegations.

80.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 80, which statement has the effect of a denial of these allegations.

81.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 81, which statement has the effect of a denial of these allegations.

**SECOND CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS**
**AGAINST NATIONAL CITY ENTITES)**

82.    The CIGNA Defendants incorporate by reference their responses to paragraphs 1-81 as though fully set forth herein.

83.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 83, which statement has the effect of a denial of these allegations.

84.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 84, which statement has the effect of a denial of these allegations.

85. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 85, which statement has the effect of a denial of these allegations.

86. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 86, which statement has the effect of a denial of these allegations.

87. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 87, which statement has the effect of a denial of these allegations.

88. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 88, which statement has the effect of a denial of these allegations.

89. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 89, which statement has the effect of a denial of these allegations.

**THIRD CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS**
**AGAINST WILMINGTON TRUST ENTITIES)**

90. The CIGNA Defendants incorporate by reference their responses to paragraphs 1-89 as though fully set forth herein.

91. The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 91, which statement has the effect of a denial of these allegations.

92.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 92, which statement has the effect of a denial of these allegations.

93.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 93, which statement has the effect of a denial of these allegations.

94.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 94, which statement has the effect of a denial of these allegations.

95.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 95, which statement has the effect of a denial of these allegations.

96.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 96, which statement has the effect of a denial of these allegations.

97.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 97, which statement has the effect of a denial of these allegations.

**FOURTH CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST AQUILA)**

98.    The CIGNA Defendants incorporate by reference their responses to paragraphs 1-97 as though fully set forth herein.

99.     The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 99, which statement has the effect of a denial of these allegations.

100.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 100, which statement has the effect of a denial of these allegations.

101.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 101, which statement has the effect of a denial of these allegations.

102.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 102, which statement has the effect of a denial of these allegations.

103.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 103, which statement has the effect of a denial of these allegations.

104.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 104, which statement has the effect of a denial of these allegations.

105.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 105, which statement has the effect of a denial of these allegations.

## FIFTH CLAIM
## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS
## AGAINST DHL ENTITIES)

106.    The CIGNA Defendants incorporate by reference their responses to paragraphs 1-105 as though fully set forth herein.

107.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 107, which statement has the effect of a denial of these allegations.

108.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 108, which statement has the effect of a denial of these allegations.

109.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 109, which statement has the effect of a denial of these allegations.

110.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 110, which statement has the effect of a denial of these allegations.

111.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 111, which statement has the effect of a denial of these allegations.

112.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 112, which statement has the effect of a denial of these allegations.

113.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 113, which statement has the effect of a denial of these allegations.

### SIXTH CLAIM
### (KATZ'S PATENT INFRINGEMENT ALLEGATIONS
### AGAINST THE CIGNA DEFENDANTS)

114.    The CIGNA Defendants incorporate by reference their responses to paragraphs 1-113 as though fully set forth herein.

115.    The CIGNA Defendants object to the allegations of paragraph 115 because the phrase "health and other insurance-related products and services" is vague and indefinite. The CIGNA Defendants therefore deny the allegations of paragraph 115 on that basis.

116.    The CIGNA Defendants deny the allegations in paragraph 116.

117.    The CIGNA Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 117, which statement has the effect of a denial of these allegations.

118.    The CIGNA Defendants deny the allegations in paragraph 118.

119.    The CIGNA Defendants deny the allegations in paragraph 119.

120.    The CIGNA Defendants deny the allegations in paragraph 120.

121.    The CIGNA Defendants deny the allegations in paragraph 121.

### KATZ'S REQUEST FOR RELIEF

122.    As to the requests for relief directed toward the CIGNA Defendants, the CIGNA Defendants deny that Katz is entitled to any relief whatsoever.

## THE CIGNA DEFENDANTS' AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.    Katz is not entitled to any relief against the CIGNA Defendants because the CIGNA Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and asserted claim of the '065, '120, '134, '150, '156, '223, '252, '285, '360, '551, '734, '762, '863, '893, '965, '968, and '984 patents (collectively, the "Katz asserted patents").

### Second Affirmative Defense

2.    The '065 patent and all of the claims in the '065 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

### Third Affirmative Defense

3.    The '120 patent and all of the claims in the '120 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Fourth Affirmative Defense

4.    The '134 patent and all of the claims in the '134 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Fifth Affirmative Defense

5.    The '150 patent and all of the claims in the '150 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Sixth Affirmative Defense

6.    The '156 patent and all of the claims in the '156 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Seventh Affirmative Defense

7.    The '223 patent and all of the claims in the '223 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Eighth Affirmative Defense

8.    The '252 patent and all of the claims in the '252 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Ninth Affirmative Defense

9.    The '285 patent and all of the claims in the '285 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Tenth Affirmative Defense

10.    The '360 patent and all of the claims in the '360 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Eleventh Affirmative Defense

11.    The '551 patent and all of the claims in the '551 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Twelfth Affirmative Defense**

12.    The '734 patent and all of the claims in the '734 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Thirteenth Affirmative Defense**

13.    The '762 patent and all of the claims in the '762 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Fourteenth Affirmative Defense**

14.    The '863 patent and all of the claims in the '863 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Fifteenth Affirmative Defense**

15.    The '893 patent and all of the claims in the '893 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Sixteenth Affirmative Defense**

16.    The '965 patent and all of the claims in the '965 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Seventeenth Affirmative Defense**

17.    The '968 patent and all of the claims in the '968 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Eighteenth Affirmative Defense

18.     The '984 patent and all of the claims in the '984 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Nineteenth Affirmative Defense

19.     On information and belief, Katz is estopped from asserting any interpretation of any of the claims of the Katz asserted patents that would be broad enough to cover any of the CIGNA Defendants' automated telephone systems, by reasons of statements and representations made by the inventor to the United States Patent and Trademark Office during the prosecution of applications for issuance of the Katz asserted patents, or by reasons of prior acts.

### Twentieth Affirmative Defense

20.     On information and belief, the Katz asserted patents are unenforceable under the doctrine of prosecution laches.

### Twenty-First Affirmative Defense

21.     On information and belief, personal jurisdiction over the CIGNA Defendants is lacking.

### Twenty-Second Affirmative Defense

22.     On information and belief, this is not the proper venue for Katz's claims.

### Twenty-Third Affirmative Defense

23.     On information and belief, Katz is barred in whole or in part from asserting the Katz asserted patents against the CIGNA Defendants under the doctrine of laches, equitable estoppel or both.

**Twenty-Fourth Affirmative Defense**

24.    On information and belief, as to some or all of the alleged infringing services, Katz's claims for relief are barred by express and/or implied license.

**Twenty-Fifth Affirmative Defense**

25.    On information and belief, Katz has not complied with the requirements of 35 U.S.C. § 287 and is precluded from seeking any recovery for alleged damages prior to the filing of this action.

**Twenty-Sixth Affirmative Defense**

26.    The '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable due to inequitable conduct in their procurement in violation of duties imposed by 37 C.F.R. § 1.56.

27.    During the course of prosecuting the applications leading to the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents, the named inventor, Ronald A. Katz ("Mr. Katz"), and his attorneys engaged in inequitable conduct by intentionally withholding material information, including prior art, from the United States Patent and Trademark Office ("the USPTO"). As a result of that inequitable conduct, which is described more fully below, the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable.

28.    The material information that Mr. Katz and his attorneys deliberately withheld from the USPTO includes the existence of, and the information contained in, the following references: U.S. Patent No. 4,071,698 to Barger ("Barger"), Canadian Patent No. 1,162,336 to De Bruyn (and its corresponding published European Patent Specification EP932410A1) ("De Bruyn"), a 1986 sales bulletin by Florafax reflecting an offer to sell a product called the Talking Bouquet® ("Florafax"), a 1977 article in *Hitachi Review* by Yoshizawa et al. ("Yoshizawa"),

references from the Periphonics Corporation ("Periphonics") including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference"), and the publication of Katz's own PCT application (PCT application WO 87/00375).

**Barger**

29.     The Barger patent issued on January 31, 1978, over seven years before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

30.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the Barger patent as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.  On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

31.     Thereafter, on information and belief, in or about mid-1989, Mr. Katz and his attorneys negotiated the purchase of the Barger patent on behalf of First Data Corporation, which was then the assignee of the Katz patents.

32.     Mr. Katz and his attorneys did not disclose the Barger reference during the prosecution of at least the applications that led to the grant of U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,073,929 ("the '929 patent"), 5,255,309 ("the '309 patent"); and the '984, '252, '150, '285, and '965 patents.

33.     The USPTO did not consider the Barger reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.

34.    The Barger reference would have been material to the patentability of the applications that issued as the '739, '929, '309, '984, '252, '150, '285, and '965 patents at least because the Barger reference discloses a telephone-based system that screens a caller by checking the caller's account number to insure that a limit on use of the account number has not been exceeded.

35.    Indeed, during the reexamination of one of Mr. Katz's patents, U.S. Patent No. 5,561,707 ("the '707 patent"), which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting sixteen (16) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the Barger reference.

36.    At all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

37.    On information and belief, at all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

38.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to properly disclose the Barger reference to the USPTO during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

39.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents. That inequitable conduct renders each of those patents unenforceable in its entirety.

40.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to at least one or more of the '739, '929, '309, '984, '252, '150, '285, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

41.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

42.     Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent. In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

43.     The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more

- 28 -

of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

44.    The '984, '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

**De Bruyn**

45.    The De Bruyn patent application was first published in French by the European Patent Office ("EPO") on July 22, 1981. On February 14, 1984, the Canadian Patent Office issued corresponding Canadian Patent No. 1,162,336 that included an English-language version of the original EPO specification. The EPO specification for De Bruyn was published nearly four years before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents. The Canadian De Bruyn patent was published more than one year before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

46.    In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988. The EPO search report listed the De Bruyn reference as a reference deemed to be "particularly relevant if taken alone." The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO. On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

47.    On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

48.    Mr. Katz and his attorneys did not disclose the De Bruyn reference during the prosecution of the applications that led to the grant of the '739, '929, '309, '984, '252, '150, and '285 patents.

49.    The USPTO did not consider the De Bruyn references during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

50.    The De Bruyn reference would have been material to the patentability of the applications that issued as '739, '929, '309, '984, '252, '150, and '285 patents at least because the De Bruyn reference discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

51.    Indeed, during the reexamination the '707 patent, which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting over seventy (70) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the De Bruyn reference.

52.    On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn reference during the prosecution of the application that issued as U.S. Patent No. 5,365,575 ("the '575 patent").

53.    Despite their prior knowledge for a substantial period of time, Mr. Katz and his attorneys, on information and belief, waited until September 1994, after prosecution of the application for the '575 patent had closed, to submit the De Bruyn reference in connection therewith. Moreover, they chose not to petition the USPTO to defer the issuance of the patent, withdraw it from issue, or take any other steps to afford the USPTO the opportunity to consider those references before the patent issued. By such actions Mr. Katz and his attorneys prevented the USPTO from considering the De Bruyn reference in connection with the '575 patent.

54.    The De Bruyn reference would have been material to the patentability of the application that issued as the '575 patent at least because the De Bruyn reference discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

55.    At all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '575 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

56.    On information and belief, at all times during the prosecution and pendancy of the applications leading to '739, '929, '309, '984, '252, '150, '285, and '575, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

57.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn reference during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '575 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

58.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '575 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

59.    Each of the '893, '156, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to one or more of the '739, '929, '309, '984, '252, '150, '285, and

'575 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

60.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

61.     Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent. In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

62.     The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

63.     The '156 patent is patent is closely related to the '575 at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the

limitations concerning a limited-use telephone lottery system or the testing of a number located on a ticket to limit access to a telephone-based system.

64.    The '984, '252, '156, '150, '285, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### Yoshizawa

65.    The Yoshizawa article was published in the June 1977 issue of *Hitachi Review*, years before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252 and '984 patents.

66.    The Yoshizawa reference was material to the patentability of the subject matter claimed in certain patent applications which are closely related to at least the '156 patent, such as the application that issued as the '575 patent.

67.    On information and belief, Mr. Katz and his attorneys were aware of the Yoshizawa reference during the prosecution of the application that issued as the '575 patent.

68.    Specifically, on information and belief, Mr. Katz and/or his attorneys learned of the Yoshizawa reference no later than September 1992, when West Interactive Corporation identified them in answers to interrogatories during the course of a lawsuit against West Interactive.

69.    Despite their prior knowledge for a substantial period of time, Mr. Katz and his attorneys, on information and belief, waited until September 1994, after prosecution of the application for the '575 patent had closed, to submit the Yoshizawa reference in connection therewith. Moreover, they chose not to petition the USPTO to defer the issuance of the patent, withdraw it from issue, or take any other steps to afford the USPTO the opportunity to consider

those references before the patent issued. By such actions Mr. Katz and his attorneys prevented the USPTO from considering the Yoshizawa reference in connection with the '575 patent.

70.    The Yoshizawa reference would have been material to the patentability of the application that issued as the '575 patent at least because the Yoshizawa reference discloses a telephone-based gambling or gaming system, such as a lottery, where the caller's use is limited and qualified based on an account number.

71.    At all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

72.    On information and belief, at all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

73.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn reference during the prosecution of the '575 patent. On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

74.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '575 patent. That inequitable conduct renders this patent unenforceable in its entirety.

75.    The '156 patent is sufficiently related to the '575 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

76.    For example, the '156 patent is patent is closely related to the '575 at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the limitations concerning a limited-use telephone lottery system or the testing of a number located on a ticket to limit access to a telephone-based system.

77.    The '156 patent is unenforceable as a result of the above-described inequitable conduct in the prosecution of the '575 patent.

**Florafax**

78.    The Florafax sales bulletin is dated January 22, 1986, reflecting at least an offer to sell the described product more than one year prior to the filing date of Mr. Katz's second U.S. patent application (U. S. Patent Application Serial No. 18,244, filed on February 24, 1987). The Florafax sales bulletin is dated mare than one year prior to the effective filing date of any claim of the '863, '156, '734, '120, '223, '252, and '984 patents that recites a "substrate," "ticket" or "card" with an "identification number."

79.    The Florafax reference was material to the patentability of the subject matter claimed in certain patent applications which are closely related to at least the '156 patent, such as the application that issued as the '575 patent.

80.    On information and belief, Mr. Katz and his attorneys were aware of the Florafax reference during the prosecution of the application that issued as the '575 patent.

81.    Specifically, on information and belief, Mr. Katz and/or his attorneys learned of the Florafax reference no later than September 1992, when West Interactive Corporation identified them in answers to interrogatories during the course of a lawsuit against West Interactive.

82.    Despite their prior knowledge for a substantial period of time, Mr. Katz and his attorneys, on information and belief, waited until September 1994, after prosecution of the application for the '575 had closed, to submit the Florafax reference in connection therewith. Moreover, they chose not to petition the USPTO to defer the issuance of the patent, withdraw it from issue, or take any other steps to afford the USPTO the opportunity to consider those references before the patent issued.  By such actions Mr. Katz and his attorneys prevented the USPTO from considering the Florafax reference in connection with the '575 patent.

83.    The Florafax reference would have been material to the patentability of the application that issued as the '575 patent at least because the Florafax reference discloses testing a limited use identification number printed on a card or ticket to provide access to a telephone-based system.

84.    At all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

85.    On information and belief, at all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

86.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the Florafax reference during the prosecution of the '575 patent.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

- 36 -

87.   As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '575 patent. That inequitable conduct renders each of those patents unenforceable in its entirety.

88.   The '156 patent is sufficiently related to the '575 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

89.   For example, the '156 patent is patent is closely related to the '575 at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the limitations concerning a limited-use telephone lottery system or the testing of a number located on a ticket to limit access to a telephone-based system.

90.   The '156 patent is unenforceable as a result of the above-described inequitable conduct in the prosecution of the '575 patent.

### Periphonics References

91.   On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm"). The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the Katz asserted patents.

92.   In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59

separate items (including single or plural related documents)." Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

93.    Katz made the same statements in the applications that issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751). Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

94.    In connection with making these statements during the prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials.

95.    On information and belief, the Bank-From-Home and VoicePac references bore Bates numbers within the range of the West materials.

96.    Specifically, the Bank-From-Home reference bore Bates numbers W73055–W73095, and the VoicePac reference bore Bates numbers W73219–W73302.

97.    The Bank-From-Home and the VoicePac references are highly relevant to many claims of the Katz asserted patents. The Bank-From-Home reference describes such limitations of claims of the Katz asserted patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of claims of the Katz

asserted patents as interfacing callers to the system and transferring callers to a customer service representative.

98.     While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the'707, '965, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality. Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct. Thus, at least the '965, '285, '893, '863, '762 and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during the prosecution of their respective applications.

### Katz PCT Application

99.     Katz failed to disclose the publication of Mr. Katz's own PCT application (PCT application WO 87/00375) ("the '375 application") during the prosecution of at least the '739 patent.

100.     Since, the '375 application was published on January 15, 1987, it would be considered prior art for any claims with a filing date more than a year after the publication date (January 15, 1987). 35 U.S.C. § 102(b).

101.     The filing date of the application that issued as the '739 patent, which was May 16, 1988, was more than one year after the publication of the '375 application.

102.     Therefore, the published '375 application constituted prior art to all the claims that incorporated any new matter added in the application for the '739 patent.

103.     The published '375 application would have been material to many of the basic elements claims in the '739 patent, such as prompting the caller with instructions, receiving data

entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

104.    Despite knowledge of the '375 application and its materiality, Katz did not bring the '375 application to the attention of the examiner during the prosecution of the '739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

105.    The Katz asserted patents contain claims with subject matter that includes subject matter that was at issue during the prosecution of the '739 patent and to which the '375 application would have been relevant, and are thus rendered unenforceable through infectious unenforceability.

106.    As an example, due to the interrelatedness of the '893, '863, '551, '065, '360, '762, '134 and '739 patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762, and '134 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

107.    The inequitable conduct concerning the '375 application renders unenforceable at least the '984, '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents.

**False and Misleading Statements**

108.    On information and belief, Katz made false and misleading statements about the priority dates to which claims of pending applications were entitled, with the intent to remove prior art references that were before the Patent and Trademark Office in Mr. Katz's pending applications.

109.    For example, during prosecution of application serial number 07/425,779, which issued as the '984 patent, the Patent Examiner rejected claim 10 of the application under 35

U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ("the '375 application")." Office action dated March 21, 1991. In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case." Katz's Amendment dated June 20, 1991.

110.    On information and belief, Katz's statement was knowingly false and in violation of the duty of candor owed by patent applicants to the Patent and Trademark Office in that the '375 application was in fact properly cited by the Examiner as a reference against claim 10.

111.    On information and belief, Katz's statement was intended to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in the '984 patent, and constituted inequitable conduct, rendering the '984 patent unenforceable.

112.    The '120, '734 and '223 patents are closely related to the '984 patent, and are thus rendered unenforceable through infectious unenforceability. The '734, '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

113.    Thus, the conduct during prosecution of the '984 patent also renders the '734, '120 and '223 patents unenforceable.

114.    In another example, during the prosecution of the '734 patent, Katz identified U.S. Patent No. 4,972,461, issued to Brown (the "Brown patent"), to the Patent and Trademark

Office. Katz, however, falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12.

115.    However, the relevant pending application's claims did not predate Brown because there is no suggestion in the '150 patent of multiple call modes, as claimed in the '734 patent.

116.    In addition, on information and belief, the '734 patent does not properly claim priority to the '150 patent.

117.    Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

118.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

119.    In another example, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,797,913 issued to Kaplan et al. (the "Kaplan patent"), to the Patent and Trademark Office. Katz, however, falsely stated that "the present application is entitled to a priority date

earlier than that of the subject reference." Supplemental Amendment filed March 14, 1995 at p. 20.

    120.    On information and belief, Katz's statement was false at the time it was made since there were claims pending that claimed subject matter not supported in any parent applications filed prior to August 4, 1987, the filing date of the Kaplan patent. For example, claim 17 that was pending at the time of Katz's statement recited multiple call modes. There is no suggestion of multiple call modes in, for example, the '968 patent. Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

    121.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

### Twenty-Seventh Affirmative Defense

    122.    At least the '734, '120, '134, and '223 patents are unenforceable under the doctrines of unclean hands and/or patent misuse because Katz has asserted the '734, '120, '134, and '223 patents with knowledge of that at least one claim in each of these patents is invalid.

**Twenty-Eighth Affirmative Defense**

123.    To the extent Katz seeks damages for alleged infringement more than six years prior to the filing of the present litigation, Katz's claims are barred by the statute of limitations under 35 U.S.C. § 287.

## THE CIGNA DEFENDANTS' COUNTERCLAIMS AGAINST KATZ

As for its counterclaims against Katz, the CIGNA Defendants complains as follows:

1.    CIGNA Corporation is a Delaware corporation that maintains its principal place of business at Two Liberty Place, Philadelphia, Pennsylvania 19192.

2.    CIGNA Health Corporation is a Delaware corporation that maintains its principal place of business at 900 Cottage Grove Road, Hartford, Connecticut 06152.

3.    CIGNA HealthCare of Delaware, Inc. is a Delaware corporation that maintains its principal place of business at 1777 Sentry Park West Gwynedd Hall, Suite 100, Blue Bell, Pennsylvia 19422.

4.    Tel-Drug, Inc. is a South Dakota corporation that maintains its principal place of business at 4901 North Fourth Street, Sioux Falls, South Dakota 57104.

5.    Tel-Drug of Pennsylvania, L.L.C. is a Pennsylvania corporation that maintains its principal place of business at 206 Welsh Road, Horsham, Pennsylvania 19044.

6.    On information and belief, Ronald A. Katz Technology Licensing, L.P. ("Katz") is a limited partnership organized under the laws of the State of California, with a principal place of business in Los Angeles, California.

7.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

8.    Katz is subject to personal jurisdiction in this judicial district.

9.   Venue for this action is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## COUNT I
### (For Declaratory Judgment of Non-Infringement)

10.   The CIGNA Defendants repeat and reallege the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

11.   The CIGNA Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and asserted claim of any of the Katz asserted patents.

12.   To resolve the legal and factual questions raised by Katz, and to afford relief from the uncertainty and controversy that Katz's accusations have precipitated, the CIGNA Defendants are entitled to a declaratory judgment that they do not infringe any valid and asserted claim of any of the Katz asserted patents.

## COUNT II
### (For Declaratory Judgment of Invalidity)

13.   The CIGNA Defendants repeat and reallege the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

14.   One or more of the claims of the '065, '120, '134, '150, '156, '223, '252, '285, '360, '551, '734, '762, '863, '893, '965, '968, and '984 patents (collectively, the "Katz asserted patents") is invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

15.   To resolve the legal and factual questions raised by Katz, and to afford relief from the uncertainty and controversy that Katz's accusations have precipitated, the CIGNA Defendants are entitled to a declaratory judgment that one or more of the claims of the Katz asserted patents is invalid.

## COUNT III
### (For Declaratory Judgment of Unenforceability Based on Inequitable Conduct)

16.    The '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable due to inequitable conduct in their procurement in violation of duties imposed by 37 C.F.R. § 1.56.

17.    During the course of prosecuting the applications leading to the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents, the named inventor, Ronald A. Katz ("Mr. Katz"), and his attorneys engaged in inequitable conduct by intentionally withholding material information, including prior art, from the United States Patent and Trademark Office ("the USPTO"). As a result of that inequitable conduct, which is described more fully below, the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable.

18.    The material information that Mr. Katz and his attorneys deliberately withheld from the USPTO includes the existence of, and the information contained in, the following references: U.S. Patent No. 4,071,698 to Barger ("Barger"), Canadian Patent No. 1,162,336 to De Bruyn (and its corresponding published European Patent Specification EP932410A1) ("De Bruyn"), a 1986 sales bulletin by Florafax reflecting an offer to sell a product called the Talking Bouquet® ("Florafax"), a 1977 article in *Hitachi Review* by Yoshizawa et al. ("Yoshizawa"), references from the Periphonics Corporation ("Periphonics") including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference"), and the publication of Katz's own PCT application (PCT application WO 87/00375).

**Barger**

19.     The Barger patent issued on January 31, 1978, over seven years before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

20.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988. The EPO search report listed the Barger patent as a reference deemed to be "particularly relevant if taken alone." The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO. On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

21.     Thereafter, on information and belief, in or about mid-1989, Mr. Katz and his attorneys negotiated the purchase of the Barger patent on behalf of First Data Corporation, which was then the assignee of the Katz patents.

22.     Mr. Katz and his attorneys did not disclose the Barger reference during the prosecution of at least the applications that led to the grant of U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,073,929 ("the '929 patent"), 5,255,309 ("the '309 patent"); and the '984, '252, '150, '285, and '965 patents.

23.     The USPTO did not consider the Barger reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.

24.     The Barger reference would have been material to the patentability of the applications that issued as the '739, '929, '309, '984, '252, '150, '285, and '965 patents at least because the Barger reference discloses a telephone-based system that screens a caller by checking the caller's account number to insure that a limit on use of the account number has not been exceeded.

25.     Indeed, during the reexamination of one of Mr. Katz's patents, U.S. Patent No. 5,561,707 ("the '707 patent"), which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting sixteen (16) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the Barger reference.

26.     At all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

27.     On information and belief, at all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

28.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to properly disclose the Barger reference to the USPTO during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '965 patents. On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

29.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents. That inequitable conduct renders each of those patents unenforceable in its entirety.

30.    Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to at least one or more of the '739, '929, '309, '984, '252, '150, '285, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

31.    Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

32.    Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent. In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

33.    The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

34.     The '984, '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### De Bruyn

35.     The De Bruyn patent application was first published in French by the European Patent Office ("EPO") on July 22, 1981. On February 14, 1984, the Canadian Patent Office issued corresponding Canadian Patent No. 1,162,336 that included an English-language version of the original EPO specification. The EPO specification for De Bruyn was published nearly four years before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents. The Canadian De Bruyn patent was published more than one year before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252, '984, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

36.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988. The EPO search report listed the De Bruyn reference as a reference deemed to be "particularly relevant if taken alone." The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO. On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

37.     On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

38.    Mr. Katz and his attorneys did not disclose the De Bruyn reference during the prosecution of the applications that led to the grant of the '739, '929, '309, '984, '252, '150, and '285 patents.

39.    The USPTO did not consider the De Bruyn references during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

40.    The De Bruyn reference would have been material to the patentability of the applications that issued as '739, '929, '309, '984, '252, '150, and '285 patents at least because the De Bruyn reference discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

41.    Indeed, during the reexamination the '707 patent, which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting over seventy (70) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the De Bruyn reference.

42.    On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn reference during the prosecution of the application that issued as U.S. Patent No. 5,365,575 ("the '575 patent").

43.    Despite their prior knowledge for a substantial period of time, Mr. Katz and his attorneys, on information and belief, waited until September 1994, after prosecution of the application for the '575 patent had closed, to submit the De Bruyn reference in connection therewith. Moreover, they chose not to petition the USPTO to defer the issuance of the patent, withdraw it from issue, or take any other steps to afford the USPTO the opportunity to consider those references before the patent issued. By such actions Mr. Katz and his attorneys prevented the USPTO from considering the De Bruyn reference in connection with the '575 patent.

44.     The De Bruyn reference would have been material to the patentability of the application that issued as the '575 patent at least because the De Bruyn reference discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

45.     At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '575 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

46.     On information and belief, at all times during the prosecution and pendency of the applications leading to '739, '929, '309, '984, '252, '150, '285, and '575, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

47.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn reference during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '575 patents. On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

48.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '575 patents. That inequitable conduct renders each of those patents unenforceable in its entirety.

49.     Each of the '893, '156, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to one or more of the '739, '929, '309, '984, '252, '150, '285, and

'575 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

50.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

51.     Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent. In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

52.     The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

53.     The '156 patent is patent is closely related to the '575 at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the

limitations concerning a limited-use telephone lottery system or the testing of a number located on a ticket to limit access to a telephone-based system.

54.    The '984, '252, '156, '150, '285, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### Yoshizawa

55.    The Yoshizawa article was published in the June 1977 issue of *Hitachi Review*, years before the earliest possible effective filing date of the '863, '156, '734, '120, '223, '252 and '984 patents.

56.    The Yoshizawa reference was material to the patentability of the subject matter claimed in certain patent applications which are closely related to at least the '156 patent, such as the application that issued as the '575 patent.

57.    On information and belief, Mr. Katz and his attorneys were aware of the Yoshizawa reference during the prosecution of the application that issued as the '575 patent.

58.    Specifically, on information and belief, Mr. Katz and/or his attorneys learned of the Yoshizawa reference no later than September 1992, when West Interactive Corporation identified them in answers to interrogatories during the course of a lawsuit against West Interactive.

59.    Despite their prior knowledge for a substantial period of time, Mr. Katz and his attorneys, on information and belief, waited until September 1994, after prosecution of the application for the '575 patent had closed, to submit the Yoshizawa reference in connection therewith.  Moreover, they chose not to petition the USPTO to defer the issuance of the patent, withdraw it from issue, or take any other steps to afford the USPTO the opportunity to consider

those references before the patent issued. By such actions Mr. Katz and his attorneys prevented the USPTO from considering the Yoshizawa reference in connection with the '575 patent.

60. The Yoshizawa reference would have been material to the patentability of the application that issued as the '575 patent at least because the Yoshizawa reference discloses a telephone-based gambling or gaming system, such as a lottery, where the caller's use is limited and qualified based on an account number.

61. At all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

62. On information and belief, at all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

63. Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn reference during the prosecution of the '575 patent. On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

64. As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the application for the '575 patent. That inequitable conduct renders this patent unenforceable in its entirety.

65. The '156 patent is sufficiently related to the '575 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

66.     For example, the '156 patent is patent is closely related to the '575 at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the limitations concerning a limited-use telephone lottery system or the testing of a number located on a ticket to limit access to a telephone-based system.

67.     The '156 patent is unenforceable as a result of the above-described inequitable conduct in the prosecution of the '575 patent.

### Florafax

68.     The Florafax sales bulletin is dated January 22, 1986, reflecting at least an offer to sell the described product more than one year prior to the filing date of Mr. Katz's second U.S. patent application (U. S. Patent Application Serial No. 18,244, filed on February 24, 1987). The Florafax sales bulletin is dated mare than one year prior to the effective filing date of any claim of the '863, '156, '734, '120, '223, '252, and '984 patents that recites a "substrate," "ticket" or "card" with an "identification number."

69.     The Florafax reference was material to the patentability of the subject matter claimed in certain patent applications which are closely related to at least the '156 patent, such as the application that issued as the '575 patent.

70.     On information and belief, Mr. Katz and his attorneys were aware of the Florafax reference during the prosecution of the application that issued as the '575 patent.

71.     Specifically, on information and belief, Mr. Katz and/or his attorneys learned of the Florafax reference no later than September 1992, when West Interactive Corporation identified them in answers to interrogatories during the course of a lawsuit against West Interactive.

72.    Despite their prior knowledge for a substantial period of time, Mr. Katz and his attorneys, on information and belief, waited until September 1994, after prosecution of the application for the '575 had closed, to submit the Florafax reference in connection therewith. Moreover, they chose not to petition the USPTO to defer the issuance of the patent, withdraw it from issue, or take any other steps to afford the USPTO the opportunity to consider those references before the patent issued. By such actions Mr. Katz and his attorneys prevented the USPTO from considering the Florafax reference in connection with the '575 patent.

73.    The Florafax reference would have been material to the patentability of the application that issued as the '575 patent at least because the Florafax reference discloses testing a limited use identification number printed on a card or ticket to provide access to a telephone-based system.

74.    At all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

75.    On information and belief, at all times during the prosecution and pendency of the applications leading to the '575 patent, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

76.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the Florafax reference during the prosecution of the '575 patent. On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

77.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '575 patent. That inequitable conduct renders each of those patents unenforceable in its entirety.

78.    The '156 patent is sufficiently related to the '575 patent to be rendered unenforceable as well under the doctrine of infectious unenforceability.

79.    For example, the '156 patent is patent is closely related to the '575 at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the limitations concerning a limited-use telephone lottery system or the testing of a number located on a ticket to limit access to a telephone-based system.

80.    The '156 patent is unenforceable as a result of the above-described inequitable conduct in the prosecution of the '575 patent.

### Periphonics References

81.    On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm"). The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the Katz asserted patents.

82.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59

separate items (including single or plural related documents)." Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

83.    Katz made the same statements in the applications that issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751). Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

84.    In connection with making these statements during the prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials.

85.    On information and belief, the Bank-From-Home and VoicePac references bore Bates numbers within the range of the West materials.

86.    Specifically, the Bank-From-Home reference bore Bates numbers W73055–W73095, and the VoicePac reference bore Bates numbers W73219–W73302.

87.    The Bank-From-Home and the VoicePac references are highly relevant to many claims of the Katz asserted patents. The Bank-From-Home reference describes such limitations of claims of the Katz asserted patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of claims of the Katz

asserted patents as interfacing callers to the system and transferring callers to a customer service representative.

88.    While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the'707, '965, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality.  Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.  Thus, at least the '965, '285, '893, '863, '762 and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during the prosecution of their respective applications.

### Katz PCT Application

89.    Katz failed to disclose the publication of Mr. Katz's own PCT application (PCT application WO 87/00375) ("the '375 application") during the prosecution of at least the '739 patent.

90.    Since, the '375 application was published on January 15, 1987, it would be considered prior art for any claims with a filing date more than a year after the publication date (January 15, 1987).  35 U.S.C. § 102(b).

91.    The filing date of the application that issued as the '739 patent, which was May 16, 1988, was more than one year after the publication of the '375 application.

92.    Therefore, the published '375 application constituted prior art to all the claims that incorporated any new matter added in the application for the '739 patent.

93.    The published '375 application would have been material to many of the basic elements claims in the '739 patent, such as prompting the caller with instructions, receiving data

entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

94.    Despite knowledge of the '375 application and its materiality, Katz did not bring the '375 application to the attention of the examiner during the prosecution of the '739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

95.    The Katz asserted patents contain claims with subject matter that includes subject matter that was at issue during the prosecution of the '739 patent and to which the '375 application would have been relevant, and are thus rendered unenforceable through infectious unenforceability.

96.    As an example, due to the interrelatedness of the '893, '863, '551, '065, '360, '762, '134 and '739 patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762, and '134 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

97.    The inequitable conduct concerning the '375 application renders unenforceable at least the '984, '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents.

### False and Misleading Statements

98.    On information and belief, Katz made false and misleading statements about the priority dates to which claims of pending applications were entitled, with the intent to remove prior art references that were before the Patent and Trademark Office in Mr. Katz's pending applications.

99.    For example, during prosecution of application serial number 07/425,779, which issued as the '984 patent, the Patent Examiner rejected claim 10 of the application under 35

U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ("the '375 application")." Office action dated March 21, 1991. In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case." Katz's Amendment dated June 20, 1991.

100.    On information and belief, Katz's statement was knowingly false and in violation of the duty of candor owed by patent applicants to the Patent and Trademark Office in that the '375 application was in fact properly cited by the Examiner as a reference against claim 10.

101.    On information and belief, Katz's statement was intended to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in the '984 patent, and constituted inequitable conduct, rendering the '984 patent unenforceable.

102.    The '120, '734 and '223 patents are closely related to the '984 patent, and are thus rendered unenforceable through infectious unenforceability. The '734, '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

103.    Thus, the conduct during prosecution of the '984 patent also renders the '734, '120 and '223 patents unenforceable.

104.    In another example, during the prosecution of the '734 patent, Katz identified U.S. Patent No. 4,972,461, issued to Brown (the "Brown patent"), to the Patent and Trademark

Office. Katz, however, falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12.

105.    However, the relevant pending application's claims did not predate Brown because there is no suggestion in the '150 patent of multiple call modes, as claimed in the '734 patent.

106.    In addition, on information and belief, the '734 patent does not properly claim priority to the '150 patent.

107.    Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

108.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

109.    In another example, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,797,913 issued to Kaplan et al. (the "Kaplan patent"), to the Patent and Trademark Office. Katz, however, falsely stated that "the present application is entitled to a priority date

earlier than that of the subject reference." Supplemental Amendment filed March 14, 1995 at p. 20.

110.   On information and belief, Katz's statement was false at the time it was made since there were claims pending that claimed subject matter not supported in any parent applications filed prior to August 4, 1987, the filing date of the Kaplan patent. For example, claim 17 that was pending at the time of Katz's statement recited multiple call modes. There is no suggestion of multiple call modes in, for example, the '968 patent. Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

111.   The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

## THE CIGNA DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, the CIGNA Defendants respectfully request that this Court enter judgment in its favor and grant the following relief:

A.    A declaration that the CIGNA Defendants do not infringe any valid and asserted claim of U.S. Patent Nos. 6,148,065, 5,974,120, 6,349,134, 4,930,150, 5,787,156, 6,434,223, 5,251,252, 5,351,285, 6,678,360, 5,815,551, 5,828,734, 5,898,762, 5,684,863, 5,917,893, 6,335,965, 4,792,968, and 5,128,984;

B.    A declaration that U.S. Patent Nos. 6,148,065, 5,974,120, 6,349,134, 4,930,150, 5,787,156, 6,434,223, 5,251,252, 5,351,285, 6,678,360, 5,815,551, 5,828,734, 5,898,762, 5,684,863, 5,917,893, 6,335,965, 4,792,968, and 5,128,984 are invalid;

C.    A declaration that U.S. Patent Nos. 5,684,863, 5,787,156, 5,828,734, 5,974,120, 6,434,223, 5,251,252, and 5,128,984 are unenforceable;

D.    Dismissal of all of Katz's claims in their entirety with prejudice;

E.    A declaration that Katz take nothing by way of its original complaint;

F.    An order awarding the CIGNA Defendants their costs pursuant to 35 U.S.C. § 284;

G.    An order finding that this is an exceptional case and awarding the CIGNA Defendants their reasonable attorney fees pursuant to 35 U.S.C. § 285; and

H.    An order awarding such additional relief as the Court may deem appropriate and just under the circumstances.

## THE CIGNA DEFENDANTS' DEMAND FOR JURY TRIAL

The CIGNA Defendants hereby demand a trial by jury on all issues so triable.

CONNOLLY BOVE LODGE & HUTZ, LLP

By: _____

Collins J. Seitz, Jr. (#2237)
The Nemours Building
P.O. Box 2207
1007 North Orange Street
Wilmington, DE 19899
302.658.9141

*Attorneys for defendants and counter-
claim plaintiffs CIGNA Corporation;
CIGNA Health Corporation; CIGNA
HealthCare of Delaware, Inc.; Tel-Drug,
Inc.; Tel-Drug of Pennsylvania, L.L.C.*

OF COUNSEL:

Raphael V. Lupo
Joel M. Freed
Brian E. Ferguson
John R. Fuisz
Kori Anne Bagrowski
Sudip K. Kundu
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W., 12th Floor
Washington, DC 20005-3096
202.756.8000
202.756.8087

DATED:  October 26, 2006

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2006, a copy of The Cigna Defendants'

Answer And Counterclaims To Plaintiff Ronald A. Katz Technology Licensing, L.P.'S

Original Complaint was served upon the counsel of record in the manner indicated

below:

**VIA HAND DELIVERY AND ELECTRONICALLY**
Andre G. Bouchard, Esquire
John M. Seaman, Esquire
Bouchard, Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801

**VIA HAND DELIVERY AND ELECTRONICALLY**
Richard L. Horwitz, Esquire
Philip A. Rovner, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market Street
Hercules Plaza, 6th Floor
Wilmington, DE 19899-0951

**VIA HAND DELIVERY AND ELECTRONICALLY**
Steven J. Balick, Esquire
John G. Day, Esquire
Lauren E. Maguire, Esquire
Ashby & Geddes
222 Delaware Avenue, 17th Floor
Wilmington, DE 19801

**VIA HAND DELIVERY AND ELECTRONICALLY**
Karen Elizabeth Keller, Esquire
Young, Conaway, Stargatt & Taylor
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19899-0391

**VIA HAND DELIVERY AND ELECTRONICALLY**
David A. Felice, Esquire
Sean J. Bellew, Esquire
Cozen O'Connor
Chase Manhattan Centre
1201 North Market Street, Suite 1400
Wilmington, DE 19801

**VIA ELECTRONIC MAIL**
Dale A. Rice, Esquire
Heller Ehrman LLP
333 Bush Street
San Francisco, California 94104-2878
dale.rice@hellerehrman.com

**VIA ELECTRONIC MAIL**
Camille M. Miller, Esquire
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103
cmiller@cozen.com

**VIA ELECTRONIC MAIL**
Kenneth R. Adamo, Esquire
Jones Day
2727 North Harwood Street
Dallas, TX 75201-1515
kradamo@jonesday.com

496061-1

**VIA ELECTRONIC MAIL**
John W. Kozak, Esquire
Steven P. Petersen, Esquire
Leydig Voit & Mayer
Two Prudential Plaza
180 North Stetson Avenue, Suite 4900
Chicago, IL 60601-6780
jkozak@leydig.com
spetersen@leydig.com

**VIA ELECTRONIC MAIL**
Michael K. Plimack, Esquire
Heller Ehrman LLP
333 Bush Street
San Francisco, California 94104-2878
michael.plimack@hellerehrman.com

**VIA ELECTRONIC MAIL**
Robert T. Haslam, Esquire
Andrew C. Byrnes, Esquire
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, California 94025-3506
robert.haslam@hellerehrman.com
andrew.byrnes@hellerehrman.com

**VIA ELECTRONIC MAIL**
Samuel J. Najim, Esquire
Jones Day
1420 Peachtree Street
Atlanta, GA 30309-3053
snajim@jonesday.com

**VIA ELECTRONIC MAIL**
Kevin G. McBride, Esquire
Jones Day
555 South Flower Street
50th Floor
Los Angeles, CA 90071-2300
kgmcbride@jonesday.com

**VIA ELECTRONIC MAIL**
Curtis E. Woods, Esquire
Juliet A. Cox, Esquire
Sonnenschein Nath & Rosenthal LLP
4520 Main Street
Suite 1100
Kansas City, MO 64111-7700
cwoods@sonnenschein.com
jcox@sonnenschein.com

**VIA ELECTRONIC MAIL**
Daniel J. Thomasch, Esquire
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103
dthomasch@orrick.com

Collins J. Seitz, Jr. (Bar No. 2237)