IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 06-547-GMS |
| v. | ) ) ) | |
| American International Group, Inc.; AIG Retirement Services, Inc.; 21st Century Insurance Group; 21st Century Insurance Company; 21st Century Casualty Company; AIG Marketing, Inc.; AIG SunAmerica Asset Management Corp.; AIG Annuity Insurance Company; AIG Federal Savings Bank; The United States Life Insurance Company in the City of New York; AIG Life Insurance Company; American General Assurance Company; American General Indemnity Company; American General Life and Accident Insurance Company; American General Life Insurance Company; The Variable Annuity Life Insurance Company; VALIC Financial Advisors, Inc.; VALIC Retirement Services Company; National City Corporation; National City Bank; National City Bank of Indiana; Wilmington Trust Company; Wilmington Brokerage Services Company; Aquila, Inc.; DHL Holdings (USA) Inc.; DHL Express (USA), Inc.; Sky Courier, Inc.; CIGNA Corporation; CIGNA Health Corporation; CIGNA HealthCare of Delaware, Inc.; Tel-Drug, Inc.; Tel-Drug of Pennsylvania, L.L.C., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

**THE AIG DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFF RONALD A. KATZ TECHNOLOGY LICENSING, L.P.'S ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL**

Defendants American International Group, Inc.; AIG Retirement Services, Inc.; 21st

Century Insurance Group; 21st Century Insurance Company; 21st Century Casualty Company;

AIG Marketing, Inc.; AIG SunAmerica Asset Management Corp.; AIG Annuity Insurance

Company; AIG Federal Savings Bank; The United States Life Insurance Company in the City of New York; AIG Life Insurance Company; American General Assurance Company; American General Indemnity Company; American General Life and Accident Insurance Company; American General Life Insurance Company; The Variable Annuity Life Insurance Company; VALIC Financial Advisors, Inc.; VALIC Retirement Services Company; (collectively "AIG Defendants") respectfully submit this answer and affirmative defenses to the original complaint filed by Ronald A. Katz Technology Licensing, L.P. ("Katz"), as well as certain of the AIG Defendants' counterclaims against Katz, and state as follows:

## THE PARTIES

1.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 1, which statement has the effect of a denial of these allegations.

2.     The AIG Defendants admit that American International Group, Inc. is a Delaware corporation with a place of business at 70 Pine Street, New York, New York 10270.

3.     The AIG Defendants admit that AIG Retirement Services, Inc. is a Delaware corporation with a place of business at One SunAmerica Center, Los Angeles, California 90067, and is a subsidiary of American International Group, Inc.

4.     The AIG Defendants admit that 21st Century Insurance Group is a Delaware corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and is a subsidiary of American International Group, Inc.

5.     The AIG Defendants admit that 21st Century Insurance Company is a California corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and is a subsidiary of American International Group, Inc.

6.     The AIG Defendants admit that 21st Century Casualty Company is a California corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367, and is a subsidiary of American International Group, Inc.

7.     The AIG Defendants admit that AIG Marketing, Inc. is a Delaware corporation with a place of business at One AIG Center, Wilmington, Delaware 19803, and is a subsidiary of American International Group, Inc.

8.     The AIG Defendants admit that AIG SunAmerica Asset Management Corp. is a Delaware corporation with a place of business at Harborside Financial Center, 3200 Plaza 5, Jersey City, New Jersey 07311-4922, and is an indirect subsidiary of American International Group, Inc.

9.     The AIG Defendants admit that AIG Annuity Insurance Company is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

10.     The AIG Defendants admit that AIG Federal Savings Bank is a federal savings bank with a place of business at 600 King Street, Wilmington, Delaware 19801, and is a subsidiary of American International Group, Inc.

11.     The AIG Defendants admit that The United States Life Insurance Company in the City of New York is a New York corporation with a place of business at 830 Third Avenue, New York, New York 10022, and is an indirect subsidiary of American International Group, Inc.

12.     The AIG Defendants admit that AIG Life Insurance Company is a Delaware corporation with a place of business at One ALICO Plaza, Wilmington, Delaware 19899, and is a subsidiary of American International Group, Inc.

13.     The AIG Defendants admit that American General Assurance Company is an Illinois corporation with a place of business at 1000 Woodfield Road, Schaumburg, Illinois 60173, and is an indirect subsidiary of American International Group, Inc.

14.     The AIG Defendants admit that American General Indemnity Company is an Illinois corporation with a place of business at 1000 Woodfield Road, Schaumburg, Illinois 60173, and is an indirect subsidiary of American International Group, Inc.

15.     The AIG Defendants admit that American General Life and Accident Insurance Company is a Tennessee corporation with a place of business at American General Center – MC 338N, Nashville, Tennessee 37250, and is an indirect subsidiary of American International Group, Inc.

16.     The AIG Defendants admit that American General Life Insurance Company is a Texas corporation with a place of business at 2727-A Allen Parkway, Houston, Texas 77251, and is an indirect subsidiary of American International Group, Inc.

17.     The AIG Defendants admit that The Variable Annuity Life Insurance Company is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

18.     The AIG Defendants admit that VALIC Financial Advisors, Inc. is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

19.     The AIG Defendants admit that VALIC Retirement Services Company is a Texas corporation with a place of business at 2929 Allen Parkway, Houston, Texas 77019, and is an indirect subsidiary of American International Group, Inc.

20.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 20, which statement has the effect of a denial of these allegations.

21.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 21, which statement has the effect of a denial of these allegations.

22.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 22, which statement has the effect of a denial of these allegations.

23.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 23, which statement has the effect of a denial of these allegations.

24.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 24, which statement has the effect of a denial of these allegations.

25.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 25, which statement has the effect of a denial of these allegations.

26.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 26, which statement has the effect of a denial of these allegations.

27.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 27, which statement has the effect of a denial of these allegations.

28.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 28, which statement has the effect of a denial of these allegations.

29.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 29, which statement has the effect of a denial of these allegations.

30.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 30, which statement has the effect of a denial of these allegations.

31.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 31, which statement has the effect of a denial of these allegations.

32.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 32, which statement has the effect of a denial of these allegations.

33.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 33, which statement has the effect of a denial of these allegations.

## JURISDICTION AND VENUE

34.     The AIG Defendants admit that Katz purports to bring a civil action arising under the patent laws of the United States, 35 U.S.C. § 101 *et seq.*  The AIG Defendants do not contest this Court's jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

35.     The AIG Defendants deny any patent infringement and in particular deny that the AIG Defendants operate infringing automated call processing systems in this district or elsewhere.  The AIG Defendants admit that American International Group, Inc., AIG Retirement Services, Inc., 21st Century Insurance Group, AIG Marketing, Inc., AIG SunAmerica Asset Management Corp., AIG Federal Savings Bank, and AIG Life Insurance Company are subject to personal jurisdiction in this Court.  The AIG Defendants deny that 21st Century Insurance Company, 21st Century Casualty Company, AIG Annuity Insurance Company, The United States Life Insurance Company in the City of New York, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company are subject to personal jurisdiction in this Court.

36.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 36, which statement has the effect of a denial of these allegations.

37.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 37, which statement has the effect of a denial of these allegations.

38.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 38, which statement has the effect of a denial of these allegations.

39.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 39, which statement has the effect of a denial of these allegations.

40.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 40, which statement has the effect of a denial of these allegations.

41.     The AIG Defendants admit that venue is proper in this judicial district with respect to American International Group, Inc., AIG Retirement Services, Inc., 21st Century Insurance Group, AIG Marketing, Inc., AIG SunAmerica Asset Management Corp., AIG Federal Savings Bank, and AIG Life Insurance Company.  The AIG Defendants deny that venue is proper in this judicial district with respect to 21st Century Insurance Company, 21st Century Casualty Company, AIG Annuity Insurance Company, The United States Life Insurance Company in the City of New York, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company.  The AIG Defendants lack sufficient knowledge or information regarding the other defendants, which statement has the effect of a denial of these allegations.

42.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegation that Ronald A. Katz is the founder of Katz Technology Licensing,

which statement has the effect of a denial of this allegation. The AIG Defendants deny all remaining allegations in paragraph 42.

43.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegation that Katz co-founded Telecredit, Inc., which statement has the effect of a denial of this allegation. The AIG Defendants deny all remaining allegations in paragraph 43.

44.     The AIG Defendants admit that Certegy is a public company traded on the New York Stock Exchange. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 44, which statement has the effect of a denial of these allegations.

45.     The AIG Defendants deny the allegations in paragraph 45.

46.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 46, which statement has the effect of a denial of these allegations.

47.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 47, which statement has the effect of a denial of these allegations.

48.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 48, which statement has the effect of a denial of these allegations.

49.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 49, which statement has the effect of a denial of these allegations.

50.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 50, which statement has the effect of a denial of these allegations.

51.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 51, which statement has the effect of a denial of these allegations.

52.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 52, which statement has the effect of a denial of these allegations.

53.    The AIG Defendants deny infringement of any of the patents-in-suit.  The AIG Defendants admit that they have not agreed to license any of the patents-in-suit.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 53, which statement has the effect of a denial of these allegations.

## THE ASSERTED PATENTS

54.    The AIG Defendants admit that, on December 20, 1988, U.S. Patent No. 4,792,968 ("the '968 patent") entitled "Statistical Analysis System For Use With Public Communication Facility" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 54, which statement has the effect of a denial of these allegations.

55.    The AIG Defendants admit that, on May 29, 1990, U.S. Patent No. 4,930,150 ("the '150 patent") entitled "Telephonic Interface Control System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the

truth of the remaining allegations in paragraph 55, which statement has the effect of a denial of these allegations.

56.    The AIG Defendants admit that, on July 7, 1992, U.S. Patent No. 5,128,984 ("the '984 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 56, which statement has the effect of a denial of these allegations.

57.    The AIG Defendants admit that, on October 5, 1993, U.S. Patent No. 5,251,252 ("the '252 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 57, which statement has the effect of a denial of these allegations.

58.    The AIG Defendants admit that, on September 27, 1994, U.S. Patent No. 5,351,285 ("the '285 patent") entitled "Multiple Format Telephonic Interface Control System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 58, which statement has the effect of a denial of these allegations.

59.    The AIG Defendants admit that, on November 4, 1997, U.S. Patent No. 5,684,863 ("the '863 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 59, which statement has the effect of a denial of these allegations.

60.     The AIG Defendants admit that, on July 28, 1998, U.S. Patent No. 5,787,156 ("the '156 patent") entitled "Telephonic-Interface Lottery System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 60, which statement has the effect of a denial of these allegations.

61.     The AIG Defendants admit that, on September 29, 1998, U.S. Patent No. 5,815,551 ("the '551 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 61, which statement has the effect of a denial of these allegations.

62.     The AIG Defendants admit that, on October 27, 1998, U.S. Patent No. 5,828,734 ("the '734 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 62, which statement has the effect of a denial of these allegations.

63.     The AIG Defendants admit that, on April 27, 1999, U.S. Patent No. 5,898,762 ("the '762 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 63, which statement has the effect of a denial of these allegations.

64.     The AIG Defendants admit that, on June 29, 1999, U.S. Patent No. 5,917,893 ("the '893 patent") entitled "Multiple Format Telephonic Interface Control System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either

admit or deny the truth of the remaining allegations in paragraph 64, which statement has the effect of a denial of these allegations.

65.     The AIG Defendants admit that, on October 26, 1999, U.S. Patent No. 5,974,120 ("the '120 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 65, which statement has the effect of a denial of these allegations.

66.     The AIG Defendants admit that, on March 7, 2000, U.S. Patent No. 6,035,021 ("the '021 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 66, which statement has the effect of a denial of these allegations.

67.     The AIG Defendants admit that, on November 14, 2000, U.S. Patent No. 6,148,065 ("the '065 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 67, which statement has the effect of a denial of these allegations.

68.     The AIG Defendants admit that, on January 1, 2002, U.S. Patent No. 6,335,965 ("the '965 patent") entitled "Voice-Data Telephonic Interface Control System" was issued to Ronald A. Katz.  The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 68, which statement has the effect of a denial of these allegations.

69.     The AIG Defendants admit that, on February 19, 2002, U.S. Patent No. 6,349,134 ("the '134 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 69, which statement has the effect of a denial of these allegations.

70.     The AIG Defendants admit that, on July 23, 2002, U.S. Patent No. 6,424,703 ("the '703 patent") entitled "Telephonic-Interface Lottery System" was issued to Ronald A. Katz. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 70, which statement has the effect of a denial of these allegations.

71.     The AIG Defendants admit that, on August 13, 2002, U.S. Patent No. 6,434,223 ("the '223 patent") entitled "Telephone Interface Call Processing System With Call Selectivity" was issued to Ronald A. Katz. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 71, which statement has the effect of a denial of these allegations.

72.     The AIG Defendants admit that, on January 28, 2003, U.S. Patent No. 6,512,415 ("the '415 patent") entitled "Telephonic-Interface Game Control System" was issued to Ronald A. Katz. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the remaining allegations in paragraph 72, which statement has the effect of a denial of these allegations.

73.     The AIG Defendants admit that, on January 13, 2004, U.S. Patent No. 6,678,360 ("the '360 patent") entitled "Telephonic-Interface Statistical Analysis System" was issued to Ronald A. Katz. The AIG Defendants lack sufficient knowledge or information to either admit

or deny the truth of the remaining allegations in paragraph 73, which statement has the effect of a denial of these allegations.

## FIRST CLAIM
## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST THE AIG DEFENDANTS)

74.    The AIG Defendants incorporate by reference their responses to paragraphs 1-73 as though fully set forth herein.

75.    The AIG Defendants admit that the AIG Defendants provide insurance, banking, investment and other financial services.

76.    The AIG Defendants deny the allegations in paragraph 76.

77.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 77, which statement has the effect of a denial of these allegations.

78.    The AIG Defendants deny the allegations in paragraph 78.

79.    The AIG Defendants deny the allegations in paragraph 79.

80.    The AIG Defendants deny the allegations in paragraph 80.

81.    The AIG Defendants deny the allegations in paragraph 81.

## SECOND CLAIM
## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST NATIONAL CITY ENTITES)

82.    The AIG Defendants incorporate by reference their responses to paragraphs 1-81 as though fully set forth herein.

83.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 83, which statement has the effect of a denial of these allegations.

84.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 84, which statement has the effect of a denial of these allegations.

85.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 85, which statement has the effect of a denial of these allegations.

86.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 86, which statement has the effect of a denial of these allegations.

87.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 87, which statement has the effect of a denial of these allegations.

88.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 88, which statement has the effect of a denial of these allegations.

89.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 89, which statement has the effect of a denial of these allegations.

**THIRD CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS**
**AGAINST WILMINGTON TRUST ENTITIES)**

90.     The AIG Defendants incorporate by reference their responses to paragraphs 1-89 as though fully set forth herein.

91.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 91, which statement has the effect of a denial of these allegations.

92.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 92, which statement has the effect of a denial of these allegations.

93.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 93, which statement has the effect of a denial of these allegations.

94.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 94, which statement has the effect of a denial of these allegations.

95.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 95, which statement has the effect of a denial of these allegations.

96.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 96, which statement has the effect of a denial of these allegations.

97.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 97, which statement has the effect of a denial of these allegations.

**FOURTH CLAIM**
**(KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST AQUILA)**

98.     The AIG Defendants incorporate by reference their responses to paragraphs 1-97 as though fully set forth herein.

99.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 99, which statement has the effect of a denial of these allegations.

100.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 100, which statement has the effect of a denial of these allegations.

101.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 101, which statement has the effect of a denial of these allegations.

102.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 102, which statement has the effect of a denial of these allegations.

103.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 103, which statement has the effect of a denial of these allegations.

104.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 104, which statement has the effect of a denial of these allegations.

105. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 105, which statement has the effect of a denial of these allegations.

### FIFTH CLAIM
### (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST DHL ENTITIES)

106. The AIG Defendants incorporate by reference their responses to paragraphs 1-105 as though fully set forth herein.

107. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 107, which statement has the effect of a denial of these allegations.

108. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 108, which statement has the effect of a denial of these allegations.

109. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 109, which statement has the effect of a denial of these allegations.

110. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 110, which statement has the effect of a denial of these allegations.

111. The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 111, which statement has the effect of a denial of these allegations.

112.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 112, which statement has the effect of a denial of these allegations.

113.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 113, which statement has the effect of a denial of these allegations.

## SIXTH CLAIM
## (KATZ'S PATENT INFRINGEMENT ALLEGATIONS AGAINST THE CIGNA ENTITIES)

114.     The AIG Defendants incorporate by reference their responses to paragraphs 1-113 as though fully set forth herein.

115.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 115, which statement has the effect of a denial of these allegations.

116.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 116, which statement has the effect of a denial of these allegations.

117.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 117, which statement has the effect of a denial of these allegations.

118.     The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 118, which statement has the effect of a denial of these allegations.

119.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 119, which statement has the effect of a denial of these allegations.

120.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 120, which statement has the effect of a denial of these allegations.

121.    The AIG Defendants lack sufficient knowledge or information to either admit or deny the truth of the allegations in paragraph 121, which statement has the effect of a denial of these allegations.

## KATZ'S REQUEST FOR RELIEF

122.    As to the requests for relief directed toward the AIG Defendants, the AIG Defendants deny that Katz is entitled to any relief whatsoever.

## THE AIG DEFENDANTS' AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.    Katz is not entitled to any relief against the AIG Defendants because the AIG Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and asserted claim of the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '762, '863, '893, '965 and '968 patents (collectively, the "Katz asserted patents").

### Second Affirmative Defense

2.    The '065 patent and all of the claims in the '065 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

**Third Affirmative Defense**

3.     The '120 patent and all of the claims in the '120 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Fourth Affirmative Defense**

4.     The '134 patent and all of the claims in the '134 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Fifth Affirmative Defense**

5.     The '150 patent and all of the claims in the '150 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Sixth Affirmative Defense**

6.     The '223 patent and all of the claims in the '223 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Seventh Affirmative Defense**

7.     The '252 patent and all of the claims in the '252 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Eighth Affirmative Defense**

8.     The '285 patent and all of the claims in the '285 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Ninth Affirmative Defense

9.      The '360 patent and all of the claims in the '360 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Tenth Affirmative Defense

10.     The '551 patent and all of the claims in the '551 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Eleventh Affirmative Defense

11.     The '734 patent and all of the claims in the '734 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Twelfth Affirmative Defense

12.     The '762 patent and all of the claims in the '762 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Thirteenth Affirmative Defense

13.     The '863 patent and all of the claims in the '863 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

### Fourteenth Affirmative Defense

14.     The '893 patent and all of the claims in the '893 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Fifteenth Affirmative Defense**

15.    The '965 patent and all of the claims in the '965 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Sixteenth Affirmative Defense**

16.    The '968 patent and all of the claims in the '968 patent are invalid under one or more sections of Title 35 of the U.S. Code, including, without limitation, 35 U.S.C. §§ 102, 103 and 112.

**Seventeenth Affirmative Defense**

17.    On information and belief, Katz is estopped from asserting any interpretation of any of the claims of the Katz asserted patents that would be broad enough to cover any of the AIG Defendants' automated telephone systems, by reasons of statements and representations made by the inventor to the United States Patent and Trademark Office during the prosecution of applications for issuance of the Katz asserted patents, or by reasons of prior acts.

**Eighteenth Affirmative Defense**

18.    On information and belief, the Katz asserted patents are unenforceable under the doctrine of prosecution laches.

**Nineteenth Affirmative Defense**

19.    On information and belief, personal jurisdiction over 21st Century Insurance Company, 21st Century Casualty Company, AIG Annuity Insurance Company, The United States Life Insurance Company in the City of New York, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life

Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company is lacking.

### Twentieth Affirmative Defense

20.     On information and belief, this is not the proper venue for Katz's claims with respect to 21st Century Insurance Company, 21st Century Casualty Company, AIG Annuity Insurance Company, The United States Life Insurance Company in the City of New York, American General Assurance Company, American General Indemnity Company, American General Life and Accident Insurance Company, American General Life Insurance Company, The Variable Annuity Life Insurance Company, VALIC Financial Advisors, Inc., and VALIC Retirement Services Company.

### Twenty-First Affirmative Defense

21.     On information and belief, Katz is barred in whole or in part from asserting the Katz asserted patents against the AIG Defendants under the doctrine of laches, equitable estoppel or both.

### Twenty-Second Affirmative Defense

22.     On information and belief, as to some or all of the alleged infringing services, Katz's claims for relief are barred by express and/or implied license.

### Twenty-Third Affirmative Defense

23.     On information and belief, Katz has not complied with the requirements of 35 U.S.C. § 287 and is precluded from seeking any recovery for alleged damages prior to the filing of this action.

**Twenty-Fourth Affirmative Defense**

24.     The '863,'734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable due to inequitable conduct in their procurement in violation of duties imposed by 37 C.F.R. § 1.56.

25.     During the course of prosecuting the applications leading to the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents, the named inventor, Ronald A. Katz ("Mr. Katz"), and his attorneys engaged in inequitable conduct by intentionally withholding material information, including prior art, from the United States Patent and Trademark Office ("the USPTO"). As a result of that inequitable conduct, which is described more fully below, the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable.

26.     The material information that Mr. Katz and his attorneys deliberately withheld from the USPTO includes the existence of, and the information contained in, the following references: U.S. Patent No. 4,071,698 to Barger ("Barger"), Canadian Patent No. 1,162,336 to De Bruyn (and its corresponding published European Patent Specification EP932410A1) ("De Bruyn"), references from the Periphonics Corporation ("Periphonics") including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference"), the publication of Katz's own PCT application (PCT application WO 87/00375), and U.S. Patent No. 4,943,995 to Daudelin ("Daudelin").

**Barger**

27.     The Barger patent issued on January 31, 1978, over seven years before the earliest possible effective filing date of the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

28.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the Barger patent as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.  On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

29.     Thereafter, on information and belief, in or about mid-1989, Mr. Katz and his attorneys negotiated the purchase of the Barger patent on behalf of First Data Corporation, which was then the assignee of the Katz patents.

30.     Mr. Katz and his attorneys did not disclose the Barger reference during the prosecution of at least the applications that led to the grant of U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,073,929 ("the '929 patent"), 5,255,309 ("the '309 patent"), 5,128,984 ("the '984 patent"); and the '252, '150, '285, and '965 patents.

31.     The USPTO did not consider the Barger reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.

32.     The Barger reference would have been material to the patentability of the applications that issued as the '739, '929, '309, '984, '252, '150, '285, and '965 patents at least because the Barger reference discloses a telephone-based system that screens a caller by checking the caller's account number to insure that a limit on use of the account number has not been exceeded.

33.     Indeed, during the reexamination of one of Mr. Katz's patents, U.S. Patent No. 5,561,707 ("the '707 patent"), which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting sixteen (16) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the Barger reference.

34.     At all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

35.     On information and belief, at all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

36.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to properly disclose the Barger reference to the USPTO during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

37.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

38.    Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents

is sufficiently related to at least one or more of the '739, '929, '309, '984, '252, '150, '285, and

'965 patents to be rendered unenforceable as well under the doctrine of infectious

unenforceability.

39.    Specifically, the '863 patent is closely related to the '739 and '309 patents at least

because it has a specification that is substantially the same, common lineage, commons terms of

enforcement and/or claimed subject matter with common elements and overlapping scope.  The

common elements reflect concepts that are disclosed in one or more of the withheld references,

such as the qualification of callers for limited access to, or limits on the use of, the system or the

qualification of callers based at least in part on the caller's telephone number.

40.    Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at

least the '739 patent.  In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762,

and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in

response to double patenting rejections made by the Patent and Trademark Office indicating that

the claimed inventions were not patentably distinct.

41.    The '734, '223 and '120 patents are closely related to the '984, '929, '739 and

'252 patents at least because they have specifications that are substantially the same, common

lineage, commons terms of enforcement and/or claimed subject matter with common elements

and overlapping scope.  The common elements reflect concepts that are disclosed in one or more

of the withheld references, including claim limitations concerning the acceptance or qualification

of callers based on a number such as limited-use number or the caller's telephone number.

42.     The '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

**De Bruyn**

43.     The De Bruyn patent application was first published in French by the European Patent Office ("EPO") on July 22, 1981.  On February 14, 1984, the Canadian Patent Office issued corresponding Canadian Patent No. 1,162,336 that included an English-language version of the original EPO specification.  The EPO specification for De Bruyn was published nearly four years before the earliest possible effective filing date of the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.  The Canadian De Bruyn patent was published more than one year before the earliest possible effective filing date of the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

44.     In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the De Bruyn reference as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.  On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

45.     On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

46.     Mr. Katz and his attorneys did not disclose the De Bruyn reference during the prosecution of the applications that led to the grant of the '739, '929, '309, '984, '252, '150, and '285 patents.

47.     The USPTO did not consider the De Bruyn references during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

48.     The De Bruyn reference would have been material to the patentability of the applications that issued as '739, '929, '309, '984, '252, '150, and '285 patents at least because the De Bruyn reference discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

49.     Indeed, during the reexamination of the '707 patent, which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting over seventy (70) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the De Bruyn reference.

50.     At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

51.     On information and belief, at all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

52.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn reference during the prosecution of the '739, '929, '309, '984, '252, '150, and '285 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

53.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

54.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to one or more of the '739, '929, '309, '984, '252, '150, and '285 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

55.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

56.     Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent.  In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

57.     The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope.  The common elements reflect concepts that are disclosed in one or more

of the withheld references, including claim limitations concerning the acceptance or qualification

of callers based on a number such as limited-use number or the caller's telephone number.

58.     The '984, '252, '156, '150, '285, '893, '863, '734, '120, '223, '551, '065, '360,

'762, and '134 patents are unenforceable as a result of the above-described inequitable conduct

in the prosecution of closely related patents and patent applications.

**Periphonics References**

59.     On information and belief, in April 1993, in connection with *First Data*

*Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District

of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West

materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson

firm"). The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications,

some of which would ultimately issue as the Katz asserted patents.

60.     In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz

stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500

items (including single or plural related documents grouped together), were identified by the

defendant. However, during pretrial procedures, the defendant distilled the applied art to 59

separate items (including single or plural related documents)." Paper no. 3, filed November 4,

1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding

the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no.

3, filed November 4, 1994.

61.     Katz made the same statements in the applications that issued as the '707 patent

(IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent

application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751).

Other applications use varying language that refers the examiner to the references disclosed

during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

62.     In connection with making these statements during the prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials.

63.     On information and belief, the Bank-From-Home and VoicePac references bore Bates numbers within the range of the West materials.

64.     Specifically, the Bank-From-Home reference bore Bates numbers W73055–W73095, and the VoicePac reference bore Bates numbers W73219–W73302.

65.     The Bank-From-Home and the VoicePac references are highly relevant to many claims of the Katz asserted patents. The Bank-From-Home reference describes such limitations of claims of the Katz asserted patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system. The VoicePac reference describes such limitations of claims of the Katz asserted patents as interfacing callers to the system and transferring callers to a customer service representative.

66.     While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality. Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and

constitutes inequitable conduct. Thus, at least the '965, '285, '893, '863, '762 and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during the prosecution of their respective applications.

### Katz PCT Application

67.    Katz failed to disclose the publication of Mr. Katz's own PCT application (PCT application WO 87/00375) ("the '375 application") during the prosecution of at least the '739 patent.

68.    Since the '375 application was published on January 15, 1987, it would be considered prior art for any claims with a filing date more than a year after the publication date (January 15, 1987).  35 U.S.C. § 102(b).

69.    The filing date of the application that issued as the '739 patent, which was May 16, 1988, was more than one year after the publication of the '375 application.

70.    Therefore, the published '375 application constituted prior art to all the claims that incorporated any new matter added in the application for the '739 patent.

71.    The published '375 application would have been material to many of the basic elements claims in the '739 patent, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

72.    Despite knowledge of the '375 application and its materiality, Katz did not bring the '375 application to the attention of the examiner during the prosecution of the '739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

73.    The Katz asserted patents contain claims with subject matter that includes subject matter that was at issue during the prosecution of the '739 patent and to which the '375

application would have been relevant, and are thus rendered unenforceable through infectious unenforceability.

74.     As an example, due to the interrelatedness of the '893, '863, '551, '065, '360, '762, '134 and '739 patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762, and '134 patents any patent term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

75.     The inequitable conduct concerning the '375 application renders unenforceable at least the '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents.

**Daudelin**

76.     On information and belief, Mr. Katz and his attorneys were aware of the Daudelin patent at least by October 26, 1997.

77.     Mr. Katz and his attorneys did not disclose the Daudelin patent during the prosecution of at least the '120 patent.

78.     The Daudelin patent is prior art to at least certain claims of the '120 patent because it was filed in the USPTO years prior to the effective filing date of those claims.

79.     The Daudelin patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent.

80.     More specifically, the Daudelin patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products.  Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof.  Callers are qualified based in part on their calling party number, and the particular product they selected.

81.    Because the Daudelin patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent.

82.    For example, the '120 patent claims receiving calls in a toll free mode, receiving calls directed to two different toll-free numbers, receiving and testing calling number identification data, prompting callers with voice prompts, and processing data entered by the callers.

83.    On information and belief, Mr. Katz and his attorneys were aware of the Daudelin patent during the prosecution of the `120 patent, having cited it to the USPTO in connection with other applications more than two years prior to the issuance of the '120 patent.  On information and belief, the Daudelin patent was listed in previous submissions during the prosecution of certain of Mr. Katz's other patents, although "Daudelin" was misspelled as "Dandelin."

84.    On information and belief, Mr. Katz and his attorneys intentionally withheld the material Daudelin patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

85.    Other Katz asserted patents are directly related to the '120 patent and are thus rendered unenforceable through infectious unenforceability.

86.    For example, at least the '223 patent claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Daudelin patent is material.

87.    Accordingly, at least the '120 and '223 patents are rendered unenforceable as a result of the above-described inequitable conduct.

**False and Misleading Statements**

88.     On information and belief, Katz made false and misleading statements about the priority dates to which claims of pending applications were entitled, with the intent to remove prior art references that were before the Patent and Trademark Office in Mr. Katz's pending applications.

89.     For example, during prosecution of application serial number 07/425,779, which issued as the '984 patent, the Patent Examiner rejected claim 10 of the application under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ("the '375 application")." Office action dated March 21, 1991. In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case." Katz's Amendment dated June 20, 1991.

90.     On information and belief, Katz's statement was knowingly false and in violation of the duty of candor owed by patent applicants to the Patent and Trademark Office in that the '375 application was in fact properly cited by the Examiner as a reference against claim 10.

91.     On information and belief, Katz's statement was intended to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in the '984 patent, and constituted inequitable conduct, rendering the '984 patent unenforceable.

92.     The '120, '734 and '223 patents are closely related to the '984 patent, and are thus rendered unenforceable through infectious unenforceability. The '734, '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent

- 38 -

in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

93.    Thus, the conduct during prosecution of the '984 patent also renders the '734, '120 and '223 patents unenforceable.

94.    In another example, during the prosecution of the '734 patent, Katz identified U.S. Patent No. 4,972,461, issued to Brown (the "Brown patent"), to the Patent and Trademark Office.  Katz, however, falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent.  Amendment, January 31, 1996 at page 11-12.

95.    However, the relevant pending application's claims did not predate Brown because there is no suggestion in the '150 patent of multiple call modes, as claimed in the '734 patent.

96.    In addition, on information and belief, the '734 patent does not properly claim priority to the '150 patent.

97.    Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

98.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability.  The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent.  In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and

Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

99.    In another example, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,797,913 issued to Kaplan et al. (the "Kaplan patent"), to the Patent and Trademark Office. Katz, however, falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference." Supplemental Amendment filed March 14, 1995 at p. 20.

100.    On information and belief, Katz's statement was false at the time it was made since there were claims pending that claimed subject matter not supported in any parent applications filed prior to August 4, 1987, the filing date of the Kaplan patent. For example, claim 17 that was pending at the time of Katz's statement recited multiple call modes. There is no suggestion of multiple call modes in, for example, the '968 patent. Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

101.    The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the

conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

## Twenty-Fifth Affirmative Defense

102.    At least the '734, '120, '134, and '223 patents are unenforceable under the doctrines of unclean hands and/or patent misuse because Katz has asserted the '734, '120, '134, and '223 patents with knowledge of that at least one claim in each of these patents is invalid.

## Twenty-Sixth Affirmative Defense

103.    To the extent Katz seeks damages for alleged infringement more than six years prior to the filing of the present litigation, Katz's claims are barred by the statute of limitations under 35 U.S.C. § 287.

## THE COUNTERCLAIM AIG DEFENDANTS' COUNTERCLAIMS AGAINST KATZ

As for its counterclaims against Katz, Defendants American International Group, Inc.; AIG Retirement Services, Inc.; 21st Century Insurance Group; AIG Marketing, Inc.; AIG SunAmerica Asset Management Corp.; AIG Federal Savings Bank; and AIG Life Insurance Company (collectively, the Counterclaim AIG Defendants) complain as follows:

1.    American International Group, Inc. is a Delaware corporation with a place of business at 70 Pine Street, New York, New York 10270.

2.    AIG Retirement Services, Inc. is a Delaware corporation with a place of business at One SunAmerica Center, Los Angeles, California 90067.

3.    21st Century Insurance Group is a Delaware corporation with a place of business at 6301 Owensmouth Avenue, Woodland Hills, California 91367.

4.    AIG Marketing, Inc. is a Delaware corporation with a place of business at One AIG Center, Wilmington, Delaware 19803.

- 41 -

5.      AIG SunAmerica Asset Management Corp. is a Delaware corporation with a place of business at Harborside Financial Center, 3200 Plaza 5, Jersey City, New Jersey 07311-4922.

6.      AIG Federal Savings Bank is a federal savings bank with a place of business at 600 King Street, Wilmington, Delaware 19801.

7.      AIG Life Insurance Company is a Delaware corporation with a place of business at One ALICO Plaza, Wilmington, Delaware 19899.

8.      On information and belief, Ronald A. Katz Technology Licensing, L.P. ("Katz") is a limited partnership organized under the laws of the State of California, with a principal place of business in Los Angeles, California.

9.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2201.

10.     Katz is subject to personal jurisdiction in this judicial district.

11.     Venue for this action is proper in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## COUNT I
### (For Declaratory Judgment of Non-Infringement)

12.     The Counterclaim AIG Defendants repeat and reallege the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

13.     The Counterclaim AIG Defendants are not infringing, and have not infringed, directly, by inducement, contributorily, or in any way, any valid and asserted claim of any of the Katz asserted patents.

14.     To resolve the legal and factual questions raised by Katz, and to afford relief from the uncertainty and controversy that Katz's accusations have precipitated, the Counterclaim AIG

Defendants are entitled to a declaratory judgment that they do not infringe any valid and asserted claim of any of the Katz asserted patents.

### COUNT II
### (For Declaratory Judgment of Invalidity)

15.    The Counterclaim AIG Defendants repeat and reallege the allegations of the preceding paragraphs in this counterclaim as if fully set forth herein.

16.    One or more of the claims of the '065, '120, '134, '150, '223, '252, '285, '360, '551, '734, '762, '863, '893, '965, and '968 patents (collectively, the "Katz asserted patents") is invalid under one or more sections of Title 35 of the United States Code, including, without limitation, 35 U.S.C. §§ 102, 103, and 112.

17.    To resolve the legal and factual questions raised by Katz, and to afford relief from the uncertainty and controversy that Katz's accusations have precipitated, the Counterclaim AIG Defendants are entitled to a declaratory judgment that one or more of the claims of the Katz asserted patents is invalid.

### COUNT III
### (For Declaratory Judgment of Unenforceability Based on Inequitable Conduct)

18.    The '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable due to inequitable conduct in their procurement in violation of duties imposed by 37 C.F.R. § 1.56.

19.    During the course of prosecuting the applications leading to the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents, the named inventor, Ronald A. Katz ("Mr. Katz"), and his attorneys engaged in inequitable conduct by intentionally withholding material information, including prior art, from the United States Patent and Trademark Office ("the USPTO").  As a result of that inequitable conduct, which is described

- 43 -

more fully below, the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents are unenforceable.

20.    The material information that Mr. Katz and his attorneys deliberately withheld from the USPTO includes the existence of, and the information contained in, the following references: U.S. Patent No. 4,071,698 to Barger ("Barger"), Canadian Patent No. 1,162,336 to De Bruyn (and its corresponding published European Patent Specification EP932410A1) ("De Bruyn"), references from the Periphonics Corporation ("Periphonics") including (1) Bank-From-Home Product Description, Publication #3000002, January 7, 1980 ("the Bank-From-Home reference") and (2) Periphonics VoicePac System with Peritalk/Announce Product Description and user Guide, Publication #3270601C, 1987 ("the VoicePac reference"), the publication of Katz's own PCT application (PCT application WO 87/00375), and U.S. Patent No. 4,943,995 to Daudelin ("Daudelin").

### Barger

21.    The Barger patent issued on January 31, 1978, over seven years before the earliest possible effective filing date of the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

22.    In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988.  The EPO search report listed the Barger patent as a reference deemed to be "particularly relevant if taken alone."  The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO.  On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

23.    Thereafter, on information and belief, in or about mid-1989, Mr. Katz and his attorneys negotiated the purchase of the Barger patent on behalf of First Data Corporation, which was then the assignee of the Katz patents.

24.    Mr. Katz and his attorneys did not disclose the Barger reference during the prosecution of at least the applications that led to the grant of U.S. Patent Nos. 4,845,739 ("the '739 patent"), 5,073,929 ("the '929 patent"), 5,255,309 ("the '309 patent"), 5,128,984 ("the '984 patent"); and the '252, '150, '285, and '965 patents.

25.    The USPTO did not consider the Barger reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents.

26.    The Barger reference would have been material to the patentability of the applications that issued as the '739, '929, '309, '984, '252, '150, '285, and '965 patents at least because the Barger reference discloses a telephone-based system that screens a caller by checking the caller's account number to insure that a limit on use of the account number has not been exceeded.

27.    Indeed, during the reexamination of one of Mr. Katz's patents, U.S. Patent No. 5,561,707 ("the '707 patent"), which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office action rejecting sixteen (16) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the Barger reference.

28.    At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

29.     On information and belief, at all times during the prosecution and pendancy of the applications leading to the '739, '929, '309, '984, '252, '150, '285, and '965 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

30.     Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to properly disclose the Barger reference to the USPTO during the prosecution of the '739, '929, '309, '984, '252, '150, '285, and '965 patents. On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

31.     As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, '285, and '965 patents. That inequitable conduct renders each of those patents unenforceable in its entirety.

32.     Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to at least one or more of the '739, '929, '309, '984, '252, '150, '285, and '965 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

33.     Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references,

such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

34.    Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent. In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

35.    The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

36.    The '252, '150, '285, '965, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### De Bruyn

37.    The De Bruyn patent application was first published in French by the European Patent Office ("EPO") on July 22, 1981. On February 14, 1984, the Canadian Patent Office issued corresponding Canadian Patent No. 1,162,336 that included an English-language version of the original EPO specification. The EPO specification for De Bruyn was published nearly four years before the earliest possible effective filing date of the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents. The Canadian De Bruyn patent

- 47 -

was published more than one year before the earliest possible effective filing date of the '863, '734, '120, '223, '252, '150, '285, '893, '551, '065, '360, '762, '134, and '965 patents.

38.    In connection with an application filed by Mr. Katz to pursue foreign patents, the EPO conducted a prior art search and documented the results of the search in a search report dated December 1988. The EPO search report listed the De Bruyn reference as a reference deemed to be "particularly relevant if taken alone." The category "particularly relevant if taken alone" was then the highest relevance category used by the EPO. On information and belief, Mr. Katz and his attorneys received a copy of that search report in December 1988 or January 1989.

39.    On information and belief, Mr. Katz and his attorneys were aware of the De Bruyn reference during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

40.    Mr. Katz and his attorneys did not disclose the De Bruyn reference during the prosecution of the applications that led to the grant of the '739, '929, '309, '984, '252, '150, and '285 patents.

41.    The USPTO did not consider the De Bruyn references during the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.

42.    The De Bruyn reference would have been material to the patentability of the applications that issued as '739, '929, '309, '984, '252, '150, and '285 patents at least because the De Bruyn reference discloses a telephone lottery system that screens a caller by checking the caller's phone number, which has a limit on its use.

43.    Indeed, during the reexamination of the '707 patent, which has a specification substantially identical to the '739 patent, the Patent and Trademark Office issued an Office

action rejecting over seventy (70) claims of the '707 patent under 35 U.S.C. § 102(b), as being anticipated by the De Bruyn reference.

44.    At all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys owed a duty of candor and fair dealing to the USPTO, and were under a duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

45.    On information and belief, at all times during the prosecution and pendency of the applications leading to the '739, '929, '309, '984, '252, '150, and '285 patents, Mr. Katz and his attorneys were aware of their duty of candor and fair dealing to the USPTO, and were aware of their duty to disclose material information to the USPTO, as required by 37 C.F.R. § 1.56.

46.    Despite the duties of candor, fair dealing and disclosure imposed on them by law and by the rules of the USPTO, Mr. Katz and his attorneys failed to disclose properly to the USPTO the De Bruyn reference during the prosecution of the '739, '929, '309, '984, '252, '150, and '285 patents.  On information and belief, they did so deliberately and with an intent to deceive the USPTO and its officials.

47.    As a result of the above-described conduct, Mr. Katz and/or his attorneys are guilty of inequitable conduct in the prosecution of the applications for the '739, '929, '309, '984, '252, '150, and '285 patents.  That inequitable conduct renders each of those patents unenforceable in its entirety.

48.    Each of the '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents is sufficiently related to one or more of the '739, '929, '309, '984, '252, '150, and '285 patents to be rendered unenforceable as well under the doctrine of infectious unenforceability.

49.    Specifically, the '863 patent is closely related to the '739 and '309 patents at least because it has a specification that is substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, such as the qualification of callers for limited access to, or limits on the use of, the system or the qualification of callers based at least in part on the caller's telephone number.

50.    Further, the '893, '551, '065, '360, '762, and '134 patents are closely related to at least the '739 patent. In fact, Katz has disclaimed for each of the '893, '551, '065, '360, '762, and '134 patents any term subsequent to the patent term of the '739 patent, in most instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

51.    The '734, '223 and '120 patents are closely related to the '984, '929, '739 and '252 patents at least because they have specifications that are substantially the same, common lineage, commons terms of enforcement and/or claimed subject matter with common elements and overlapping scope. The common elements reflect concepts that are disclosed in one or more of the withheld references, including claim limitations concerning the acceptance or qualification of callers based on a number such as limited-use number or the caller's telephone number.

52.    The '984, '252, '156, '150, '285, '893, '863, '734, '120, '223, '551, '065, '360, '762, and '134 patents are unenforceable as a result of the above-described inequitable conduct in the prosecution of closely related patents and patent applications.

### Periphonics References

53.    On information and belief, in April 1993, in connection with *First Data Resources, Inc. v. West Interactive Corp.*, CV 91-4471TJH, U.S. District Court, Central District of California ("the West case"), materials bearing Bates numbers W72807-W73756 ("the West

materials") were provided to Harold Wurst, Esq. of Nilsson, Wurst & Green ("the Nilsson firm"). The Nilsson firm was involved in prosecuting many of Mr. Katz's patent applications, some of which would ultimately issue as the Katz asserted patents.

54.    In U.S. Patent Application No. 08/306,456, which issued as the '965 patent, Katz stated: "During litigation [the West case], a voluminous quantity of prior art, that is, some 500 items (including single or plural related documents grouped together), were identified by the defendant. However, during pretrial procedures, the defendant distilled the applied art to 59 separate items (including single or plural related documents)." Paper no. 3, filed November 4, 1994. Katz also stated: "The voluminous quantity of art identified during litigation, excluding the 59 items (Set I), is listed on the second set of forms PTO-1449 (Supplemental I)." Paper no. 3, filed November 4, 1994.

55.    Katz made the same statements in the applications that issued as the '707 patent (IDS filed November 14, 1994), the '285 patent (IDS filed September 20, 1994) and the parent application of the '893 patent (IDS filed November 7, 1994 in Application No. 08/306,751). Other applications use varying language that refers the examiner to the references disclosed during prosecution of the '707 patent. These other applications include the '863 patent (Amendment filed May 6, 1996, at 44; IDS filed October 18, 1996), the '762 patent (IDS filed January 16, 1997) and the '551 patent (IDS filed October 2, 1996).

56.    In connection with making these statements during the prosecution of the '707, '965, '285, '893, '863, '762 and '551 patents, Katz submitted to the Patent and Trademark Office certain materials containing Bates numbers within the range of the West materials.

57.    On information and belief, the Bank-From-Home and VoicePac references bore Bates numbers within the range of the West materials.

58.     Specifically, the Bank-From-Home reference bore Bates numbers W73055–W73095, and the VoicePac reference bore Bates numbers W73219–W73302.

59.     The Bank-From-Home and the VoicePac references are highly relevant to many claims of the Katz asserted patents.  The Bank-From-Home reference describes such limitations of claims of the Katz asserted patents as structures for interfacing, storing, qualifying, switching, processing, voice generation, verifying credit and designating, as related to callers to the disclosed system.  The VoicePac reference describes such limitations of claims of the Katz asserted patents as interfacing callers to the system and transferring callers to a customer service representative.

60.     While other references containing Bates numbers within the range of the West materials were submitted to the Patent and Trademark Office during prosecution of the'707, '965, '285, '893, '863, '762 and '551 patents, the Bank-From-Home and VoicePac references were, on information and belief, knowingly withheld during prosecution of at least these patents with knowledge of their materiality.  Katz's failure to disclose this material prior art was a violation of the duty of candor and good faith owed to the Patent and Trademark Office, and constitutes inequitable conduct.  Thus, at least the '965, '285, '893, '863, '762 and '551 patents are rendered unenforceable due to the inequitable conduct that occurred during the prosecution of their respective applications.

**Katz PCT Application**

61.     Katz failed to disclose the publication of Mr. Katz's own PCT application (PCT application WO 87/00375) ("the '375 application") during the prosecution of at least the '739 patent.

62.    Since, the '375 application was published on January 15, 1987, it would be considered prior art for any claims with a filing date more than a year after the publication date (January 15, 1987).  35 U.S.C. § 102(b).

63.    The filing date of the application that issued as the '739 patent, which was May 16, 1988, was more than one year after the publication of the '375 application.

64.    Therefore, the published '375 application constituted prior art to all the claims that incorporated any new matter added in the application for the '739 patent.

65.    The published '375 application would have been material to many of the basic elements claims in the '739 patent, such as prompting the caller with instructions, receiving data entered via touch-tone telephone keypads, storing caller-entered data, processing caller-entered data, and qualifying callers.

66.    Despite knowledge of the '375 application and its materiality, Katz did not bring the '375 application to the attention of the examiner during the prosecution of the '739 patent. Instead, Katz allowed the examiner to issue the '739 patent without considering the prior art effect of the published '375 application.

67.    The Katz asserted patents contain claims with subject matter that includes subject matter that was at issue during the prosecution of the '739 patent and to which the '375 application would have been relevant, and are thus rendered unenforceable through infectious unenforceability.

68.    As an example, due to the interrelatedness of the '893, '863, '551, '065, '360, '762, '134 and '739 patents, Katz has disclaimed for each of the '893, '863, '551, '065, '360, '762, and '134 patents any patent term subsequent to the patent term of the '739 patent, in most

instances in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

69.    The inequitable conduct concerning the '375 application renders unenforceable at least the '285, '893, '863, '551, '065, '360, '762, '134, '734, '120, '223 and '965 patents.

## Daudelin

70.    On information and belief, Mr. Katz and his attorneys were aware of the Daudelin patent at least by October 26, 1997.

71.    Mr. Katz and his attorneys did not disclose the Daudelin patent during the prosecution of at least the '120 patent.

72.    The Daudelin patent is prior art to at least certain claims of the '120 patent because it was filed in the USPTO years prior to the effective filing date of those claims.

73.    The Daudelin patent is material to certain of the claimed subject matter under consideration in the prosecution of at least the '120 patent.

74.    More specifically, the Daudelin patent discloses a system for receiving toll free calls directed to either one of two toll-free telephone numbers associated with either business or consumer products. Callers are provided product information and can place orders, using either automated voice response systems, human operators, or combinations thereof. Callers are qualified based in part on their calling party number, and the particular product they selected.

75.    Because the Daudelin patent discloses many of the features claimed in the '120 patent, it would have been material to the USPTO in deciding whether to allow the claims of the '120 patent.

76.    For example, the '120 patent claims receiving calls in a toll free mode, receiving calls directed to two different toll-free numbers, receiving and testing calling number

identification data, prompting callers with voice prompts, and processing data entered by the callers.

77.    On information and belief, Mr. Katz and his attorneys were aware of the Daudelin patent during the prosecution of the '120 patent, having cited it to the USPTO in connection with other applications more than two years prior to the issuance of the '120 patent.  On information and belief, the Daudelin patent was listed in previous submissions during the prosecution of certain of Mr. Katz's other patents, although "Daudelin" was misspelled as "Dandelin."

78.    On information and belief, Mr. Katz and his attorneys intentionally withheld the material Daudelin patent from the USPTO during the prosecution of at least the '120 patent with the intent to deceive the USPTO into issuing patent claims of a scope beyond which Mr. Katz was entitled, thereby committing inequitable conduct and rendering the '120 patent unenforceable.

79.    Other Katz asserted patents are directly related to the '120 patent and are thus rendered unenforceable through infectious unenforceability.

80.    For example, at least the '223 patent claims priority to the '120 patent and claims subject matter related to the '120 patent, to which the Daudelin patent is material.

81.    Accordingly, at least the '120 and '223 patents are rendered unenforceable as a result of the above-described inequitable conduct.

### False and Misleading Statements

82.    On information and belief, Katz made false and misleading statements about the priority dates to which claims of pending applications were entitled, with the intent to remove prior art references that were before the Patent and Trademark Office in Mr. Katz's pending applications.

83.    For example, during prosecution of application serial number 07/425,779, which issued as the '984 patent, the Patent Examiner rejected claim 10 of the application under 35 U.S.C. § 103 "as being unpatentable over Fodale in combination with the teachings of WO 87/00375 ("the '375 application")." Office action dated March 21, 1991. In response to this rejection, Katz stated that the cited international application "is not properly a reference against the present case." Katz's Amendment dated June 20, 1991.

84.    On information and belief, Katz's statement was knowingly false and in violation of the duty of candor owed by patent applicants to the Patent and Trademark Office in that the '375 application was in fact properly cited by the Examiner as a reference against claim 10.

85.    On information and belief, Katz's statement was intended to deceive the Patent and Trademark Office into issuing patent claims of a scope beyond any to which Mr. Katz was entitled in the '984 patent, and constituted inequitable conduct, rendering the '984 patent unenforceable.

86.    The '120, '734 and '223 patents are closely related to the '984 patent, and are thus rendered unenforceable through infectious unenforceability. The '734, '120 and '223 patents share a substantially identical specification with the '984 patent, claim priority to the '984 patent and claim subject matter encompassing similar scope to the rejected application claim 10 of the '984 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct.

87.    Thus, the conduct during prosecution of the '984 patent also renders the '734, '120 and '223 patents unenforceable.

88.     In another example, during the prosecution of the '734 patent, Katz identified U.S. Patent No. 4,972,461, issued to Brown (the "Brown patent"), to the Patent and Trademark Office. Katz, however, falsely stated that the pending application's claims predated the Brown patent because they claimed priority to the '150 patent. Amendment, January 31, 1996 at page 11-12.

89.     However, the relevant pending application's claims did not predate Brown because there is no suggestion in the '150 patent of multiple call modes, as claimed in the '734 patent.

90.     In addition, on information and belief, the '734 patent does not properly claim priority to the '150 patent.

91.     Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

92.     The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

93.     In another example, during prosecution of the '734 patent, Katz identified U.S. Patent No. 4,797,913 issued to Kaplan et al. (the "Kaplan patent"), to the Patent and Trademark Office. Katz, however, falsely stated that "the present application is entitled to a priority date earlier than that of the subject reference." Supplemental Amendment filed March 14, 1995 at p. 20.

94.     On information and belief, Katz's statement was false at the time it was made since there were claims pending that claimed subject matter not supported in any parent applications filed prior to August 4, 1987, the filing date of the Kaplan patent. For example, claim 17 that was pending at the time of Katz's statement recited multiple call modes. There is no suggestion of multiple call modes in, for example, the '968 patent. Therefore, Katz intentionally misrepresented the priority dates for claims during prosecution of the '734 patent, rendering the '734 patent unenforceable.

95.     The '120 and '223 patents are closely related to the '734 patent, and are thus rendered unenforceable through infectious unenforceability. The '120 and '223 patents share a substantially identical specification with the '734 patent, claim priority to the '734 patent and claim subject matter encompassing similar scope to the claims of the '734 patent. In fact, due to the interrelatedness of these patents, Katz has disclaimed for each of the '120, '223 and '734 patents any patent term subsequent to the patent term of the '984 patent, which also has a nearly identical specification, in response to double patenting rejections made by the Patent and Trademark Office indicating that the claimed inventions were not patentably distinct. Thus, the conduct during prosecution of the '734 patent also renders the '120 and '223 patents unenforceable.

## THE COUNTERCLAIM AIG DEFENDANTS' PRAYER FOR RELIEF

WHEREFORE, the Counterclaim AIG Defendants respectfully request that this Court enter judgment in its favor and grant the following relief:

A.      A declaration that the Counterclaim AIG Defendants do not infringe any valid and asserted claim of U.S. Patent Nos. 6,148,065, 5,974,120, 6,349,134, 4,930,150, 6,434,223, 5,251,252, 5,351,285, 6,678,360, 5,815,551, 5,828,734, 5,898,762, 5,684,863, 5,917,893, 6,335,965, and 4,792,968;

B.      A declaration that U.S. Patent Nos. 6,148,065, 5,974,120, 6,349,134, 4,930,150, 6,434,223, 5,251,252, 5,351,285, 6,678,360, 5,815,551, 5,828,734, 5,898,762, 5,684,863, 5,917,893, 6,335,965, and 4,792,968, are invalid;

C.      A declaration that U.S. Patent Nos. 6,148,065, 5,974,120, 6,349,134, 4,930,150, 6,434,223, 5,251,252, 5,351,285, 6,678,360, 5,815,551, 5,828,734, 5,898,762, 5,684,863, 5,917,893, and 6,335,965 are unenforceable;

D.      Dismissal of all of Katz's claims in their entirety with prejudice;

E.      A declaration that Katz take nothing by way of its original complaint;

F.      An order awarding the Counterclaim AIG Defendants their costs pursuant to 35 U.S.C. § 284;

G.      An order finding that this is an exceptional case and awarding the AIG Defendants their reasonable attorney fees pursuant to 35 U.S.C. § 285; and

H.      An order awarding such additional relief as the Court may deem appropriate and just under the circumstances.

## THE AIG DEFENDANTS' DEMAND FOR JURY TRIAL

The AIG Defendants hereby demand a trial by jury on all issues so triable.

ASHBY & GEDDES

/s/ *John G. Day*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Tiffany Geyer Lydon (I.D. #3950)
222 Delaware Ave., 17th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654.1888
sbalick@ashby-geddes.com
jday@ashby-geddes.com
tlydon@ashby-geddes.com

*Attorneys for defendants and counter-claim plaintiffs American International Group, Inc.; AIG Retirement Services, Inc.; 21st Century Insurance Group; 21st Century Insurance Company; 21st Century Casualty Company; AIG Marketing, Inc.; AIG SunAmerica Asset Management Corp.; AIG Annuity Insurance Company; AIG Federal Savings Bank; The United States Life Insurance Company in the City of New York; AIG Life Insurance Company; American General Assurance Company; American General Indemnity Company; American General Life and Accident Insurance Company; American General Life Insurance Company; The Variable Annuity Life Insurance Company; VALIC Financial Advisors, Inc.; VALIC Retirement Services Company.*

Of Counsel:

Raphael V. Lupo
Joel M. Freed
Brian E. Ferguson
John R. Fuisz
Kori Anne Bagrowski
Sudip K. Kundu
McDERMOTT WILL & EMERY LLP
600 13th Street, N.W., 12th Floor
Washington, DC 20005-3096
(202) 756.8000
(202) 756.8087

Dated: November 2, 2006
174799.1

- 60 -

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on the 2nd day of November, 2006, the attached **THE AIG**

**DEFENDANTS' ANSWER AND COUNTERCLAIMS TO PLAINTIFF RONALD A.**

**KATZ TECHNOLOGY LICENSING, L.P.'S ORIGINAL COMPLAINT AND DEMAND**

**FOR JURY TRIAL** was served upon the below-named counsel of record at the addresses and in

the manner indicated:

Andre G. Bouchard, Esquire                            <u>HAND DELIVERY</u>
Bouchard Margules & Friedlander, P.A.
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801

Robert T. Haslam, Esquire                             <u>VIA FEDERAL EXPRESS</u>
Heller Ehrman LLP
275 Middlefield Road
Menlo Park, CA  94025-3506

Michael K. Plimack, Esquire                           <u>VIA FEDERAL EXPRESS</u>
Heller Ehrman LLP
333 Bush Street
San Francisco, CA  94104-6000

Philip A. Rovner, Esquire                             <u>HAND DELIVERY</u>
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE  19899

Kenneth R. Adamo, Esquire                             <u>VIA FEDERAL EXPRESS</u>
Jones Day
2727 North Harwood Street
Dallas, TX  75201-1515

Samuel J. Najim, Esquire                              <u>VIA FEDERAL EXPRESS</u>
Jones Day
1420 Peachtree Street, N.E.
Suite 800
Atlanta, GA  30309-3053

Kevin G. McBride, Esquire                          VIA FEDERAL EXPRESS
Jones Day
555 South Flower Street
Fiftieth Floor
Los Angeles, CA 90071-2300

Sean J. Bellew, Esquire                            HAND DELIVERY
Cozen O'Connor
1201 North Market Street, Suite 1400
Wilmington, DE 19801

Camille M. Miller, Esquire                         VIA FEDERAL EXPRESS
Cozen O'Connor
1900 Market Street
Philadelphia, PA 19103

Karen E. Keller, Esquire                           HAND DELIVERY
Young, Conaway, Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801

Curtis E. Woods, Esquire                           VIA FEDERAL EXPRESS
Sonnenschein Nath & Rosenthal LLP
4520 Main Street
Suite 1100
Kansas City, MO 64111-7700

Richard L. Horwitz, Esquire                        HAND DELIVERY
Potter Anderson & Corroon LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899

Daniel J. Thomasch, Esquire                        VIA FEDERAL EXPRESS
Orrick, Herrington & Sutcliffe LLP
666 Fifth Avenue
New York, NY 10103

Collins J. Seitz, Jr., Esquire                     HAND DELIVERY
Connolly Bove Lodge & Hutz, LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19899

Raphael V. Lupo, Esquire
McDermott Will & Emery LLP
600 13th Street, N.W., 12th Floor
Washington, DC  20005-3096

<u>VIA FEDERAL EXPRESS</u>

/s/ *John G. Day*
_____

John G. Day