**BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION**

| | |
|---|---|
| In re: ) | |
| ) | MDL Docket No. 1816 |
| Katz Interactive Call Processing Patent Litigation ) | |
| ) | |
| ) | |

**REPLY BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND
CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION
PURSUANT TO 28 U.S.C. § 1407**

HAROLD J. McELHINNY
RACHEL KREVANS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Defendants
TARGET CORPORATION;
TARGET BANK; and
TARGET NATIONAL BANK

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT ...................................................................................................... 3

      A.      The Common Factual Questions Are Numerous, Complex and Unresolved ....... 3

            1.      The Pleadings Demonstrate Numerous Common Factual Questions Underlying the Defenses in all the Actions................................. 3

            2.      Calculating Damages Based On A Reasonable Royalty Presents Many Common Questions Of Fact .......................................... 4

            3.      The Overlapping Patents Raise Numerous Common Questions of Fact Regarding The Underlying Technology Regardless Of The Industry In Which A Defendant Operates .................................... 5

            4.      The Common Factual Issues Are Unresolved ........................... 7

      B.      Consolidation Will Best Serve The Convenience of Witnesses and Parties.......... 8

            1.      Consolidation Will Not Require Defendants To Expend Additional Resources Or Time....................................................... 8

            2.      Proceedings In The Citibank Case Are Not "Advanced" And Do Not Affect the Convenience of Consolidation .......................... 8

            3.      The Oppositions Fail to Address The Convenience To Third-Party Witnesses.......................................................................... 10

      C.      Distribution Of The Twenty-Five Cases Among Four District Judges Does Not Promote Just And Efficient Litigation ......................................... 10

            1.      The Actions Already Are Proceeding On Different Tracks And Are Subject to Different Rules.................................................... 10

            2.      The Incomplete "Groupings" of Defendants Require Consolidation To Ensure Efficiency......................................................... 12

            3.      The Pledges of Cooperation Will Not Ensure Efficiency Or Avoid Inconsistent Pre-Trial Rulings.............................................. 14

      D.      Transfer To Judge Klausner In The Central District of California Is Appropriate...................................................................... 16

            1.      There Is A Substantial Nexus Between Common Fact Issues And The Central District of California .......................................... 17

            2.      Judge Klausner Is The Judicial Officer Most Experienced With the Katz Patents and Underlying Technology................................ 18

            3.      The Central District of California Is Convenient To the Parties and Witnesses and Is Capable of Efficiently Managing The Actions............. 19

III.    CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Page**

### CASES

*In re Am. Gen. Fin. Inc., Credit Ins. Litig.*,
217 F. Supp. 2d 1374 (J.P.M.L. 2002) ..................................................................... 15

*In re Cable Tie Patent Litig.*,
487 F. Supp. 1351 (J.P.M.L. 1980) .......................................................................... 15

*In re Georgia-Pacific Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D. N.Y. 1970) .......................................................................... 5

*In re Acacia Media Techs. Corp. Patent Litig.*,
360 F. Supp. 2d 1377 (J.P.M.L. 2005) ............................................................. 6, 8, 9

*In re Air Crash Disaster Near Santa Cruz Airport, Bombay, India on January 1, 1978*,
463 F. Supp. 158 (J.P.M.L. 1979) ............................................................................ 18

*In re Antibiotic Drugs Antitrust Litig.*,
355 F. Supp. 1400 (J.P.M.L. 1973) .......................................................................... 16

*In re Columbia Univ. Patent Litig.*,
313 F. Supp. 2d 1383 (J.P.M.L. 2004) ........................................................... 3, 4, 18

*In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*,
395 F. Supp. 2d 1357 (J.P.M.L. 2005) ..................................................................... 15

*In re Compression Labs, Inc. Patent Litig.*,
360 F. Supp. 2d 1367 (J.P.M.L. 2005) ..................................................................... 16

*In re Cygnus Telecomm. Techn., LLC, Patent Litig.*,
177 F. Supp. 2d 1375 (J.P.M.L. 2001) ...................................................................... 6

*In re Gabapentin Patent Litig.*,
Docket No. 1384, 2001 U.S. Dist. LEXIS 1726 (J.P.M.L. Feb. 5, 2001) ................ 15

*In re MLR, LLC, Patent Litig.*,
269 F. Supp. 2d 1380 (J.P.M.L. 2003) ............................................................ *passim*

*In re Mirtazapine Patent Litig.*,
199 F. Supp. 2d 1380 (J.P.M.L. 2002) ..................................................................... 15

*In re Molinaro/Catanzaro, Patent Litig.*,
380 F. Supp. 794 (J.P.M.L. 1974) .............................................................................. 3

# TABLE OF AUTHORITIES

**Page**

*In re Olympia Brewing Co. Antitrust Litig.*,
 415 F. Supp. 398 (J.P.M.L. 1976) ............................................................... 8

*In re Panty Hose Seaming Patent Litig.*,
 402 F. Supp. 1401 (J.P.M.L. 1975) ............................................................ 15

*In re Pharmastem Therapeutics, Inc., Patent Litig.*,
 360 F. Supp. 2d 1362 (J.P.M.L. 2005) .................................................... 3, 5

*In re Phonometrics, Inc. Patent Litig.*,
 Docket No. 1141, 1996 U.S. Dist. LEXIS 21909 (J.P.M.L. Dec. 11, 1996) ........................... 15

*In re Suess Patent Infringement Litig.*,
 331 F. Supp. 549 (J.P.M.L. 1971) .............................................................. 16

*In re Sundstrand Data Control, Inc. Patent Litig.*,
 443 F. Supp. 1019 (J.P.M.L. 1978) ...................................................... 17, 18

*In re Unitrin, Inc., Ins. Sales Practices Litig.*,
 217 F. Supp. 2d 1371 (J.P.M.L. 2002) ........................................................ 15

## STATUTES

35 U.S.C. §102 ............................................................................................. 3

35 U.S.C. § 103 ............................................................................................ 3

35 U.S.C. § 112 ............................................................................................ 3

37 C.F.R. §§ 1.141 ....................................................................................... 4

37 C.F.R. § 1.142 ......................................................................................... 4

J.P.M.L. Rule 7.2 .......................................................................................... 1

Pursuant to Rule 7.2(d) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation (the "Panel"), defendants Target Corporation, Target Bank and Target National Bank (collectively "Target" for purposes of this Motion) submit this brief in reply to the Oppositions filed by Ronald A. Katz Technology Licensing, L.P. ("Katz") and other defendants involved in the twenty-five related patent infringement actions underlying this Motion ("the Actions").

## I.      INTRODUCTION

This litigation now involves twenty-five Actions asserting twenty-seven patents before four different judges.  One-hundred seventy-six different corporate entities have been named as defendants.[1]  Without consolidation, the Actions will create repeated inefficiencies and expose the defendants to inconsistent outcomes as four judges apply their own legal rulings to the numerous common facts.

Target's motion to consolidate the Actions in the Central District of California enjoys widespread support among the defendants.[2]  The concerns of some defendants — largely those who are venued in Delaware — that consolidation could lead to transfer to a less preferred venue should not affect the consolidation determination.  That determination must be based solely on the factors of commonality, efficiency, justice and convenience underlying 28 U.S.C. § 1407.  Those factors overwhelmingly support consolidation of the Actions.

The Actions present numerous, complex and unresolved common questions of fact.  Indeed, the recently filed pleadings demonstrate that: (1) Katz has asserted a large, overlapping group of his interactive call processing patents against the defendants, (2) many of the defendants have pleaded numerous common and unresolved defenses and counterclaims such as invalidity, patent misuse, prosecution laches, unclean hands, prosecution history estoppel, and

---

[1]  On October 25, 2006, after this Motion was filed, Katz filed an Amended Complaint in the case of *Ronald A. Katz Tech. Licensing, L.P. v. Ahold, USA, et al,* C.A. No. 06-545 (GMS), adding 7 defendants to that Delaware action. There are now 95 defendants in the District of Delaware ("D. Del.") and 81 defendants in three divisions of the Eastern District of Texas ("E.D. Texas").

[2]  A total of 59 parties have filed answers to Katz's complaints in the 25 Actions on behalf of the 176 defendant entities.  Of those, 20 support Target's motion to consolidate the Actions before Judge Klausner, and another 16 have acquiesced to Target's motion.  *See* J.P.M.L. Rule 7.2(c) ("Failure of a party to respond to a motion shall be treated as that party's acquiescence to the action requested in the motion.")

unenforceability due to inequitable conduct, (3) each overlapping patent, as Katz itself admits, will present "some common issues of fact as to the technology underlying the patents" and (4) most of the reasonable royalty factors relevant to damages will be common to all the Actions.

Against this overwhelming backdrop of common facts, the Oppositions can offer only the bare conclusion that because some of the defendants operate in different industries and have different systems there will be "few, if any" common factual questions with respect to infringement. But, as the Panel has recognized, the technology underlying a patent is the same regardless of the system against which the patent is asserted. And to the extent there are unique issues for certain industries, consolidation is still the logical and efficient choice because many defendants from the same industry are currently being sued in several different Actions in different judicial districts.

The Oppositions also downplay the efficiency and convenience of consolidation by asserting that the Actions are "pending in only two judicial districts" and that inefficiencies can be avoided by pledges to use "alternative methods" and "cooperation." That argument ignores that there are, in fact, twenty-five actions scattered among four district judges in four divisions of those two judicial districts. The four different judges — even the three within the same judicial district — do not appear inclined to "coordinate" discovery or pre-trial proceedings in the Actions. The initial orders from the Eastern District of Texas establish that those cases will be subject to different discovery rules and will proceed on at least four different tracks, demonstrating conclusively why consolidation before a single judge is necessary. Moreover, this is manifestly not the type of "limited" litigation for which pledges of cooperation have sometimes substituted for the coordination guaranteed by a consolidated case.

The remaining arguments in the Oppositions merely challenge Target's proposal of the Central District of California as the most efficient and convenient court for administering the consolidated litigation. While there are numerous possible transferee venues for this case, the Central District of California is the only district that both is experienced with the patent family

and has a substantial nexus to the common plaintiff, relevant documents and important fact witnesses.

II.    **ARGUMENT**

    A.    **The Common Factual Questions Are Numerous, Complex and Unresolved.**

        1.    **The Pleadings Demonstrate Numerous Common Factual Questions Underlying the Defenses in all the Actions.**

Katz and several defendants offer conclusory statements suggesting that Target has not established the existence of unresolved, common factual questions.  The pleadings of the parties, and the case law from this Panel, demonstrate otherwise.

Katz's Complaints in the twenty-five actions assert numerous overlapping patents against the 176 defendants.  (*See* Exhibits in Support of Schedule of Actions Cited in Target's Motion For Transfer and Consolidation, filed on October 17, 2006.)  In response, nearly all of the 176 defendants have now pleaded affirmative defenses and counterclaims, demonstrating conclusively that many common, complex factual questions exist.  (*See* Supplemental Exhibits in Support of Target's Motion For Transfer and Consolidation ("Supp. Ex."), filed concurrently herewith.)  For example, as to each patent, nearly all defendants in all twenty-five Actions have asserted invalidity defenses under 35 U.S.C. §§ 102-103 (anticipation and obviousness) and 35 U.S.C. § 112 (*e.g.*, enablement and written description).  As the Panel has recognized, the issue of patent validity is a key issue in multidistrict patent litigation, raising complex questions of fact common to each action in which a patent is asserted.  *See, e.g., In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d 1383, 1385 (J.P.M.L. 2004); *In re MLR, LLC, Pat*ent *Litig.*, 269 F. Supp. 2d 1380, 1381 (J.P.M.L. 2003); *In re Molinaro/Catanzaro Patent Litig.*, 380 F. Supp. 794, 795 (J.P.M.L. 1974).

In addition, many of the Answers and Counterclaims allege the defenses of patent misuse, unclean hands, prosecution laches, prosecution history estoppel, and unenforceability due to inequitable conduct.  These defenses raise at least as many common questions of fact as the validity defenses.  *See, e.g*., *In re Pharmastem Therapeutics, Inc., Patent Litig.,* 360 F. Supp. 2d 1362, 1364 (J.P.M.L. 2005) (finding common questions regarding patent misuse allegations);

*In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1384 (finding common questions regarding defenses of prosecution laches, inequitable conduct and double patenting). The common facts are not only numerous, they are apparent on the face of the pleadings.

One of the Oppositions nonetheless argues that there will not be any common invalidity and enforceability issues because different patents or patent claims "will likely be asserted" against different defendants and/or industry groups. (*See* Comerica Opp'n at 5.) That argument fails for several reasons. First, as set forth fully in Section II.C.2, the assertion that Katz comprehensively has grouped defendants by industry in the Actions is false. Second, the fact that Katz has asserted so many overlapping patents against defendants in different industries demonstrates that most of the patents are not industry-specific. Indeed, Katz conspicuously avoids any promise not to assert the same claims against different defendants. Third, the claims within a particular patent are extremely similar, containing many of the same limitations.[3] Thus, even if different claims are asserted against some defendants, the facts underlying the validity defenses to these claims will also be similar, if not identical. As one example, the same prior art reference often invalidates numerous claims within a patent. Fourth, the argument has no bearing on those common defenses — such as inequitable conduct, patent misuse, and prosecution laches — that are not dependent on the assertion of specific claims. Finally, even if Katz ultimately did assert different claims against different industries, efficiency still would be achieved by consolidation. Because many defendants from the same industry have been sued in different cases, consolidation would ensure that these defendants would now have their commonly asserted claims adjudicated together.

## 2. Calculating Damages Based On A Reasonable Royalty Presents Many Common Questions Of Fact.

The issue of damages also presents many common questions of fact. After conceding that he will seek damages based upon a reasonable royalty calculation, Katz incorrectly states that nine of the fifteen *Georgia-Pacific* factors used to determine the measure of damages are

---

[3] Indeed, if the claims within each Katz patent were as different as Comerica suggests, the Patent Office would have issued a restriction requirement, requiring that Katz file the different claims as different patents. 37 C.F.R. §§ 1.141, 1.142.

"defendant-specific." (*See* Katz Opp'n at 9 n.10.) To the contrary, at least ten of the fifteen factors are either patent/patentee-specific or neutral, and thus present issues of fact common to all twenty-five cases.

Katz paraphrases many of the purportedly "defendant-specific factors," conveniently leaving out portions of each factor that focus on the patentee's business and thus will be common to all twenty-five Actions. For example, Katz somehow concludes that factor fourteen ("the opinion testimony of qualified experts") is defendant-specific, ignoring the fact that Katz certainly will offer expert testimony on damages, and ignoring that expert testimony in each case likely will encompass common facts and evidence under *Georgia-Pacific* regarding the patents and the patentee (Katz). Likewise, Katz mischaracterizes the nature of the "hypothetical negotiation" (*Georgia-Pacific* factor fifteen), suggesting that it too is a "defendant-specific" factor. The final *Georgia-Pacific* factor, however, clearly involves facts common to all twenty five of the Actions. *See* 7 Donald A. Chisum, Chisum on Patents § 20.03(3)(b) (2006), quoting *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D. N.Y. 1970). When analyzed against the accurately presented *Georgia-Pacific* factors, it is clear that there are numerous patent-specific and patentee-specific factors that will present factual questions common to all twenty-five Actions.

### 3. The Overlapping Patents Raise Numerous Common Questions of Fact Regarding The Underlying Technology Regardless Of The Industry In Which A Defendant Operates.

Several of the Oppositions rely heavily on the flawed notion that because some defendants are in different industries or have different systems, there will be "few, if any" common questions of fact on the issue of infringement. But even with respect to infringement, the assertion of so many overlapping patents means there will be many common factual issues that should be handled in a consolidated manner. Whether a defendant operates a financial institution, a retail store or an insurance company, all the Actions involve the same underlying technology — the interactive processing of telephone calls. The Panel's case law recognizes this underlying commonality in patent cases. *See Pharmastem*, 360 F. Supp. 2d at 1364 ("All actions can thus be expected to share factual and legal questions concerning such matters as the

technology underlying the patents. . . .").  And there is no dispute on this point from Katz.  (*See* Katz's Response ¶ 20 ("due to the overlapping patents at issue in the Katz Actions, there will be some common issues of fact as to the technology underlying the patents.").)

Although there certainly will be differences in the defendants' systems, the Panel has recognized on numerous occasions that "Section 1407 does not require a complete identity or even a majority of common factual or legal issues as a prerequisite to transfer."  *In re Acacia Media Techs. Corp. Patent Litig.*, 360 F. Supp. 2d 1377, 1379 (J.P.M.L. 2005);  *see also In Re MLR, LLC, Patent Litig.*, 269 F. Supp. 2d at 1381; *In re Cygnus Telecomm. Techn., LLC, Patent Litig.*, 177 F. Supp. 2d 1375, 1376 (J.P.M.L. 2001).  Indeed, if differences in accused products or services were sufficient to defeat a motion under Section 1407, then no set of patent cases against multiple, unrelated defendants ever would be consolidated.

Katz misperceives the reasoning behind the Panel's precedent when it attempts to distinguish these patent cases on the ground that some involved defendants in the same industry.  The Panel's finding of common factual issues in these cases was not based on the defendants' operation in the same industry.  Rather, the Panel found that the assertion of overlapping patents raised numerous common factual issues relating to patent validity, the prior art, claim construction, and the underlying technology, while observing that any non-common issues could be handled on separate but concurrent tracks.  *See Acacia,* 360 F. Supp. 2d at 1379; *MLR*, 269 F. Supp. 2d at 1381; *Pharmastem*, 360 F. Supp. 2d at 1364.  Furthermore, the Panel has recognized that this reasoning applies even when the defendants operate in different industries.  Contrary to Katz's characterization, the 64 defendants in the *Acacia* case were spread across at least four different industries involving different technologies (adult content internet sites, satellite television providers, cable television providers, and hotel "in-room" video providers).  The Panel nonetheless granted the motion to consolidate those actions, determining that "[q]uestions relating to an overlapping set of patents are likely to be common to both . . . actions, regardless of the manner in which a particular defendant transmits information or the content of that information. . . ."  *Acacia*, 360 F. Supp. 2d. at 1379.  The same rationale compels consolidation of the Katz Actions here.

Finally, even if issues emerge that are unique to certain industries, those issues can be handled by effective management of the consolidated case. Once Katz has identified the claims asserted against each defendant, the MDL court easily can organize the case to ensure that defendants participate only in those aspects of the consolidated case that are relevant to the claims on which they were sued.

### 4.    The Common Factual Issues Are Unresolved.

Some of the Oppositions argue either that the common factual issues discussed above have been resolved or that no efficiencies will be gained from consolidation because discovery on those issues has been completed in prior cases. In fact, none of the common factual issues has been resolved in any of the prior litigations. Both the *AT&T* and *Verizon* cases were settled before any final decision on the merits. (*See* Exhibits in Support of Target's Motion For Transfer and Consolidation ("Ex."), filed on October 17, 2006, Ex. 2 (*AT&T* Docket) and Ex. 3 (7/12/04 *Verizon* Stipulation & Order Vacating Pre-Trial Schedule & Trial Date).)

Nor is there any logic or evidence supporting Katz's claim that discovery for most of these common fact issues already has been completed. First, although discovery likely was taken for some of the common defenses in the prior cases, defendants in these Actions will not be limited to that prior discovery. Second, the fact that some limited discovery may have begun in *Citibank* does not mean that the "issues" underlying common defenses have been "resolved." The defendants likely will seek new discovery related to unresolved defenses as to the patents, including anticipation, obviousness, enablement and indefiniteness and inequitable conduct. In view of the large number of patents, that new discovery will present a substantial number of common factual questions.

In sum, the speculation and conclusory statements offered by the opposing defendants cannot overcome the facts and this Panel's precedent. Because there are numerous, complex and unresolved common factual issues related to non-infringement, invalidity and damages, the Actions should be consolidated and transferred pursuant to Section 1407.

### B.     Consolidation Will Best Serve The Convenience of Witnesses and Parties.

Parties opposing consolidation and transfer ignore the convenience to the witnesses and parties ensured by coordination of discovery on the many common factual issues.  Those that do address this factor either misunderstand the safeguards of multidistrict litigation or exaggerate the inconveniences of possible delay to the *Citibank* case.

### 1.     Consolidation Will Not Require Defendants To Expend Additional Resources Or Time.

Several of the parties mistakenly argue that consolidation is not convenient because it will require them to expend additional resources and time responding to issues that are not relevant to them, or will delay resolving issues unique to their case.  (*See*, *e.g*., Comerica's Opp'n at 5-6.)  This Panel consistently has rejected that argument.  In *Acacia,* the Panel noted that the transferee court has broad discretion in managing pre-trial proceedings to ensure convenience of the parties and witnesses while minimizing prejudice to the parties:

> The transferee court will be able to (i) make appropriate decisions regarding any impact that the Round One actions may have on pretrial proceedings in the more recently filed Round Two actions, while still allowing remaining pretrial matters in the Round One actions to be expeditiously concluded; and (ii) formulate a pretrial program that allows any unique discovery in either round of actions to proceed concurrently on separate tracks with discovery on common issues.

*Acacia, 360 F. Supp. 2d at 1379; see also In re MLR, LLC, Patent Litig.,* 269 F. Supp. 2d at 1381 (same); *In re Olympia Brewing Co. Antitrust Litig.,* 415 F. Supp. 398, 401 (J.P.M.L. 1976) (similar).  Consolidation enables a single judge to coordinate discovery so that the burden of discovery on common issues is shared among similarly situated defendants, while unique issues are handled on separate, but concurrent tracks.  Centralized case management will ensure that no party will be required to engage in discovery or attend hearings that does not pertain to its case.

### 2.     Proceedings In The *Citibank* Case Are Not "Advanced" And Do Not Affect the Convenience of Consolidation.

Contrary to arguments made in some Oppositions, the *Citibank* case is not so "advanced" as to inconvenience or prejudice any parties to that litigation should that case be delayed slightly

by consolidation. Although *Citibank* has been pending slightly more than one year, the court has not issued a claim construction order or ruled on any claim, defense or other substantive issue. The only orders in the case to date have been case management orders.[4] Moreover, it appears that only a few depositions recently have been taken,[5] percipient and expert discovery are not complete, and trial is not set to commence until May of 2007.

The mere fact that the *Citibank* case has been pending longer than the other twenty-four Actions does not substantially affect the convenience of consolidation. This Panel has ordered consolidation and transfer even where a prior case involving the same subject matter commenced more than two years before a second round of similar litigation. *Acacia*, 360 F. Supp. 2d at 1379 ("[P]arties opposing the centralization of the Round One actions with the Round Two actions argue that . . . the Round Two parties risk being prejudiced by inclusion of the Round Two actions with significantly more advanced Round One proceedings. We are not persuaded by these arguments."). In light of the many common factual and legal issues shared by the twenty-five Actions, the convenience and efficiency realized by consolidation will far outweigh any minimal delay to the *Citibank* parties.

Finally, nothing in Section 1407 precludes the transferee judge from carving out the *Citibank* case from the remaining twenty-four Actions if justice requires. *See Acacia*, 360 F. Supp. 2d at 1379-80. If the *Citibank* case is ready for trial before the other Actions, the transferee judge has discretion to remand that case for trial at that time. *Id.* ("It may well be that the Round One actions will be ready for trial in advance of the other . . . actions. If such is the case, we note that nothing in the nature of Section 1407 centralization will impeded the transferee court, whenever it deems it appropriate, from recommending Section 1407 remand and then, upon the effectuation of that remand, scheduling a trial in . . . any Round One action.").

---

[4] The "substantive" orders identified by Katz are "case management orders, orders regarding claim selection, an order severing and staying claims and certain discovery orders." (Katz's Response ¶ 17.) None of these orders addresses any patent claim or affirmative defense on the merits.

[5] Notably, Katz fails to identify exactly how many depositions have been taken, which witnesses have been deposed, or how many depositions remain to be taken. Katz merely states that "Katz has served . . . Rule 30(b)(6) deposition notices on various topics and recently took the depositions of T-Mobile, Wal-Mart and Discover employees." (Katz's Opp'n at 5.)

### 3. The Oppositions Fail to Address The Convenience To Third-Party Witnesses.

Those defendants who oppose consolidation and transfer limit their consideration of the convenience factor to whether a particular venue is nearby to their headquarters. For these defendants, the prospect of traveling from the East to Los Angeles or taking multiple flights to reach a Division of the Eastern District of Texas makes consolidation inconvenient. As the Panel has recognized, however, "there is usually no need for the parties and witnesses to travel to the transferee district for depositions or otherwise." *MLR*, 269 F. Supp. 2d at 1381. Furthermore, consolidation and transfer to a district with an international airport, like Los Angeles, that offers daily direct flights will minimize any inconvenience in the event travel to the transferee court is required.

These arguments also fail to recognize that the convenience factor is not limited to the parties, but also takes into account the convenience of consolidation to third party witnesses. In light of the many overlapping patents in this case, defendants can be expected to seek much of the same discovery from third-parties relevant to these patents, including prior inventors, the attorneys and patent agents who prosecuted the asserted patents, authors of prior art publications, manufacturers of prior art devices, and companies who have previously licensed the asserted patents. Coordination of this discovery will ensure minimum disruption to these third parties.

### C. Distribution Of The Twenty-Five Cases Among Four District Judges Does Not Promote Just And Efficient Litigation.

#### 1. The Actions Already Are Proceeding On Different Tracks And Are Subject to Different Rules.

Several briefs in Oppositions suggest that, because the twenty-five cases all are pending in "only two judicial districts," coordination of the proceedings will achieve little efficiency and can be facilitated by "alternative methods" to consolidation. That argument ignores reality, provides no substitute for a consolidated proceeding before a single judge, and does not protect against the injustice of inconsistent pre-trial rulings. And while American Airlines argues that the Texas cases (split among three different judges) can be "coordinated," it neglects to disclose that Judge Folsom already has denied American Airlines' own motion (which Katz opposed) to

consolidate claim construction proceedings in its case with the *Citibank* case.  (*See* Ex. 11
(*Citibank* Minute Entry).)

        Proceedings to date in the Eastern District of Texas cases demonstrate that the three
judges there are <u>not</u> coordinating the Actions:

- Judge Folsom has set a Scheduling Conference for December 12, 2006 in *Ronald A. Katz Technology Licensing, L.P. v. American Electric Power Company, Inc., et al.*, No. 5:06-CV-188 (E.D. Tex.) (Texarkana Division);

- Judge Folsom has yet to set a Scheduling Conference in *Ronald A. Katz Tech. Licensing, L.P. v. American Airlines, et al.,* No. 2:06-CV-334 (E.D. Tex., Marshall Division).

- Judge Clark has set a Scheduling Conference for January 25, 2007 in all of the Katz Actions pending in his court (Lufkin Division); and

- Judge Ward has yet to set a Scheduling Conference in *Ronald A. Katz Technology Licensing v. Aetna, Inc., et al.*, No. 2:06-CV-335 (E. D. Tex) (Marshall Division).

(Declaration of M. Andrew Woodmansee In Support of Reply Brief to Motion for Transfer and
Consolidation ("Woodmansee Decl."), Exs. 1 & 5, concurrently filed herewith.)  Because the
Eastern District of Texas' Patent Rules set case deadlines based on when the Court holds an
initial management or scheduling conference, those cases will proceed on at least four different
tracks:  Because the Eastern District of Texas' Patent Rules set case deadlines based on when the
Court holds an initial management or scheduling conference, those cases will proceed on at least
four different tracks.  Absent consolidation and transfer to a single judge, the Texas cases likely
will produce four different *Markman* hearings on the overlapping patents and four different
summary judgment hearings related to the same subject matter.  (*See, e.g.,* Woodmansee Decl.,
Ex. 5, Appendix C (Judge Clark setting *Markman* hearing for May 16, 2007) and Ex. 8 (Katz's
Proposed Scheduling Order in *American Electric Power* with *Markman* hearing set for August
15, 2007).)

        It is also clear that discovery will proceed under different rules in the different Actions,
severely limiting the parties' rights to participate equally in discovery on the many common facts
and issues.  A particular defendant's right to participate on equal footing in discovery with other
defendants may be limited solely by the case in which that defendant was sued.  *Compare*
Woodmansee Decl., Ex. 1 at 5 (*Citibank* order setting limits on depositions, including 40 hours

combined for all defendants to depose Katz's witnesses, and 20, 25, 35, and 40 hours for Katz to depose witnesses from each of the four defendants, respectively); Ex. 5 at 4(E) (setting 40 hours of deposition time per side); and Ex. 7 at 7 (Katz's proposal in *American Electric Power*, seeking 100 hours combined for all defendants to depose Katz's witnesses, and permitting Katz 100 hours for *each* defendant's witnesses).

Second, while Judge Ward and Judge Folsom have yet to issue Protective Orders in the *Aetna* and *American Airlines* cases, Protective Orders with fundamentally different terms have been entered in cases pending before Judge Clark and other cases before Judge Folsom. *Compare* Woodmansee Decl., Ex. 5, Appendix A at 2 (Protective Order issued by Judge Clark with only one level of confidential information, no access to confidential information by a party's in-house counsel, no access by experts witnesses and consultants, and no prohibition on access by a party's outside patent prosecution counsel) and Woodmansee Decl., Exs. 2 & 3 (Protective Order issued by Judge Folsom in *Citibank* establishing "Confidential" and "Restricted Confidential--Outside Counsel Only" levels of confidentiality, permitting expert witnesses and consultants access to both levels of confidential information, permitting access by four in-house attorneys per party to "Confidential" documents, and precluding access by a party's outside patent prosecution counsel). These inconsistent terms create the risk of unacceptable prejudice to the parties. By way of example, the same document designated "Confidential" could be shared with one defendant's in-house litigation counsel, but not a different defendant's in-house counsel. That disparate access — determined solely by the case in which the latter defendant has been sued — creates the risk of substantial prejudice, all of which would be eliminated by consolidating the Actions before a single judge.

### 2. The Incomplete "Groupings" of Defendants Require Consolidation To Ensure Efficiency.

Several of the Oppositions argue that consolidation will not achieve efficiency because the Actions already have been "grouped by relevant industries." That argument does not stand up to the facts. First, as discussed above, the industry of the defendant is irrelevant to the common factual questions in the Actions. Defendants from different industries all will seek the

same discovery on these common issues.  This is particularly apparent with respect to the commonly asserted defenses, but also remains true for the common fact questions underlying infringement and damages.

Second, the cases have not in fact been "grouped" by industry, especially as to the Texas Actions.  For example, in *Ronald A. Katz Technology Licensing, L.P. v. American Electric Power Company, Inc.,* No. 5:06-CV-188 (E.D. Tex.) (Texarkana Division), the defendants operate across at least four different industries (energy, consumer retail, financial services and appliance manufacturing).  Similarly, in *Ronald A. Katz Technology Licensing, L.P. v. American Airlines,* No. 2:06-CV-334 (E. D. Tex) (Marshall Division), the defendants operate in at least four different industries (commercial aviation, parcel delivery, hotels and railroad).  Before it was split into ten different actions, Katz's single complaint in *Ronald A. Katz Technology Licensing, L.P. v. Chevron Corporation,* No. 9:06-CV-178 (E.D. Tex.) (Lufkin Division) alleged infringement against defendants in the energy, financial services, automobile, and insurance industries.  Moreover, Katz has sued Wal-Mart and Target in separate cases in the Eastern District of Texas., and although Katz has sued several cable television operators in Delaware, he has sued DirecTV in Texas.

To the extent Katz attempted to "group" some defendants by industry in Delaware, there are still several Delaware defendants that do not fit the purported groupings.  For example, in *Ronald A. Katz Technology Licensing, L.P. v. TD Banknorth,* No. 1:06-CV-544 (D. Del.), Katz sued not only financial institutions, but also a retail store (Dillards), and a credit reporting company (Experian Information Solutions).  Likewise in *Ronald A. Katz Technology Licensing, L.P. v. American International Group, Inc.,* No. 1:06-CV-547 (D. Del.), Katz sued not only insurance industries, but also some financial services companies (National City Corporation, National City Bank, National City Bank of Indiana and Wilmington Trust Company).  Because these cases already involve defendants in other industries, the issues in these cases will not be limited to those that purportedly pertain only to the core industry group.

Third, there are many defendants in the Texas actions that operate in the very same industries as the purported groups of defendants in the Delaware cases. For example, the Texas actions include:

- Many financial services companies[6] that were not sued along with the financial services companies in the Delaware case of *Ronald A. Katz Technology Licensing, L.P. v. TD Banknorth,* No. 1:06-CV-544 (D. Del.).
- Many energy companies[7] that were not sued along with energy companies in the Delaware case of *Ronald A. Katz Technology Licensing, L.P. v. Reliant Energy, Inc.,* No. 1:06-CV-543 (D. Del.).
- Many companies offering prescription drug services[8] that were not sued along with companies offering prescription drug services in the Delaware case of *Ronald A. Katz Technology Licensing, L.P. v. Ahold, USA,* No. 1:06-CV-545 (D. Del.).

Katz's grouping of some — but not all — industry defendants in Delaware does not argue against consolidation. On the contrary, it underscores the inefficiencies and possible inconsistencies that likely will result absent consolidation. Moreover, to the extent Katz maintains that unspecified "ethical conflicts" were considered in determining where certain defendants were sued (*see* Katz's Opp'n at 3), that consideration also underscores the need for consolidation. Any conflicts that Katz's attorneys may have will exist regardless of whether the cases are consolidated or remain separated. However, consolidating all the Actions will ensure that the effect of those conflicts can be assessed by a single judge, rather than being overlooked as the cases are dispersed among four different judges.

### 3. The Pledges of Cooperation Will Not Ensure Efficiency Or Avoid Inconsistent Pre-Trial Rulings.

Although the twenty-five Actions are pending in two districts, this is by no means the limited litigation that the Oppositions portray it to be. This litigation now involves one-hundred seventy-six defendants in twenty-five Actions asserting twenty-seven patents before four

---

[6] These Texas defendants include, among others, Discover Financial Services, Discover Bank, Target Bank, Target National Bank, Chevron Credit Bank, Cullen/Frost Bankers, The Frost National Bank, PNC Financial Services, PNC Bank, Regions Financial Corporation, Regions Bank, US Bankcorp, and U.S. Bank.

[7] These Texas defendants include, among others, American Electric Power Company, Inc., Southwestern Electric Power Company, Centerpoint Energy, Inc., Centerpoint Energy Houston Electric, LLC, and Centerpoint Energy Resources Corp.

[8] These Texas defendants include, among others, Target Corporation, Aetna RX Home Delivery, LLC, Professional Claim Services, Inc., Anthem Prescription Management, LLC, Precision RX, Inc., Caremark RX, Inc., Caremark, Inc., Healthy Options, Inc., Petmed Express, Inc., Safeway, Inc., The Kroger Co., and Randall's Food & Drugs, LP.

different judges.  Moreover, the Panel has recognized that the complexities and common factual questions involved in patent cases make them appropriate for consolidation even when the cases are pending in "just two judicial districts."  *See, e.g., In re Phonometrics, Inc. Patent Litig.*, Docket No. 1141, 1996 U.S. Dist. LEXIS 21909, at *1-3 (J.P.M.L. Dec. 11, 1996) (granting Section 1407 motion to consolidate 21 patent infringement actions which had been pending in just two judicial districts); *In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380 (J.P.M.L. 2002) (granting Section 1407 motion to consolidate six patent infringement actions which had been pending in just two judicial districts); *In re Panty Hose Seaming Patent Litig.*, 402 F. Supp. 1401 (J.P.M.L. 1975) (granting Section 1407 motion to consolidate five patent infringement actions which had been pending in just two judicial districts).

The so-called "alternatives" to consolidation proposed by Katz and some of the defendants — including voluntary cooperation and coordination by the parties — are feasible only in matters involving a limited number of actions and parties.[9]  In any event, Katz offers only vague pledges of cooperation and the hoped-for "goals" to be achieved through yet-to-be consummated stipulations.  (*See* Katz Opp'n at 12 (offering the unsupported statement that "many parties are considering proposed stipulations").)  The fact that Katz never managed to advise Target (and presumably many other defendants) of the "stipulations" prior to filing its Opposition illustrates the unfeasibility of managing twenty-five complex patent cases, 176 defendants and hundreds of lawyers via voluntary "cooperation or coordination."

The Panel also has rejected Katz's "alternatives to consolidation" argument in numerous cases, particularly in complicated patent matters involving numerous actions and dozens of parties.  *See, e.g., MLR*, 269 F. Supp. 2d at 1381; *In re Gabapentin Patent Litig.*, Docket No.

---

[9]  Katz cites two cases for the proposition that pledges of voluntary cooperation are a viable "alternative" to consolidation in this case.  (*See* Katz Opp'n at 12, citing *In re Commonwealth Sci. & Indus. Research Org. Patent Litig.*, 395 F. Supp. 2d 1357, 1358 (J.P.M.L. 2005) and *In re Cable Tie Patent Litig.*, 487 F. Supp. 1351, 1353 (J.P.M.L. 1980).)  Both cases are easily distinguished.  *In re Commonwealth* involved only three actions before two judges.  Likewise, *In re Cable Tie Patent Litigation* involved four actions between only five parties, and a proven history of cooperation between the parties.  The two cases cited by American Airlines to support the proposed "alternatives" to consolidation are not even patent cases.  (*See* American Airlines' Opp'n at 2, citing  *In re Unitrin, Inc., Ins. Sales Practices Litig.*, 217 F. Supp. 2d 1371, 1371-72 (J.P.M.L. 2002) and *In re Am. Gen. Fin. Inc., Credit Ins. Litig.*, 217 F. Supp. 2d 1374 (J.P.M.L. 2002).)  Both cases appear to be simple insurance cases, yet still do not involve nearly as many parties or complicated factual issues as the present Actions.

1384, 2001 U.S. Dist. LEXIS 1726, at *2-3 (J.P.M.L. Feb. 5, 2001); *In re Compression Labs, Inc. Patent Litig.,* 360 F. Supp. 2d 1367, 1368 (J.P.M.L. 2005). In such large and complicated cases, pledges of cooperation are no substitute for the discipline imposed by a single judge coordinating all discovery and pre-trial proceedings. As the Panel has noted: "[w]hile we applaud voluntary efforts to cooperate and coordinate among parties, counsel and courts, we observe that transfer under Section 1407 has the benefit of placing all actions in this docket before a single transferee judge who can structure pretrial proceedings to consider all parties' legitimate discovery needs" while safeguarding against duplicative demands on witnesses and third parties. *MLR*, 269 F. Supp. 2d at 1381.

Finally, pledges of cooperation do nothing to eliminate the reality that the Actions already are proceeding on separate tracks. Nor do they mitigate the serious risk that a fragmented approach to the Actions will produce multiple inconsistent rulings on key issues such as claim construction, infringement and invalidity. It is likely that there will be at least four separate hearings and judicial opinions regarding the issue of claim construction alone. When different claim constructions are applied to common facts, there is an unacceptably high risk of inconsistent results on the merits. *See In re Suess Patent Infringement Litig.*, 331 F. Supp. 549, 550 (J.P.M.L. 1971) ("We have concluded that these cases satisfy the criteria of Section 1407 and that only by transfer to the Western District of Pennsylvania can duplicative proceedings and the risk of inconsistent decisions be eliminated."); *see also In re Antibiotic Drugs Antitrust Litig.*, 355 F. Supp. 1400, 1401 (J.P.M.L. 1973) ("Transfer, therefore, will eliminate the possibility of duplicative discovery proceedings, inconsistent pretrial rulings and conflicting pretrial conferences.")

> **D.     Transfer To Judge Klausner In The Central District of California Is Appropriate.**

The arguments opposing transfer of the consolidated Actions to Judge Klausner of the Central District of California fail for the following reasons:

- This Panel's precedent specifically authorizes transfer of multidistrict litigation to a district in which none of the underlying actions is pending where, as in this case, there is a substantial nexus between the common fact issues and that district;

- Judge Klausner is the judicial officer most familiar with the technology underlying the Katz patent portfolio, has the most experience with Katz patents, and has issued rulings on the merits (with respect to infringement and validity) as to nearly 10 of the patents; and
- The Central District of California is a convenient venue for the parties, their lawyers and potential witnesses, offers a judge experienced in patent law, and has a proven track record of expeditious resolution of complex litigation.

### 1.    There Is A Substantial Nexus Between Common Fact Issues And The Central District of California.

Several of the Defendants oppose consolidation, but support transfer to the Central District of California in the event consolidation is granted.  (*See, e.g.,* Response of Discover Defendants and Wal-Mart Defendants ¶ 34; Response of Cablevision at 9; and Response of DHL Defendants at 2.)  These defendants recognize that the Central District of California is the only district that has both experience with the asserted Katz patents and a substantial nexus to the facts and witnesses in the Actions.

Those opposed to transfer to the Central District of California place undue emphasis on the fact that none of the Katz Actions currently is pending in that district.  Nothing in this Panel's precedent precludes transfer to a district where no constituent action is pending.  In the appropriate circumstances, the Panel will order such transfer where it promotes the goals of efficiency, justice and convenience.  (*See* Katz Opp'n at 14 (noting that 13 current multidistrict litigations were transferred to a district where no underlying action had been pending).)

As Katz observes, in the "instances of transfer to a district where no action was pending, the Panel has acknowledged that . . . its decision to do so was premised on the strong factual nexus between the action and the forum."  (Katz Opp'n at 14.)  For example, in *In re Sundstrand Data Control*, *Inc. Patent Litig.*, 443 F. Supp. 1019, 1020, 1021 (J.P.M.L. 1978), the Panel noted that it has "emphasized that under appropriate circumstances we would order transfer of a group of actions to a district in which none of the constituent actions is pending . . . and we conclude that such circumstances are present in the litigation now before us."  After noting that the plaintiff/patent owner's principal place of business was in the district, and that the "chief inventors" of the asserted patents resided there, the Panel concluded that "we are persuaded that most of the relevant documents and witnesses on the central issue of the validity of

[Sundstrand's] patents are located in the vicinity of that district."  443 F. Supp. at 1021*; accord, In re Air Crash Disaster Near Santa Cruz Airport, Bombay, India on January 1, 1978*, 463 F. Supp. 158, 159 (J.P.M.L. 1979) (transferring consolidated cases to W.D. Wash. because it "has the most substantial connection to the common factual questions raised in this litigation").

The same "substantial nexus" found in *Sundstrand* also exists here between the Central District of California and fact questions common to the Actions.  Given Judge Klausner's prior experience with the Katz family of interactive call processing patents, this case presents an even stronger nexus than *Sundstrand*.  Katz admits that Ronald A. Katz Technology Licensing, LP is "a limited partnership organized under the laws of the State of California and having a principal place of business in Los Angeles, California."  (Katz's Response ¶ 2.)  Moreover, each of the asserted Katz patents lists as the named inventor "Ronald A. Katz, Los Angeles, California."  Finally, Katz does not dispute Target's statement that some of the attorneys who prosecuted the asserted patents (and whose testimony may be relevant to common issues such as invalidity, prosecution laches and inequitable conduct) are located in the Central District of California.  (*See* Katz Opp'n at 16 n.17.)

As the Panel has recognized, patent validity is a key issue in multidistrict patent litigation, raising complex questions of fact common to each action.  *See In re Columbia Univ. Patent Litig.*, 313 F. Supp. 2d at 1385.  As in *Sundstrand*, most of the witnesses and documents relevant to key common issues of invalidity and unenforceability, as well as patent misuse and prosecution laches, are located in one judicial district.  "Appropriate circumstances" therefore are present for the Panel to transfer a group of actions to the Central District of California even though none of the constituent actions is pending there.  *See Sundstrand,* 443 F. Supp. at 1021.

### 2.     Judge Klausner Is The Judicial Officer Most Experienced With the Katz Patents and Underlying Technology.

Judge Klausner in the Central District of California has by far the most experience with the complex questions of claim construction, invalidity and noninfringement underlying the Katz family of patents.  Although Katz argues for transfer to the Eastern District of Texas, Judge

Folsom is the only judge in that district that has any familiarity with the Katz patents as a result of the *Citibank* case. The cases before Judge Clarke and Judge Ward have barely commenced.

Although the *Citibank* case has been pending in the Eastern District of Texas for slightly more than one year, it is not nearly as advanced as Katz portrays it to be. A *Markman* hearing has been recently held, but the court has not issued a claim construction order. Katz attempts to characterize Judge Folsom's rulings to date as "substantive," but the only ruling to which Katz points is a "ruling on claim selection," that is, requiring Katz to pick a specified number of claims on which to proceed in that litigation. To date, Judge Folsom has not issued any rulings on the merits. Expert and fact discovery have yet to conclude, and trial is not set to commence until May of 2007. In any event, Judge Folsom's denial of American Airlines' (and Target's) motion to consolidate its case with the *Citibank* case for *Markman* proceedings suggests that Katz's proposal of consolidation before Judge Folsom may be a non-starter.

By contrast, Judge Klausner presided over litigation involving fourteen of the patents involved in the Actions. As set forth in Target's Opening Brief, Judge Klausner spent nearly three years on the Katz patents, the underlying technology and accused products related to those at issue here. He issued numerous rulings on the merits, including claim construction (on ten of the Katz patents at issue in these Actions) and summary judgment rulings on validity and infringement. Because of Judge Klausner's familiarity with the Katz patents and underlying technology, transfer to the Central District of California will best serve the just and efficient resolution of the Actions, while avoiding the risk of multiple, inconsistent pre-trial rulings.

3. **The Central District of California Is Convenient To the Parties and Witnesses and Is Capable of Efficiently Managing The Actions.**

Despite Katz's criticism of the Central District of California, it is a highly efficient judicial district which routinely handles sophisticated, complex litigation, including a substantial number of patent cases. As Katz himself acknowledges, the Central District of California — despite his claim that it is "overburdened" — has a faster median time to resolution of civil cases (7.4 months) when compared with the Eastern District of Texas (10.3 months). (*See* Katz Opp'n at 17 n.20; *see also* Katz Exs. 37-38.) Because the Central District of California's track record of

efficient case management gets in the way of a good story, Katz attempts to undermine those statistics (without any factual support or citation), speculating that the more rapid resolution of civil cases in the Central District is due to "relatively simple civil cases [like ADA actions] associated with a much larger urban area." (*Id.*)  The Central District is convenient to the parties, witnesses and counsel.  As noted above, the plaintiff, inventor and at least some of the patent prosecution attorneys who likely will be witnesses, are located within the Central District.  In addition, at least 16 defendants have their principal places of business in California.  But geography alone does not determine convenience.  Judge Klausner sits in Los Angeles, a city which is accessible via direct flights from nearly every metropolitan area in the United States, and which contains dozens of hotels within minutes of the federal courthouse.

###    III.    CONCLUSION

None of the arguments in opposition to Target's Section 1407 motion overcomes the substantial gains in efficiency and convenience that will be realized by consolidation.  Nor do the arguments provide a constructive solution to the risks of inconsistent adjudication that would inevitably arise if the Actions were to continue on twenty-five separate tracks.  The Actions involve complex, unresolved common issues of fact.  This Panel has held that issues of patent invalidity alone are key issues in ordering consolidation of patent for multidistrict patent litigation.  Because most of the witnesses and documents relevant to those key common issues are located within the Central District of California, transfer to Judge Klausner is appropriate.

Dated:  November 17, 2006

By:    _____/S/_____

Harold J. McElhinny
Rachel Krevans
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone:  (415) 268-7000
Facsimile:  (415) 268-7522

Attorneys for Defendants TARGET
CORPORATION; TARGET BANK; and
TARGET NATIONAL BANK

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

In re:                                              )
                                                    )       MDL Docket No. 1816
Katz Interactive Call Processing Patent Litigation  )
                                                    )
                                                    )

### CERTIFICATE OF SERVICE

HAROLD J. McELHINNY
RACHEL KREVANS
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: (415) 268-7000
Facsimile: (415) 268-7522

Attorneys for Defendants
TARGET CORPORATION;
TARGET BANK; and
TARGET NATIONAL BANK



CERTIFICATE OF SERVICE
sd-336641

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2006 copies of the following document:

**REPLY BRIEF IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407;**

**DECLARATION OF M. ANDREW WOODMANSEE IN SUPPORT OF REPLY BRIEF TO MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION PURSUANT TO 28 U.S.C. § 1407;**

**SUPPLEMENTAL EXHIBITS IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION (EXHIBITS 1 THROUGH 30 - VOL. 1 OF 2); and**

**SUPPLEMENTAL EXHIBITS IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF KATZ TECHNOLOGY LICENSING PATENT LITIGATION (EXHIBITS 31 THROUGH 58 - VOL. 2 OF 2);**

was served by U.S. Mail, postage prepaid, upon the following parties and counsel:

### SEE ATTACHED PANEL ATTORNEY SERVICE LIST.

Executed this 17th day of November, 2006, under penalty of perjury at San Diego, California.

By: _Diana J. Coletti_
Diana J. Coletti

CERTIFICATE OF SERVICE
sd-336641

1

Judicial Panel on Multidistrict Litigation - Panel Attorney Service List

Docket: 1816 - In re Katz Interactive Call Processing Patent Litigation

Status: Pending on  / /

Transferee District:        Judge:

Printed on 11/15/2006

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Alltel Communication Wire,<br>One Allied Drive<br>Little Rock, AR 72202 | => Alltel Communications Wireless, Inc. |
| Alltel Communications,<br>One Allied Drive<br>Little Rock, AR 72202 | => Alltel Communications of Texarkana, Inc. |
| Alltel, Corp.,<br>One Allied Drive<br>Little Rock, AR 72202 | => ALLTEL Corp. |
| Arroyo, Blas P.<br>Alston & Bird, LLP<br>Bank of America Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000 | => Phone: (704) 444-1012  Fax: (704) 444-1111<br>Time Warner Cable, Inc.*; Time Warner Entertainment Co., L.P.*; Time Warner NY Cable, LLC* |
| Barner, Sharon R.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500  Fax: (312) 832-4700<br>U.S. Bancorp*#; U.S. Bank, N.A.* |
| Barquist, Charles S.<br>Morrison & Foerster, LLP<br>555 W. Fifth Street<br>Suite 3500<br>Los Angeles, CA 90013 | => Phone: (213) 892-5200  Fax: (213) 892-5454<br>Express Scripts, Inc.* |
| Beane, Jerry L.<br>Andrews & Kurth<br>BankOne Center<br>1717 Main Street<br>Suite 3700<br>Dallas, TX 75201 | => Phone: (214) 659-4400  Fax: (214) 659-4401<br>Aetna RX Home Delivery, LLC* |
| Bednarek, Michael<br>Paul Hastings Janofsky & Walker, LLP<br>875 15th Street, N.W.<br>Washington, DC 20005 | => Phone: (202) 551-1700  Fax: (202) 551-1705<br>ABN AMRO Mortgage Group, Inc.*; LaSalle Bank Corp.*; LaSalle Bank National Association*;<br>LaSalle Financial Services, Inc.* |
| Black, Martin J.<br>Dechert LLP<br>Cira Centre<br>2929 Arch Street<br>Philadelphia, PA 19104 | => Phone: (215) 994-2664  Fax: (215) 655-2664<br>TD Banknorth, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

*(Panel Attorney Service List for MDL 1,816 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Boice, William H.<br>Kilpatrick & Stockton<br>1100 Peachtree Street<br>Suite 2800<br>Atlanta, GA 30309 | => Phone: (404) 815-6464 Fax: (404) 541-3134<br>Cox Communications, Inc.*#; Coxcom, Inc.*#; Earthlink, Inc.*# |
| Cablevision Systems Corp.,<br>1111 Stewart Avenue<br>Bethpage, NY 11714 | =><br>Cablevison Systems Corp. |
| Capshaw, III, S. Calvin<br>Brown, McCarroll, LLP<br>P.O. Box 3999<br>Longview, TX 75606-3999 | => Phone: (903) 236-9800 Fax: (903) 236-8787<br>Anthem Prescription Management, LLC*; Precision RX, Inc.*; Professional Claim Services, Inc. dba<br>Wellpoint Pharmacy Management, Inc.*; Wellpoint, Inc.* |
| Cerdian Corporation,<br>3311 East Old Shakopee Road<br>Minneapolis, MN 55425 | =><br>Ceridian Corp. |
| Comdata Corporation,<br>5301 Maryland Way<br>Brentwood, TN 37027 | =><br>Comdata Corp. |
| Cox, Juliet A.<br>Sonnenschein, Nath & Rosenthal, LLP<br>4520 Main Street<br>Suite 1100<br>Kansas City, MO 64111 | => Phone: (816) 460-2400 Fax: (816) 531-7545<br>Aquila, Inc.* |
| Cullum, Janet L.<br>Cooley, Godward, Kronish, LLP<br>Five Palo Alto Square<br>3000 El Camino Real<br>Palo Alto, CA 94306-2155 | => Phone: (650) 843-5000 Fax: (650) 857-0663<br>Ronald A. Katz Technology Licensing, LP* |
| Devito, Daniel A.<br>Skadden, Arps, Slate, Meagher & Flom, LLP<br>4 Times Square<br>New York, NY 10036 | => Phone: (212) 735-3000 Fax: (212) 735-2000<br>Comerica Bank & Trust, NA*; Comerica Securites, Inc.*; Comerica, Inc.* |
| Elsevier, MD, J. Patrick<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000 Fax: (404) 881-7777<br>T-Mobile USA, Inc.* |
| Fabricant, Alfred R.<br>Dickstein, Shapiro LLP<br>1177 Avenue of the Americas<br>New York, NY 10036 | => Phone: (212) 277-6621 Fax: (212) 277-6501<br>Global Crossing Telecommunications, Inc. dba Global Crossing Conferencing* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Ferguson, Brian E.<br>McDermott, Will & Emery, LLP<br>600 13th Street, N.W.<br>Washington, DC 20005 | => Phone: (202) 756-8371  Fax: (202) 756-8087<br>21st Century Casualty Co.*; 21st Century Insurance Co.*; 21st Century Insurance Group*; AIG Annuity Insurance Co.*; AIG Federal Savings Bank*; AIG Life Insurance Co.*; AIG Marketing, Inc.*; AIG Retirement Services, Inc.*; AIG SunAmerica Asset Management Corp.*; American General Assurance Co.*; American General Indemnity Co.*; American General Life & Accident Insurance Co.*; American General Life Insurance Co.*; American International Group, Inc.*; Cigna Corp.*; Cigna Health Corp.*; Cigna Healthcare of Delaware, Inc.*; Tel-Drug of Pennsylvania, LLC*; Tel-Drug, Inc.*; United States Life Insurance Co. in the City of New York*; VALIC Financial Advisors, Inc.*; VALIC Retirement Services Co.*; Variable Annuity Life Insurance Co.* |
| Friedland, David K.<br>Lotts & Friedland, PA<br>355 Alhambra Circle<br>Suite 1100<br>Coral Gables, FL 33134 | => Phone: (305) 448-7089  Fax: (305) 446-6191<br>Petmed Express, Inc. dba 1-800-Petmeds* |
| Harrel, Alan David<br>Atchley, Russell, Waldrop & Hlavinka<br>1710 Moores Lane<br>P.O. Box 5517<br>Texarkana, TX 75505-5517 | => Phone: (903) 792-8246  Fax: (903) 792-5801<br>Wal-Mart Stores, Inc. |
| Hawkins, III, Holmes J.<br>King & Spalding<br>1180 Peachtree Street<br>Atlanta, GA 30309-3521 | => Phone: (404) 572-4600  Fax: (404) 572-5134<br>Healthy Options, Inc. dba Postal Prescription Services*; Kroger Co. (The)*; Kroger Texas, LP* |
| Horwitz, Richard L.<br>Potter Anderson & Corroon, LLP<br>Hercules Plaza, 6th Floor<br>1313 North Market Street<br>P.O. Box 951<br>Wilmington, DE 19899-0951 | => Phone: (302) 984-6000<br>DHL Express (USA), Inc.; DHL Holdings (USA), Inc.; Sky Courier, Inc. |
| James, Angela Payne<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000  Fax: (404) 881-7777<br>Charter Communications Entertainment I, LLC*; Charter Communications Holding Co., LLC*; Charter Communications Operating, LLC*; Charter Communications, Inc.* |
| Kenworthy, Thomas B.<br>Morgan, Lewis & Bockius, LLP<br>1701 Market Street<br>Philadelphia, PA 19103-2921 | => Phone: (215) 963-5702  Fax: (215) 963-5001<br>Rite Aid Corp.*; Rite Aid of Delaware, Inc.* |
| Krevitt, Josh A.<br>Gibson, Dunn & Crutcher LLP<br>200 Park Avenue<br>New York, NY 10166 | => Phone: (212) 351-2490  Fax: (212) 351-6390<br>Cablevision of Brookhaven, Inc.*; Cablevision of Connecticut Corp.*; Cablevision of Hudson County, Inc.*; Cablevision of Litchfield, Inc.*; Cablevision of Monmouth, Inc.*; Cablevision of New Jersey, Inc.*; Cablevision of Oakland, LLC*; Cablevision of Rockland/Ramapo, LLC*; Cablevision System New York City Corp.*; CSC Holdings, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Lee, Robert L.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000  Fax: (404) 881-7777<br>Ahold USA, Inc.*; Giant Food Stores, LLC*; Giant Food, Inc. (dba Giant of Maryland, LLC)*; Giant<br>Food, LLC*; Stop & Shop Supermarket Co., LLC* |
| Lukin, Mitchell D.<br>Baker Botts, L.L.P.<br>One Shell Plaza<br>910 Louisiana<br>Houston, TX 77002-4995 | => Phone: (713) 229-1733  Fax: (713) 229-7733<br>Reliant Energy Retail Services, LLC*; Reliant Energy, Inc.* |
| Maxwell, David M.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000  Fax: (404) 881-7777<br>AOL, LLC*; CompuServe Interactive Services, Inc.*; Netscape Communications Corp.* |
| McDermott, Richard M.<br>Alston & Bird, LLP<br>Bank of America Plaza<br>101 South Tryon Street<br>Suite 4000<br>Charlotte, NC 28280-4000 | => Phone: (704) 444-1000  Fax: (704) 444-1111<br>Cinergy Corp.*; Duke Energy Corp.* |
| McElhinny, Harold J.<br>Morrison & Foerster, LLP<br>425 Market Street<br>San Francisco, CA 94105-2482 | => Phone: (415) 268-7000  Fax: (415) 268-7522<br>Target Bank*; Target Corp.*; Target National Bank* |
| McGrath, Robin L.<br>Alston & Bird, LLP<br>1201 West Peachtree Street<br>One Atlantic Center<br>Atlanta, GA 30309-3424 | => Phone: (404) 881-7000  Fax: (404) 881-7777<br>Safeco Corp.*#; Safeco Insurance Co. of America* |
| McKool, Jr., Mike<br>McKool & Smith, P.C.<br>300 Crescent Court<br>Suite 1500<br>Dallas, TX 75201 | => Phone: (214) 978-4000  Fax: (214) 978-4044<br>American Airlines, Inc.*; American Beacon Advisors, Inc.* |
| Miller, Camille M.<br>Cozen O'Connor<br>1900 Market Street<br>Philadelphia, PA 19103 | => Phone: (215) 665-7273  Fax: (215) 701-2273<br>Wilmington Brokerage Services Co.*; Wilmington Trust Co.* |
| Miller, Thomas A.<br>Howrey LLP<br>1111 Louisiana, 25th Floor | => Phone: (713) 787-1483  Fax: (713) 787-1440<br>Discover Bank*; Discover Financial Services, Inc.* |

Note: Please refer to the report title page for complete report scope and key.

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|
| Houston, TX 77002-5242 | |
| Mirabito, A. Jason<br>Mintz, Levin, Cohen, Ferris, Glovsky & Popeo<br>One Financial Center<br>Boston, MA 02111 | => Phone: (617) 542-6000  Fax: (617) 542-2241  Email: jmlrabito@mintz.com<br>Brooks' Pharmacy, Inc.*; Eckerd Corp.*; Jean Coutu Group (PJC) USA, Inc., (The)*; Maxi Drug North, Inc.*; Maxi Drug, Inc.* |
| Moore, Matthew J.<br>Howrey LLP<br>1299 Pennsylvania Avenue, N.W.<br>Washington, DC 20004-2402 | => Phone: (202) 783-0800  Fax: (202) 383-6610<br>Cullen/Frost Bankers, Inc.*; Ford Motor Co.*#; Ford Motor Credit Co.*#; Frost National Bank, NA*; General Electric Capital Corp.*; General Electric Capital Services, Inc.*#; General Electric Consumer Finance, Inc.*#; General Motors Acceptance Corp.*#; General Motors Corp.*#; GMAC Mortgage Corp.*; GMAC Residential Capital Corp.*#; Hilton H Honors Worldwide, L.L.C.*; Hilton Hotels Corp.*; Hilton Reservations Worldwide, L.L.C.*; Marriott International, Inc.*; Marriott Worldwide Reservation Services, L.L.C.*; PNC Bank, N.A.*; PNC Financial Services Group, Inc.*#; Randall's Food & Drug, L.P.*; Randall's Food Market, Inc.*; Safeway, Inc.*; Whirlpool Corp.* |
| Moyer, Jeffrey L.<br>Richards, Layton & Finger<br>P.O. Box 551<br>Wilmington, DE 19899 | => Phone: (302) 651-7525  Fax: (302) 651-7701<br>Qwest Broadband Services, Inc.*; Qwest Communications Corp.*; Qwest Communications International, Inc.*; Qwest Interprise America, Inc.*; Qwest LD Corp.*; Qwest Wireless, LLC* |
| Najim, Samuel J.<br>Jones Day<br>1420 Peachtree Street<br>Suite 800<br>Atlanta, GA 30309-3053 | => Phone: (404) 521-3939  Fax: (404) 581-8330<br>Centerpoint Energy Houston Electric, LLC*; Centerpoint Energy Resources Corp*; Centerpoint Energy, Inc.*; Chevron Corp.*; Chevron Credit Bank, N.A.*; Chevron Products Co.*; Chevron U.S.A., Inc.*; Experian Information Solutions, Inc.*; National City Bank*; National City Bank of Indiana*; National City Corp.*; Regions Bank, NA*#; Regions Financial Corp.*# |
| National Railroad Passeng,<br>60 Massachusetts Avenue, N.E.<br>Washington, DC 20002 | =><br>National Railroad Passenger Corp. dba Amtrak |
| Norrod, Gregory S.<br>Foley & Lardner, LLP<br>321 North Clark Street<br>Suite 2800<br>Chicago, IL 60610-4714 | => Phone: (312) 832-4500  Fax: (312) 832-4700<br>Sam's East, Inc.*; Sam's West, Inc.*; Wal-Mart Store, Inc.*; Wal-Mart Stores East, LP*; Wal-Mart Stores Texas, LP*; Wal-Mart Stores, Inc.*; Wal-Mart.com, Inc.* |
| Petersen, Steven P.<br>Leydig, Voit & Mayer, Ltd.<br>Two Prudential Plaza<br>Suite 4900<br>Chicago, IL 60601 | => Phone: (312) 616-5600  Fax: (312) 616-5700<br>Aetna, Inc.*; TDS Metrocom, LLC*; TDS Telecommunications Corp.*; United States Cellular Corp.* |
| Roodman, David A.<br>Bryan Cave, LLP<br>One Metropolitan Square<br>211 N. Broadway<br>Suite 3600<br>St. Louis, MO 63102-2750 | => Phone: (314) 259-2000  Fax: (314) 259-2020<br>Dillard Investment Co., Inc.*; Dillard's, Inc.* |
| Seary, III, Marshall M.<br>Quinn Emanuel Urquhart Oliver & Hedges | => Phone: (213) 443-3000  Fax: (213) 443-3100<br>DirecTV Enterprise, LLC*#; DirecTV Group, Inc.*#; DirecTV Holdings, LLC*#; DirecTV, Inc.*# |

Note: Please refer to the report title page for complete report scope and key.

  
*(Panel Attorney Service List for MDL 1,816 Continued)*

| ATTORNEY - FIRM | REPRESENTED PARTY(S) |
|---|---|

865 South Figueroa Street
10th Floor
Los Angeles, CA 90017

Selsberg, Steven R.                    => Phone: (713) 238-2664  Fax: (713) 238-4888
Mayer, Brown, Rowe & Maw, LLP          Tracfone Wireless, Inc.*#
700 Louisiana
Suite 3400
Houston, TX 77002


Spivey, Jonathan R.                    => Phone: (312) 832-4500  Fax: (312) 832-4700
Foley & Lardner, LLP                   Caremark Inc. dba Caremark Prescription Services*; Caremark RX Inc.*
321 North Clark Street
Suite 2800
Chicago, IL 60610-4714


Standley, Jeffrey S.                   => Phone: (614) 792-5555  Fax: (614) 792-5536
Standley Law Group, LLP                Delmarva Power & Light Co.*; Humana. Inc.*#; Pepco Holdings, Inc.*; PHI Service Co.*
495 Metro Place South
Suite 210
Dubin, OH 43017-5319


Stroup, Richard L.                     => Phone: (202) 408-4000  Fax: (202) 408-4400
Finnegan, Henderson, Farabow, Garrett, et al.   Federal Express Corp.*; FedEx Corp.*; FedEx Corporate Services, Inc.*; FedEx Customer Information
901 New York Avenue, N.W.              Services, Inc.*
Washington, DC 20001-4413


Worthington, Stayton L.               => Phone: (903) 758-5543  Fax: (903) 753-6989
Coghlan Crowson, LLP                   American Electric Express Power Co., Inc.; American Electric Power Co., Inc.*; American Electric
1127 Judson Road, Suite 211           Power Service Corp.; American Electric Power WR; Southwestern Electric Power Co.*
Longview, TX 75606

---

Note: Please refer to the report title page for complete report scope and key.