IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RONALD A. KATZ TECHNOLOGY LICENSING, L.P., | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | C.A. No. 06-547-GMS |
| AMERICAN INTERNATIONAL, GROUP, INC., ET AL., | ) ) ) | |
| Defendants. | ) ) ) | |

## DEFENDANT AQUILA, INC.'S REPLY TO PLAINTIFF'S OPPOSITION TO AQUILA'S MOTION TO STAY ACTION PENDING THE U.S. PATENT AND TRADEMARK OFFICE'S REEXAMINATION OF PLAINTIFF'S PATENTS

Karen E. Keller (No. 4489)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone:(302) 571-6600
kkeller@ycst.com

and

Curtis E. Woods (Mo. Bar No. 27065)
Juliet A. Cox (Mo. Bar No. 42566)
Sonnenschein Nath & Rosenthal LLP
4520 Main Street, Suite 1100
Kansas City, Missouri  64111
Telephone:(816) 460-2400
Facsimile: (816) 531-7545

*Attorneys for Defendant Aquila, Inc.*

Dated:   January 29, 2007

# TABLE OF CONTENTS

I.   Katz fails to demonstrate that it will be unduly prejudiced or placed at a  tactical disadvantage if this Court grants Aquila's Motion to Stay.................................................1

     A.   All patents-in-suit will be impacted by the reexamination...........................1

     B.   Katz has not invested substantial expense and time in this litigation. ........................2

     C.   Defendants should be afforded their right to reexaminations. ....................................3

II.   Katz underestimates the impact of the reexaminations on simplifying the issues involved in this case...............................................................................................4

III.   The early stage of this litigation weighs heavily in favor of granting a stay. ..........................5

IV.   Conclusion ..............................................................................................................6

# TABLE OF CITATIONS

## CASES

*Alloc, Inc. v. Unilin Decor N.V.*, C.A. No. 03-253-GMS, 2003 WL 21640372 (D. Del. July 11, 2003)...................................................................................................2, 6

*Ethicon, Inc. v. Quigg*, 849 F.2d 1422 (Fed. Cir. 1988) ........................................................5

*KLA-Tencor Corp. v. Nanometrics, Inc.*, No. C 05-03116 JSW, 2006 WL 708661 (N.D. Cal. Mar. 16, 2006)...................................................................................1, 2

*Lectrolarm Custom Services, Inc. v. Vicon Indus., Inc.*, No. 03-2330 MA/A, 2005 WL 2175436 (W.D. Tenn. Sept. 1, 2005)..............................................................5

*Methode Elec., Inc. v. Infineon Tech. Corp.*, No. C 99-21142-JW, 2000 U.S. Dist. LEXIS 20689 (N.D. Cal. Aug. 7, 2000) .....................................................................2

*Pegasus Dev. Corp. v. DirecTV, Inc.*, C.A. No. 00-1020-GMS, 2003 WL 21105073 (D. Del. May 14, 2003).........................................................................3, 4

*United Sweetener USA, Inc. v. Nutrasweet Co.*, 766 F. Supp. 212 (D. Del. 1991) .........5, 6

## LEGISLATIVE MATERIALS

H.R. Rep. No. 1307(I), at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463 ..............5

Defendant Aquila, Inc. ("Aquila") submits this reply to Plaintiff Ronald A. Katz Licensing Technology, L.P's ("Katz") Opposition to Aquila's Motion to Stay Pending Reexamination of Plaintiff's Patents (D.I. #94). For the reasons set forth below and in Aquila's Motion to Stay Action Pending the U.S. Patent and Trademark Office's Reexamination of Plaintiff's Patents (D.I. #88), Aquila requests that the Court stay this action in its entirety pending the completion of all of the reexamination proceedings by the U.S. Patent and Trademark Office ("PTO") involving Plaintiff's U.S. patents that have been asserted in this action as well as other related but unasserted patents.

I.    **Katz fails to demonstrate that it will be unduly prejudiced or placed at a tactical disadvantage if this Court grants Aquila's Motion to Stay.**

A.    **All patents-in-suit will be impacted by the reexamination.**

Katz argues that it will be unduly prejudiced by a stay because "less than four percent of the claims in the 26 patents-in-suit are in reexamination." (*See* D.I. #94, Ex. 1 at p. 4.) In arguing that less than 4% of the claims at issue are in reexamination, Katz conveniently ignores the fact that all of the patents-in-suit are inextricably intertwined as they arise from related applications, refer to the same subject matter, and share many of the same terms. Accordingly, as pointed out in the opening brief, the reexaminations will impact significantly more than the 4% of claims directly being reexamined. (D.I. #88, Ex. A at pp. 11-12.) Given the overlapping issues arising from the interrelated patents-in-suit, it is likely that the outcome of the reexaminations will impact all of the patents-in-suit, including those patents not subject to reexamination.

In *KLA-Tencor Corp. v. Nanometrics, Inc.*, the United States District Court for the Northern District of California stayed all proceedings with respect to all patents-in-suit despite the fact that only a portion of the patents-in-suit were subject to reexamination. *KLA-Tencor*,

No. C 05-03116 JSW, 2006 WL 708661, at *1 (N.D. Cal. Mar. 16, 2006). The court in *KLA-Tencor* observed that "[w]hen there are overlapping issues between the reexamined patents and other patents in suit, courts have found staying the entire case to be warranted." *Id.* at *4; *see also Methode Elec., Inc. v. Infineon Tech. Corp.*, No. C 99-21142 JW, 2000 U.S. Dist. LEXIS 20689, at *8 (N.D. Cal. Aug. 7, 2000) ("[A]lthough discovery will still take place regarding the same accused product regardless of the reexamination results, the Court finds that the issues regarding the [patent not in reexamination] may be narrowed or amended as a result of the PTO's decision."); *see also Alloc, Inc. v. Unilin Decor N.V.*, C.A. No. 03-253-GMS, 2003 WL 21640372, at *2 (D. Del. July 11, 2003) ("[E]ven though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a stay is appropriate."). Like the courts in *KLA-Tencor* and *Methode*, and this Court in *Alloc*, this Court should stay these proceedings pending the outcome of the PTO's reexaminations.

### B.   Katz has not invested substantial expense and time in this litigation.

The courts in *KLA-Tencor* and *Methode*, and this Court in *Alloc*, further observed that granting a stay would unduly prejudice the nonmoving party only if the nonmoving party had invested substantial time and money in the proceedings. *KLA-Tencor*, 2006 WL 708661, at *3; *Methode*, 2000 U.S. Dist. LEXIS 20689, at *7; and *Alloc*, 2003 WL 21640372, at *3. "Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation." *KLA-Tencor*, 2006 WL 708661, at *3.

In the instant case, Katz has not argued, much less demonstrated, that it has invested substantial expense and time in these proceedings. No discovery has been conducted by any of the parties, and the Court has not entered a case management order or set a trial date. At such an

065686.1001

early stage in the litigation, no party has invested substantial time or money in this litigation. In fact, Katz presented no argument to support finding it would be unduly prejudiced by a stay. Where, as here, money damages are available to compensate the plaintiff in the event of ultimate success, and a stay pending reexamination may alter significantly the scope of discovery and resolution of claim interpretation and invalidity issues, a stay will avoid unnecessary effort and expense to the Court and the parties, with no consequent irreparable impact on Katz. Accordingly, Katz will not be unduly prejudiced by a stay of these proceedings.

### C.    Defendants should be afforded their right to reexaminations.

Katz insists that staying these proceedings pending the outcome of the PTO's reexaminations will result in undue delay to Katz being afforded its "day in court."[1] What Katz fails to recognize, however, is the defendants' right to exercise the rights afforded to them under the patent statutes would be abolished if this suit proceeds before the PTO has completed its reexamination process. In the event Katz's "day in court" is delayed, it nonetheless has available to it money damages to remedy the delay. On the other hand, if the case proceeds to resolution before the PTO has completed its process, and the PTO's result is different from the Court's, the defendants will likely have no available remedy at that time.

In *Pegasus Dev. Corp. v. DirecTV, Inc.*, this Court granted a motion to stay all proceedings pending reexamination despite plaintiffs' plea that they would be denied their "day in court" if the proceedings were stayed. *Pegasus*, C.A. No. 00-1020-GMS, 2003 WL 21105073, at *3 (D. Del. May 14, 2003). This Court explained:

---

[1] Katz mentions, no less that four times, that a stay will rob it of its "day in court." *See* D.I. #94, Ex. 1 at p. 2 ("Telecom Defendants are trying to... further delay their day of reckoning."); D.I. #94, Ex. 1 at p. 2 ("Katz Technology Licensing is entitled to its day in court."); D.I. #94, Ex. 1 at p. 11 ("[A] stay would create undue prejudice to Katz Technology Licensing, which at a minimum should be allowed its day in court...."); and D.I. #94, Ex. 1 at p. 13 ("... delay the case and the patent owner's day in court.").

- 3 -

> The court is sensitive to the plaintiffs' right to have their day in
> court. Nonetheless, ... the court is convinced that a stay is
> appropriate in this particular case. In addition, the court reminds
> the plaintiffs that they affirmatively invoked the rights of the patent
> statute; they can hardly be heard now to complain of the rights
> afforded others by that same statutory framework. [Defendant] is
> legally entitled to invoke the reexamination mechanism, and the
> PTO has determined that reexamination is warranted. There is
> nothing facially untoward in that.

*Id.* This Court in *Pegasus* recognized the defendant's statutory right to seek a reexamination of

the patents-in-suit. *Id.* Similarly, in the instant case, Aquila requests that this Court again

recognize the statutory right to reexamination and stay these proceedings pending the outcome of

the PTO's reexaminations.

## II.    Katz underestimates the impact of the reexaminations on simplifying the issues involved in this case.

Katz claims that the PTO's reexaminations will not simplify the issues because,

according to Katz, only 4% of the claims are subject to reexamination. (*See* D.I. #94, Ex. 1 at p.

13.) Katz, however, grossly underestimates the impact that the reexaminations could have on all

of the interrelated patents-in-suit.

As discussed above (*see* I. A.) and in Aquila's Motion to Stay (D.I. #88, Ex. 2 at p. 11),

all of the patents and claims involved in this litigation are closely related. Segregating the issues

involved in each of the patents-in-suit and in Katz's claims is not as simple and straightforward

as Katz would have this Court believe. (*See* D.I. #94, Ex. 1 at p. 13.) Rather, this case involves

a multitude of related claims that all arise out of Katz's "interactive call processing patent

portfolio." (*See* D.I. #94, Ex. 1 at p. 7.)

Because all of the patents-in-suit and claims are interrelated, any reexamination is likely

to impact, and could simplify, a multitude of the claims and issues involved in this litigation.

This Court and these parties would benefit from "employ[ing] the PTO's expertise" in the reexamination process. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (Fed. Cir. 1988); *see also Lectrolarm Custom Services, Inc. v. Vicon Indus., Inc.*, No. 03-2330 MA/A, 2005 WL 2175436, at *2 (W.D. Tenn. Sept. 1, 2005) ("Reexamination permits 'efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation' and allows the validity of a patent to be 'tested in the Patent office where the most expert opinions exist.'" (*quoting* H.R. REP. NO. 1307(I), at 4 (1980), *reprinted in* 1980 U.S.C.C.A.N. 6460, 6463)).

Because it is likely that many of the patents-in-suit, and the claims derived from these patents, will be impacted by the PTO's reexaminations, this Court should stay all proceedings in favor of employing the PTO's expertise through the reexamination process. Such reexamination of Katz's patents is likely to simplify the issues and result in a more efficient resolution of this case.

## III. The early stage of this litigation weighs heavily in favor of granting a stay.

Katz claims that "although discovery has not yet commenced and no trial date has been set, this is a neutral factor that does not support a stay." (*See* D.I. #94, Ex. 1 at p. 5) It is interesting to note, however, that Katz cites no authority for the proposition that the early stage of this litigation is a "neutral factor" that should neither support nor oppose the granting of a stay. To the contrary, that no discovery has taken place and no trial date has been set militates in favor of granting a stay.

This Court routinely considers the stage of the litigation when deciding whether to grant a stay pending reexamination. In *United Sweetener USA, Inc. v. Nutrasweet Co.*, this Court stayed all proceedings, including discovery, pending reexamination because the Court had "contended

- 5 -

with only pretrial motions and... little, if any, discovery ha[d] been conducted...." *United Sweetener*, 766 F. Supp. 212, 218 (D. Del. 1991). Similarly, in *Alloc*, in granting a stay pending reexamination, this Court noted "that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date." *Alloc*, 2003 WL 21640372, at *3.

It is clear from the case law that the early stage of this litigation is not a "neutral factor" that neither supports nor opposes the granting of a stay pending reexamination of the Katz patents. This Court has consistently granted stays pending reexamination where the litigation is in its early stages. In the instant case, no discovery has been conducted and no trial date has been set. Consequently, this Court should stay these proceedings pending reexamination of the Katz patents.

## IV.    Conclusion

For the reasons set forth above and in Aquila's Motion to Stay Action Pending the U.S. Patent and Trademark Office's Reexamination of Plaintiff's Patents (D.I. #88), Aquila requests that the Court stay this action in its entirety pending the completion of all of the reexamination proceedings by the U.S. Patent and Trademark Office involving Plaintiff's U.S. patents that have been asserted in this action as well as other related but unasserted patents.

Respectfully submitted,

Karen E. Keller (No. 4489)
Young Conaway Stargatt & Taylor, LLP
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
Telephone: (302) 571-6600
kkeller@ycst.com

and

Curtis E. Woods (Mo. Bar No. 27065)
Juliet A. Cox (Mo. Bar No. 42566)
Sonnenschein Nath & Rosenthal LLP
4520 Main Street, Suite 1100
Kansas City, Missouri  64111
Telephone: (816) 460-2400
Facsimile: (816) 531-7545

ATTORNEYS FOR DEFENDANT
AQUILA, INC.

## CERTIFICATE OF SERVICE

I, Karen E. Keller, Esquire, hereby certify that on January 29, 2007, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

John M. Seaman, Esquire
Bouchard, Margules & Friedlander, P.A.
222 Delaware Avenue
Suite 1400
Wilmington, DE 19801

Philip A. Rovner, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
Wilmington, DE 19899-0951

David A. Felice, Esquire
Cozen O'Connor
Chase Manhattan Centre
1201 North Market St., Suite 1400
Wilmington, DE 19801

Richard L. Horwitz, Esquire
Potter Anderson & Corroon, LLP
1313 N. Market St., Hercules Plaza, 6th Flr.
Wilmington, DE 19899-0951

John G. Day, Esquire
Ashby & Geddes
222 Delaware Avenue
Wilmington, DE 19899

Collins J. Seitz, Jr. Esquire
Connolly Bove Lodge & Hutz LLP
The Nemours Building
1007 North Orange Street
Wilmington, DE 19899

I further certify that I caused a copy of the foregoing document to be served by e-mail and hand delivery on January 29, 2007 on the above-listed counsel of record.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

Danielle Gibbs  (#3698)
Karen E. Keller (#4489)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
(302) 571-6600
kkeller@ycst.com
*Attorneys for Defendant Aquila Inc.*

# TAB 1

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

H
Briefs and Other Related Documents
Alloc, Inc. v. Unilin Decor N.V.D.Del.,2003.Only the
Westlaw citation is currently available.

United States District Court,D. Delaware.
ALLOC, INC., a Delaware corporation, et al.,
Plaintiffs,
v.
UNILIN DECOR N.V., a Belgian company, et al.,
Defendants.
**No. Civ.A. 03-253-GMS.**

July 11, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.

I. INTRODUCTION

*1 On March 5, 2003, Alloc, Inc. ("Alloc"), Berry
Finance N.V. ("Berry"), and Valinge Aluminum AB,
("Valinge") (collectively "the plaintiffs") filed a
complaint against Unilin Decor, N.V. ("Unilin") and
Quick-Step Flooring, Inc. ("Quick-Step")
(collectively "the defendants") alleging infringement
of U.S. Patent No. 6,516,579 ("the '579 patent"). The
'579 patent is the latest in a series of continuation pat-
ents that include U.S. Patent Nos. 5,706,621 ("the
'621 patent"), 5,860,267 ("the '267 patent"),
6,023,907 ("the '907 patent"), and 6,182,410 ("the
'410 patent").

The '621 patent is currently undergoing reexamina-
tion in the United States Patent and Trademark Office
("PTO"). Additionally, the Federal Circuit is consid-
ering infringement issues with regard to the '267,
'907, and '410 patents after the International Trade
Commission ("ITC") rendered a non-infringement
decision in favor of Unilin and against the plaintiffs.

Presently before the court is the defendant's motion to
stay litigation of the '579 patent pending the comple-
tion of both the '621 reexamination proceedings and
the Federal Circuit's decision on the '267, '907, and
'410 patents. After consideration of each of the
factors involved, and for the reasons detailed below,
the court will grant the motion to stay.

II. BACKGROUND

The parties involved in the present action have at-
tempted to resolve their patent infringement issues in
many different forums, both in the United States and
in Europe. Specifically, in July 2000, Pergo Inc.
("Pergo"), Unilin's licensee, brought a declaratory ac-
tion in the District of Columbia with regard to the
'267, '907, and '621 patents in response to the
plaintiffs' threats of infringement litigation. Pergo ad-
ditionally filed a request for reexamination of the
'621 patent in the PTO. This reexamination is cur-
rently ongoing. The plaintiffs subsequently filed a
complaint in the Eastern District of Wisconsin assert-
ing that Pergo and Unilin infringed the '267 and '907
patents. In response, Unilin filed its own declaratory
judgment action in the District of Columbia, alleging
that its product did not infringe the '267, '907, and
'621 patents.

In December 2000, the plaintiffs initiated a proceed-
ing in the ITC asserting that Unilin infringed the '267,
'907, and '410 patents. Upon the filing of the ITC ac-
tion, all of the district court actions between the two
parties concerning the alleged infringement of the
'267, '907, and '410 patents were stayed pursuant to
28 U.S.C. § 1659. In November 2001, an ITC Ad-
ministrative Law Judge ("ALJ") issued a decision
finding that Unilin did not infringe the '267, '907, or
'410 patents. The ITC affirmed the ALJ's decision in
April 2002. The plaintiffs then appealed to the Feder-
al Circuit, which heard oral argument on that case in
March 2003. No decision has yet issued.

In the present case, the '579 patent is the only patent
in dispute. However, as the court noted above, it is
the latest of the continuation patents that stem from
the original '621 patent. The '579 patent has never
been reviewed by the PTO, the ITC, or any other
court.

III. DISCUSSION

*2 The decision to stay a case is firmly within the
discretion of the court. *See Cost Bros., Inc. v. Travel-
ers Indem. Co., 760 F.2d 58, 60 (3d Cir.1985).* This

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

authority applies equally to patent cases in which a reexamination by the PTO has been requested. *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (noting that "[c]ourts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination.") (internal citations omitted); *see also Emhart Indus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q .2d 1889, 1890 (N.D.Ill.1987) (recognizing that, "in passing legislation establishing the reexamination proceeding, Congress stated its approval of district courts liberally granting stays within their discretion."); *Gould v. Control Laser Corp.,* 705 F .2d 1340, 1342 (Fed.Cir.1983) (citing legislative history of reexamination statute).

In determining whether a stay is appropriate, courts are directed to consider the following factors: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3 Comm Corp.,* 69 F.Supp.2d 404, 406 (W.D.N.Y.1999) (citing cases); *cf. United Sweetner USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991) (stating a similar test).

In opposition to the defendants' motion to stay, the plaintiffs first argue that, since the '579 patent itself is not at issue in the reexamination proceedings, or in the Federal Circuit appeal, there is no need to stay the case before this court. *See* D.I. 21 at 7. The court must disagree because the plaintiffs cannot credibly argue that the patents are not alike in subject matter, as well as in many of their claims. This is so because, in general, "a continuing application is one filed during the pendency of another application which contains at least part of the disclosure of the other application and names at least one inventor in common with that application." *Transco Products, Inc. v. Performance Contracting, Inc.,* 38 F.3d 551, 555 (Fed.Cir.1994). Thus, a continuation application "claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed." *Id.* Indeed, the plaintiffs themselves admit that the patents in question do have some terms in common. *See* D.I. 21 at

10. Therefore, even though the '579 patent does not contain precisely the same claims of the other patents that are under review or reexamination, there is a sufficient correlation among all of the patents for the court to conclude that a stay is appropriate.

Additionally, with regard to the issue of efficiency, it is beyond dispute that the court would benefit from a narrowing of the numerous complex issues relating to claims, which, if clearly defined, would streamline discovery and subsequent litigation. To this end, the reexamination of the '621 patent will greatly serve the purpose of defining the issues in this case. For example, the court will gain the benefit of the PTO's particular expertise in evaluating the prior art. *See Pegasus Development Corp. v. DirecTV, Inc.,* 2003 WL 21105073, *2 (D.Del, May 14, 2003) (citations omitted). Likewise, the court will also benefit from the reexamination process in that (1) many discovery issues relating to prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; and (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court. *Id.* (citations omitted). Such a refinement of the issues will benefit both parties by reducing litigation costs. *See id.* This approach will also best conserve the court's scarce resources. *See id.* Similar benefits will likewise flow from the Federal Circuit's analysis of the '267, '907, and '410 patents.

*3 The plaintiffs alternatively contend that the motion is premature because the two proceedings that have a potential impact on this case may be decided well before this case reaches the claim interpretation stage. *See* D.I. 21 at 5. However, if the decisions of the PTO and Federal Circuit are imminent, as the plaintiffs suggest, a stay at this time would not unduly burden their case as the stay would then be of short duration.

Finally, the court notes that discovery in this case has not yet begun, nor has a discovery schedule been entered at this time. Likewise, the court has not yet set a trial date. Therefore, the stay will be entered before any party incurs substantial litigation-related ex-

Not Reported in F.Supp.2d                                                                                     Page 3
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

penses.

## IV. CONCLUSION

In light of the above considerations, the court concludes that a stay at this point in the case would not unduly prejudice the plaintiffs or create for them a clear tactical disadvantage. Indeed, a stay will allow the issues before the court to be further simplified and defined to the benefit of the parties, as well as the court.

For the foregoing reasons, IT IS HEREBY ORDERED that:
1. The Defendants' Motion to Stay Pending the Reexamination by the U.S. Patent and Trademark Office and Ruling by the United States Court of Appeals for the Federal Circuit (D.I.15) is GRANTED.
2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '621 patent and any decision that results from the Federal Circuit's consideration of the '267, '907, and '410 patents within thirty (30) days of the date of each decision.
3. The Plaintiffs' Motion to Strike Portions of the Answer and Complaint (D.I.11) is DISMISSED, without prejudice, and with leave to re-file should it become necessary following the stay.

D.Del.,2003.
Alloc, Inc. v. Unilin Decor N.V.
Not Reported in F.Supp.2d, 2003 WL 21640372 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 1814031 (Trial Motion, Memorandum and Affidavit) Defendants' Reply Memorandum of Law in Further Support of their Motion to Transfer Venue to the Eastern District of Wisconsin, Pursuant to 28 U.S.C. 1404(a) (May 23, 2006) Original Image of this Document (PDF)
• 2005 WL 4114532 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply Brief in Support of their Motion to Lift the Stay and Order A Scheduling Conference (Dec. 12, 2005) Original Image of this Document (PDF)
• 2005 WL 4114531 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Opening Brief in Support of

their Motion to Lift the Stay and Order A Scheduling Conference (Nov. 23, 2005) Original Image of this Document (PDF)
• 2003 WL 24839954 (Trial Motion, Memorandum and Affidavit) Brief in Opposition to Plaintiffs' Motion to Lift the Stay and Order a Scheduling Conference (Dec. 8, 2003) Original Image of this Document (PDF)
• 1:03CV00253 (Docket) (Mar. 05, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 2

Westlaw.

Not Reported in F.Supp.2d                                          Page 1
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

C

Briefs and Other Related Documents

KLA-Tencor Corp. v. Nanometrics, Inc.N.D.Cal.,2006.Only the Westlaw citation is currently available.

United States District Court,N.D. California.

KLA-TENCOR CORPORATION, a Delaware corporation, Plaintiff,

v.

NANOMETRICS, INC., a California corporation, Defendant.

**No. C 05-03116 JSW.**

March 16, 2006.

Michael N. Edelman, Michael H. Kalkstein, Ben S. Bedi, Daniel T. McCloskey, Dechert, LLP, Palo Alto, CA, for Plaintiff.

Peter H. Kang, Matthew Laurence McCarthy, Teague I. Donahey, Sidley Austin LLP, San Francisco, CA, for Defendant.

ORDER GRANTING DEFENDANT'S MOTION TO STAY ALL PROCEEDINGS PENDING REEXAMINATION OF PATENTS-IN-SUIT

JEFFREY S. WHITE, J.

**\*1** Now before the Court is Defendant Nanometrics, Inc.'s ("Nanometrics") Motion to Stay Proceedings Pending Reexamination of Patents-in-Suit. Having considered the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court HEREBY GRANTS Defendant's motion and STAYS ALL PROCEEDINGS with respect to all patents-in-suit.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff KLA-Tencor Corporation ("KLA-Tencor"), the assignee of United States Patents Nos. 6,483,580 ("the '580 patent") and 6,590,656 ("the '656 patent"), brought this action claiming that Nanometrics had infringed these patents by manufacturing, offering for sale and/or selling six devices, including but not limited to the Atlas metrology system and/or other metrology systems. (Declaration of Michael N. Edelman in Support of KLA-Tencor's Opposition to Stay

("Edelman Decl."), Ex. A at 2-3; Declaration of Edward V. Anderson in Support of Motion to Stay Pending Reexamination ("Anderson Decl. 1"), Ex. A at 1.) KLA-Tencor then filed a first amended complaint adding a cause of action for infringement of United States Patent No. 6,611,330 ("the '330 patent"). (Edelman Decl., Ex. H.)

This litigation is in the early stages. Both parties have propounded, and one has responded to, their first set of requests for production of documents. (*See* Declaration of Edward V. Anderson in Support of Motion to Stay and *Ex Parte* Motion to Shorten Time ("Anderson Decl. 2"), Ex. 4; *see also* Edelman Decl., Exs. L-N.) The tutorial has been set for August 22, 2006, but no trial date has yet been set. Magistrate Judge Spero has established a schedule for an exchange of discovery plans and a date and time for a discovery conference. Neither claim construction briefing nor discovery has occurred on the '330 patent infringement cause of action that KLA-Tencor has recently added.

On December 21, 2005, the United States Patent & Trademark Office ("PTO") granted Nanometrics's requests for reexamination of the '580 patent and the '656 patent. (Anderson Decl. 2, Exs. 1, 2.) On February 21, 2006, Nanometrics filed a request for reexamination of the '330 patent with the PTO. (Nanometrics's Notice of New Authorities, Ex. A.)

On January 6, 2006, Nanometrics filed the instant motion. Nanometrics moves the Court for a stay of all proceedings, including the litigation as to the '330 patent infringement cause of action, pending the reexamination of the '580 and '656 patents. (Mot. at 2.) KLA-Tencor urges this Court to deny Nanometrics's motion on the following grounds: (1) a stay should not be entered where the reexamination does not implicate all patents-in-suit; (2) considerations of judicial efficiency militate in favor of permitting discovery on the infringement of all patents-in-suit; (3) a stay would substantially prejudice KLA-Tencor and unnecessarily delay the action given the slow pace of PTO reexamination proceedings; and (4) a stay would put KLA-Tencor at a clear tactical disadvant-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

Page 2

age.

ANALYSIS

A. Legal Standards Applicable to a Motion to Stay
Proceedings Pending Reexamination.

*2 The patent reexamination statute provides in pertinent part that "[a]ny person at any time may file a request for reexamination by the [PTO] of any claim of a patent on the basis of any prior art cited under the provisions of section 301." 35 U.S.C. § 302. The PTO must "determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request...." 35 U.S.C. § 303(a). The reexamination statute further provides that "[a]ll reexamination proceedings ... including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch." 35 U.S.C. § 305.

The determination of whether to grant a stay pending the outcome of the PTO's reexamination is soundly within the Court's discretion. See Tap Pharm. Prods. Inc. v. Atrix Labs. Inc., 70 U.S.P.Q.2d 1319, 1320 (N.D.Ill.2004) (citing Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983)). When ruling on such a stay, courts consider several factors: (1) the stage of the litigation, including whether discovery is or will be almost completed and whether the matter has been marked for trial; (2) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; and (3) whether a stay will simplify the issues in question and streamline the trial, thereby reducing the burden of litigation on the parties and on the court. Id.; Methode Elecs., Inc. v. Infineon Techs. Corp., No. 99-21142, 2000 U.S. Dist. LEXIS 20689, at *5-6 (N.D.Cal. Aug. 7, 2000). There is a "liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings." ASCII Corp. v. STD Entertainment, 844 F.Supp. 1378, 1381 (N.D.Cal.1994).

B. The Early Stage of the Litigation Weighs in Favor
of Granting a Stay.

The early stage of a litigation weighs in favor of granting a stay pending reexamination. See Target Therapeutics, Inc. v. SciMed Life Sys., Inc., 33

U.S.P.Q.2d 2022, 2023 (N.D.Cal.1995) (holding that the absence of "significant discovery" or "substantial expense and time ... invested" in the litigation weighed in favor of staying the litigation); see also ASCII Corp., 844 F.Supp. at 1381 (granting stay where parties had undertaken little or no discovery and the case had not yet been set for trial). Here, discovery has just begun. Nanometrics and KLA-Tencor have each propounded their first set of requests for the production of documents, and Nanometrics has responded to KLA-Tencor's first set of requests. (See Anderson Decl. 2, Ex. 4; Edelman Decl., Exs. L-N.) Magistrate Judge Spero just recently laid out a schedule for an exchange of discovery plans. Neither party has conducted any discovery with respect to the '330 patent-in-suit. The tutorial has been set for August 22, 2006, but no trial date has been set. Therefore, the fact that this case is still in the early stages and the parties have not yet conducted "significant discovery" or invested "substantial expense" into the litigation weighs in favor of granting a stay. See Target Therapeutics, 33 U.S.P.Q.2d at 2023.

C. A Stay Will Not Unduly Prejudice KLA-Tencor.

*3 In determining whether to grant a stay, courts also consider any resulting undue prejudice on the nonmoving party. See Methode Elecs., 2000 U.S. Dist. LEXIS 20689, at *7. Granting a stay does not cause the nonmoving party undue prejudice when that party has not invested substantial expense and time in the litigation. Id. KLA-Tencor correctly notes that "the average time for the completion of a reexamination is approximately 18.2 months," excluding appeals. Rohm and Haas Co. v. Brotech Corp., 24 U.S.P.Q.2d 1369, 1372 (D.Del.1992). However, parties having protection under the patent statutory framework may not "complain of the rights afforded to others by that same statutory framework." Pegasus Dev. Corp. v. DirecTV, Inc., 2003 WL 21105073, at *2 (D.Del. May 14, 2003). Nanometrics "is legally entitled to invoke the reexamination process," and the PTO has already determined to reexamine two of the three patents-in-suit. See id. Moreover, if after reexamination the PTO again upholds KLA-Tencor's patents, this will only strengthen KLA-Tencor's rights because Nanometrics's burden of proof becomes more onerous. See id. Under such circumstances, the delay in-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

herent to the reexamination process does not consti-
tute, by itself, undue prejudice. *See id.*

As a result, courts also consider evidence of dilatory
motives or tactics, such as when a party unduly
delays in seeking reexamination of a patent. *Methode
Elecs.*, 2000 U.S. Dist. LEXIS 20689, at *7. KLA-
Tencor has failed to show, beyond the delay implicit
in the reexamination process, how it would be unduly
prejudiced or tactically disadvantaged if this Court
were to grant a stay. In particular, the Court finds no
evidence of dilatory tactics on Nanometrics's part in
seeking reexamination at this early stage of the litiga-
tion. This is not a case where reexamination is sought
on the eve of trial or after protracted discovery. *Cf.
Agar Corp., Inc. v. Multi-Fluid, Inc.*, 983 F.Supp.
1126, 1128 (S.D.Tex.1997) (finding that "courts are
inclined to deny a stay when the case is set for trial
and the discovery phase has almost been com-
pleted"). Rather, KLA-Tencor filed its complaint on
August 1, 2005, the PTO granted Nanometrics's re-
quests to reexamine the '580 and '656 patents on
December 21, 2005, and Nanometrics filed its motion
to stay proceedings on January 6, 2006. (Edelman
Decl., Ex. A at 4; Anderson Decl. 2, Exs. 1, 2.) In ad-
dition, KLA-Tencor filed a stipulation and proposed
order seeking to add the '330 patent on January 26,
2006, and Nanometrics filed a request for reexamina-
tion of the '330 patent on February 21, 2006.
(Nanometrics, Inc.'s Notice of New Authorities, Ex.
A.) This does not evince dilatory motives. Further-
more, KLA-Tencor will be fully compensated for
delays if it prevails at reexamination and trial. *See
Brown v. Shimano Am. Corp.*, 18 U.S.P.Q.2d 1496,
1496 (C.D.Cal.1991). Thus, because a stay will not
unduly prejudice KLA-Tencor, this factor also
weighs in favor of granting a stay.

    D. A Stay Will Simplify the Issues, Streamline the
    Trial, and Reduce the Burden of Litigation on Both
          the Parties and the Court.

*4 The PTO is currently reexamining two of the three
patents-in-suit and reviewing Nanometrics's request
for reexamination of the third patent-in-suit.
(Anderson Decl. 2, Exs. 1, 2; Nanometrics's Notice of
New Authorities, Ex. A.) Statistical information re-
garding reexamination indicates that the PTO con-

firms all claims in approximately 24% of the cases,
cancels all claims in approximately 12% of the cases,
and changes some claims in approximately 64% of
the cases. *Rohm and Haas*, 24 U.S.P.Q.2d at 1372.
These statistics "suggest that in a typical case there is
a substantial probability a reexamination will have a
major impact on the issues to be resolved in the litig-
ation." *Id.* This is because "waiting for the outcome
of the reexamination could eliminate the need for tri-
al if the claims are cancelled or, if the claims survive,
facilitate the trial by providing the court with the
opinion of the PTO and clarifying the scope of the
claims." *Target Therapeutics*, 33 U.S.P.Q.2d at 2023;
*see also Pegasus*, 2003 WL 21105073, at * 1-2
(noting the benefits of granting a stay pending reex-
amination include potentially narrowing the issues,
reducing the complexity and length of trial, alleviat-
ing discovery problems relating to prior art, and en-
couraging settlement or even dismissal if the patent is
declared invalid).

When there are overlapping issues between the reex-
amined patents and other patents in suit, courts have
found staying the entire case to be warranted. In
*Methode*, for example, the court stayed the litigation
of both the reexamined and non-reexamined patents
because the issues regarding the non-reexamined pat-
ent "may be narrowed or amended as a result of the
PTO's decision." *Id.* Moreover, the *Methode* court
stayed the litigation of both the reexamined and non-
reexamined patents because "it appears that there are
overlapping issues" in the infringement action of the
two patents. *Id.* If the court stayed the litigation with
respect to the reexamined patents-in-suit only, duplic-
ative discovery could have resulted because there
were likely to be common documents and witnesses
in the infringement litigation of the two patents. *Id.*

Similarly, here, even though the PTO has not determ-
ined yet whether it will reexamine the '330 patent, a
stay of the entire suit is warranted because the reex-
amination of the '580 and '656 patents may signific-
antly affect the litigation of the '330 patent. First, at
the hearing on the instant motion, KLA-Tencor con-
ceded that it accuses the same Nanometrics products
of infringement of all three patents-in-suit. Second,
Nanometrics argued at the hearing on this matter, and
KLA-Tencor did not dispute, that the only real differ-

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                        Page 4
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)
(Cite as: Not Reported in F.Supp.2d)

ence in discovery would involve the deposition of the different inventor of the '330 patent. Otherwise, as Nanometrics argued, the engineering and sales personnel deposed would be the same for all three patents-in-suit. Third, KLA-Tencor conceded at the hearing that there are overlapping issues between all three patents-in-suit. For example, the "first optics focusing a polarized sample beam of broadband radiation onto the surface of the sample" language of claim 28 of the '330 patent overlaps with the "optics providing a sampling beam of polarized broadband radiation and directing the beam towards the structure at an oblique angle" language of claim 111 of the '580 patent. Therefore, a stay will simplify the issues and streamline the trial, thereby reducing the burden on, and preserving the resources of both the parties and the Court.

*5 Finally, in determining whether to grant a stay of an entire case, courts consider whether there would remain, after the PTO reexamination, issues "completely unrelated to patent infringement" for which a stay would not reduce the burden of litigation on both the parties and the court. *Imax Corp. v. In-Three, Inc.* 385 F.Supp.2d 1030, 1033 (C.D.Cal.2005). If such matters "would continue to be an issue ... a stay would not preserve many resources." *Id.* at 6.

Here, the only claims in the case are for patent infringement. Therefore, the Court finds that there are no issues in the case unrelated to patent infringement for which the PTO's expertise resulting from the reexamination process would not be helpful. Accordingly, the Court finds that a stay of the entire case pending reexamination of the '580 and '656 is warranted.

Therefore, having considered the factors relevant in determining whether to grant a stay pending reexamination, the Court hereby GRANTS Nanometrics's motion to stay all proceedings pending reexamination of the '580 and '656 patents.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Nanometrics's motion to stay pending reexamination of the

'580 and '656 patents. The proceedings are stayed from the date of this Order until further notice. The Court HEREBY ORDERS the parties to submit a joint status report regarding the status of the reexamination proceedings every 120 days, or sooner if the PTO issues a final decision with respect to any of the patents-in-suit, until the stay in this case is lifted.

If the PTO grants Nanometric's application to reexamine the '330 patent and the reexamination proceedings for the '330 patent extend beyond those for the '580 and '656 patents, the Court will entertain a motion extend the stay at that time.

IT IS SO ORDERED.

N.D.Cal.,2006.
KLA-Tencor Corp. v. Nanometrics, Inc.
Not Reported in F.Supp.2d, 2006 WL 708661 (N.D.Cal.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 729833 (Trial Pleading) Defendant Nanometrics, Inc.'s Amended Answer to First Amended Complaint and First Amended Counterclaims (Feb. 23, 2006) Original Image of this Document (PDF)
• 2006 WL 729832 (Trial Pleading) Defendant Nanometrics, Inc.'s Answer to First Amended Counterclaims (Feb. 14, 2006) Original Image of this Document (PDF)
• 2006 WL 435039 (Trial Pleading) First Amended Complaint for Patent Infringement (Jan. 30, 2006) Original Image of this Document (PDF)
• 2006 WL 526502 (Trial Motion, Memorandum and Affidavit) Nanometrics Inc.'s Reply in Support of Motion to Stay Pending Reexamination of Patents-In-Suit (Jan. 27, 2006) Original Image of this Document (PDF)
• 2006 WL 526500 (Trial Motion, Memorandum and Affidavit) Kla-Tencor Corporation's Opposition to Motion to Stay (Jan. 20, 2006) Original Image of this Document (PDF)
• 2006 WL 435038 (Trial Pleading) Defendant Nanometrics, Inc.'s Answer and Counterclaims (Jan. 3, 2006) Original Image of this Document (PDF)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 3

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 2175436 (W.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

**H**

Briefs and Other Related Documents

Lectrolarm Custom Services, Inc. v. Vicon Industries, Inc.W.D.Tenn.,2005.Only the Westlaw citation is currently available.

United States District Court,W.D. Tennessee, Western Division.

LECTROLARM CUSTOM SERVICES, INC., Plaintiff,

v.

VICON INDUSTRIES, INC., et al., Defendants.

No. 03-2330 MA/A.

Sept. 1, 2005.

Gianni Minutoli, Deanna Allen, Dipu A. Doshi, Gary M. Hoffman, John C. Snodgrass, Dickstein Shapiro Morin & Oshinsky, Kenneth Brothers, Laurence E. Fisher, Rachael Lea Leventhal, Washington, DC, Kemper B. Durand, Thomason Hendrix Harvey Johnson & Mitchell, Memphis, TN, for Plaintiff.

James Edward Hanft, Lee A. Goldberg, Michael J. Sweedler, Darby & Darby, Mark I. Koffsky, David W. Whealan, Goodwin Procter LLP, New York, NY, John J. Mulrooney, Crone & Mason, PLC, Earle J. Schwarz, Glankler Brown, PLLC, Douglas F. Halijan, Burch Porter & Johnson, Robert E. Craddock, Jr., Wyatt Tarrant & Combs, Memphis, TN, Douglas C. Doskocil, J. Anthony Downs, John C. Englander, Paul F. Ware, Jr., Goodwin Procter LLP, Boston, MA, Rebecca W. Bacon, Sean W. Gallagher, Steven J. Nachtwey, Alan E. Littmann, Bartlit Beck Herman Palenchar & Scott, Chicago, IL, Albert L. Underhill, Erik G. Swenson, Rachel C. Hughey, Merchant & Gould PC, Minneapolis, MN, for Defendants.

ORDER DENYING DEFENDANT VICON INDUSTRIES, INC.'S MOTION TO STAY

MAYS, J.

*1 Before the court is defendant Vicon Industries, Inc.'s ("Vicon") "Motion to Stay Action Pending Patent Reexamination," filed on behalf of all defendants (the "Defendants") on March 4, 2005. Plaintiff Lectrolarm Custom Systems, Inc. ("Lectrolarm") filed a response on March 22, 2005. Vicon filed a reply brief on April 18, 2005, in which it also requested an oral hearing on the motion. For the following reasons, Vicon's motion to Stay is DENIED and its request for an oral hearing is DENIED.

I. Factual Background

On November 27, 1990, the United States Patent and Trademark Office ("PTO") issued U.S. Patent No. 4,974,088 (the " '088 Patent"), entitled Remote Control Apparatus for a Rotating Television Camera Base, to inventor Takeshi Sasaki. The technology at issue is an apparatus that uses computer memory and digital communication to permit remote control "rotation of a monitoring television camera in the horizontal and vertical directions." U.S. Patent No. 4,974,088, Column 1:6-8. The patent was originally assigned to Maruwa Electronic & Chemical Company. ("Maruwa"). Maruwa assigned the patent to Lectrolarm. Lectrolarm alleges that the defendants have infringed the '088 patent.[FN1]

FN1. Originally there were fourteen defendants; four remain.

On January 28, 2005, Vicon filed in the United States Patent and Trademark Office (the "PTO") a request for reexamination of the '088 Patent. (Def.'s Mem. at 1.) The request for reexamination is based on prior art consisting of printed publications for two products: the VPS1200 system made by Vicon and the SensorVision product made by Sensormatic Electronics Corporation ("Sensormatic"). (Id. at 4.) This prior art was not considered by the PTO when it granted the '088 Patent, although both products, and presumably the publications describing them, have been available for over 15 years. (Pl.'s Resp. at 3.) The prior art products described in these publications are also the subject of two summary judgment motions for invalidity that were filed in this case on September 24, 2004, and November 19, 2004. Both Vicon and Sensormatic contended in letters to Lectrolarm in 2000 that these publications are invalidating prior art. (Id. at 4 (citing letters between the parties' attorneys).)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2005 WL 2175436 (W.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

The PTO granted Vicon's request for reexamination of the '088 Patent. (Def.'s Reply Brief.) The PTO found "a substantial likelihood that a reasonable examiner would consider the teachings of the newly cited prior art important in deciding whether or not the claims are patentable." (Laurenzi Dec., Ex. A at 2.)

The complaint in this case was filed on May 8, 2003. A trial date of September 19, 2005, was set on November 30, 2004. Discovery concerning expert witnesses closed on May 6, 2005, and fact discovery closed on January 17, 2005. Lectrolarm estimates that over $10 million has been spent by the defendants litigating this suit so far. (Pl.'s Resp. at 5.)

## II. Patent Reexamination Background

"Any person at any time may file a request for reexamination by the [Patent] Office of any claim of a patent...." 35 U.S.C. § 302. A reexamination request may only be based on "prior art consisting of patents or printed publications." 35 U.S.C. § 301. "Within three months following the filing of a request for reexamination ... the Director will determine whether a substantial new question of patentability affecting any claim of the patent concerned is raised by the request." 35 U.S.C. § 303(a). "If ... a substantial new question of patentability affecting any claim of a patent is raised, the determination will include an order for reexamination of the patent.... The patent owner will be given ... not less than two months ... within which he may file a statement on such question.... [The person who requested reexamination then has two months to] file and have considered in the reexamination a reply to any statement filed by the patent owner." 35 U.S.C. § 304.

**\*2** If, however, litigation has been stayed for the filing of a reexamination request, the examination following the statement by the patent owner and the reply by the requester "will be expedited to the extent possible." [FN2] M.P.E.P. § 2286. Office actions in these reexamination proceedings will normally set a shorter one-month statutory period for response rather than the two months usually set in reexamination proceedings. *Id.*

FN2. The M.P.E.P. regulations actually state that the reexamination proceedings will be expedited if the request for reexamination indicates that litigation has been stayed. The court assumes that if the PTO is informed that litigation has been stayed after the request for reexamination was filed the examiner will adopt the expedited time table.

"After the times for filing the statement and reply ... have expired, reexamination will be conducted according to the procedures established for initial examination...." 35 U.S.C.A. § 305. The patent owner may appeal ... and may seek court review ... [of] any decision adverse to the patentability of any original or proposed amended or new claim of the patent [as provided by the patent statute for appeal and court review of initial patent examination proceedings]." 35 U.S.C. § 306. "All reexamination proceedings ... including any appeal to the Board of Patent Appeals and Interferences, will be conducted with special dispatch within the Office." 35 U.S.C. § 305. "[W]hen the time for appeal has expired or any appeal proceeding has terminated, the Director will issue and publish a certificate canceling any claim of the patent finally determined to be unpatentable, confirming any claim of the patent determined to be patentable, and incorporating in the patent any proposed amended or new claim determined to be patentable." 35 U.S.C. § 307(a).

"Congress intended the reexamination process to provide an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise." *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426 (Fed.Cir.1988). Reexamination permits "efficient resolution of questions about the validity of issued patents without recourse to expensive and lengthy infringement litigation" and allows the validity of a patent to be "tested in the Patent office where the most expert opinions exist." H.Rep. 1307(I), 96th Cong., 2d Sess. 4, reprinted in 1980 U .S.Code Cong. & Admin. News 6460, 6463.

## III. Analysis

The decision to stay a case pending the conclusion of a patent reexamination is at the discretion of the trial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 2175436 (W.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

court, *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (citing *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). Courts have found that issuing a stay pending the outcome of a reexamination has many advantages, including:

1. All prior art presented to the Court will have been first considered by the PTO, with its particular expertise.

2. Many discovery problems relating to prior art can be alleviated by the PTO examination.

3. In those cases resulting in effective invalidity of the patent, the suit will likely be dismissed.

4. The outcome of the reexamination may encourage a settlement without the further use of the Court.

5. The record of reexamination would likely be entered at trial, thereby reducing the complexity and length of the litigation.

*3 6. Issues, defenses, and evidence will be more easily limited in pre-trial conferences after a reexamination.

7. The cost will likely be reduced both for the parties and the Court.

*See, e.g., Ralph Gonnocci Revocable Living Trust v. Three M Tool & Machine Inc.,* 68 U.S.P.Q.2d 1755, 1757 (E.D.Mich.2003). Thus, reexamination by the Patent Office, "if available and practical, should be deferred to by the courts, especially where the infringement litigation is in the early stages." *Gonnocci,* 68 U.S.P.Q.2d at 1757; *see also Softview Computer Prods., Corp. v. Haworth, Inc.,* 56 U.S.P.Q.2d 1633, 1635 (S.D.N.Y.2000). But, "[p]arties should not be permitted to abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." *Softview,* 56 U.S.P.Q.2d at 1635.

"In determining whether to stay litigation pending reexamination by the PTO, courts generally consider the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party;[FN3] (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Xerox Corp. v. 3Com Corp.,* 69 F.Supp.2d 404, 406-07 (W.D.N.Y.1999); *see also Target Therapeutics, Inc. v. SciMed Life Systems,*

*Inc.,* 1995 WL 20470 (N.D.Cal.1995); *GPAC, Inc. v. DWW Enterprises, Inc.,* 144 F.R.D. 60, 66 (D.N.J.1992); *United Sweetener USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217 (D.Del.1991).

> FN3. The court does not address this factor in the body of the opinion because it is inconclusive. The Defendants argue convincingly that Lectrolarm seeks only money damages so Lectrolarm would not be prejudiced if the trial were delayed. Lectrolarm argues, also convincingly, that because discovery is essentially complete, and the average time for a reexamination is roughly one and a half years, staying the case would require expensive discovery to account for factual developments that occurred during the reexamination. To the extent that this factor weighs in either party's favor it is in Lectrolarm's. Because the court finds that the Defendants delayed requesting reexamination and could have prevented any prejudice to Lectrolarm by requesting reexamination in a more timely fashion, any prejudice to Lectrolarm should be avoided.

The Defendants argue that a stay should be granted based on the second factor: whether a stay will simplify the issues in question and trial of the case. Granting the Defendants' motion could simplify the issues before the court because the PTO could invalidate all the claims. The parties have presented data showing that slightly more than 10% of completed reexaminations requested by a third party result in cancellation of all claims at issue. (Def.'s Mem., Ex. H (Ex Parte Reexamination Piling Data-March 31, 2004).) The data also shows that 30% of completed reexaminations requested by third parties result in confirmation of all claims. (Id.) In slightly fewer than 60% of these types of reexaminations the claims are modified in some way, but not all claims are cancelled. Based on this data, there is roughly a 70% chance that granting a stay will prevent the court from having to consider the effect modifications made by the PTO may have on the court's orders.[FN4]

> FN4. Even if no changes to the claim language result, the issues before the court

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                Page 4
Not Reported in F.Supp.2d, 2005 WL 2175436 (W.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

would be simplified because the PTO's assessment of the prior art in the reexamination request would prevent the court from having to decide parts of the two summary judgment motions based on that prior art. The court, however, would still need to consider the sale or offer-for-sale portions of those motions.

The facts of this case, however, suggest that it is unlikely that the PTO will rule in the Defendants' favor because the request for reexamination appears to be motivated more by a desire for tactical delay than a belief that the prior art cited in the reexamination request is invalidating. If the Defendants had truly believed that this prior art invalidates some or all of the '088 Patent's claims, it seems likely that the Defendants would have requested reexamination one and a half years ago, before spending millions of dollars on litigation. Further, reexamination only deals with invalidity from printed prior art. Unless all claims were invalidated, a result that has a one-in-ten probability, this court would still need to deal with issues concerning other types of prior art, liability, and damages.

*4 Analysis of the third factor, whether discovery is complete and whether a trial date has been set, points towards denying Vicon's motion to stay. At the time the request for reexamination was filed, on January 28, 2005, a trial date of September 19, 2005, had been set on November 30, 2004, and fact discovery had closed on January 17, 2005.[FN5] Thus, Vicon's request for reexamination was filed at the close of fact discovery, over a year and a half after the complaint in this case had been filed and two months after a trial date had been set.

> FN5. The September 19, 2005, trial date will need to be reset. This fact, however, has no bearing on the court's analysis of the third factor considered in deciding whether to stay litigation pending reexamination because the court's main concern is whether the reexamination process is being abused. *See Softview,* 56 U.S.P.Q.2d at 1635. Thus, the relevant trial date is the date set when the reexamination request was filed, not the date

the trial actually occurs.

When a petition for reexamination is filed after a trial date has been set, extensive discovery has been conducted, and the reexamination does not involve newly discovered prior art, courts uniformly refuse to stay the case pending reexamination. *See, e.g., Xerox,* 69 F.Supp.2d 404 (refusing to grant a stay where a request for reexamination was filed one and a half years into a lawsuit, six months before discovery was to close, and there was evidence that the defendant had known of the allegedly invalidating prior art eight months before filing the request); *Galdish v. Tyco Toys, Inc.,* 1993 WL 625509 (E.D.Cal. Sept.15, 1993) (refusing to grant a stay where there was evidence that the party requesting reexamination had known about the prior art in question for six months before filing the reexamination request); *Remington Arms Co., Inc. v. Modern Muzzleloading, Inc.,* 1998 WL 1037920 (M.D.N.C. Dec.17, 1998) (finding that the "most compelling reason for denying the stay" was the "unjustified delay" in requesting reexamination more than three months after learning of the allegedly invalidating prior art); *Output Technology Corp. v. Dataproducts Corp.,* 22 U.S.P.Q.2d 1072 (W.D.Wash.1991)(denying a motion to stay pending reexamination when discovery was scheduled for completion in four months and trial was scheduled in less than nine months); *Accent Designs, Inc. v. Jan Jewelry Designs, Inc.,* 1994 WL 121673, at *3 (S.D.N.Y. Apr.6, 1994) ("in a case such as this, in which multiple opinions have been issued, discovery is well under way and no prejudice to either party is likely to ensue, there is simply no justification for further delay in the action").

The Defendants cite a number of cases for the proposition that stays for reexamination are routinely granted by trial courts after extensive litigation has already occurred. All cases that the defendants cite in support of this proposition, however, are readily distinguishable. In *Gonnocci,* 68 U.S.P.Q.2d 1755, the court granted a stay after extensive discovery had been conducted and a trial date had been set. The court, however, explicitly stated that it could not find that the party seeking reexamination had delayed because nothing in the record indicated when that party had become aware of the allegedly invalidating prior

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                 Page 5
Not Reported in F.Supp.2d, 2005 WL 2175436 (W.D.Tenn.)
(Cite as: Not Reported in F.Supp.2d)

art. *Id. at 1758.* In this case it is undisputed that the Defendants were aware of the prior art cited in their request for reexamination and its relevance to Lectrolarm's claim of infringement at least five years before they filed their request. Similarly, the court's decision to grant a stay one month before trial in *Robert H. Harris Co., Inc. v. Metal Mfg. Co., Inc.,* 19 U.S.P.Q.2d 1786 (E.D.Ark.1991), can be distinguished because the court found that the parties had not participated in protracted or expensive discovery and the prior art cited in the reexamination request was "recently discovered." *Id. at 1788-89.* Likewise, in *Grayling Industries, Inc. v. GPAC, Inc.,* 19 U.S.P.Q.2d 1872 (N.D.Ga.1991), "the prior art on which the petition [for reexamination was] based was uncovered during discovery." *Id. at 1874.* Finally, *Middleton, Inc. v. Minnesota Mining and Mfg. Co.,* 2004 WL 1968669 (S.D.Iowa Aug.24, 2004), is distinguishable because the court's grant of a stay after 8 years of litigation was motivated by the fact that the validity of the patent that was the subject of the reexamination had only recently become an issue in the case.[FN6]

> FN6. The defendants also cite *Snyder Seed Corp. v. Scrypton Systems, Inc.,* 52 U.S.P.Q.2d 1221 (W.D.N.Y.1999). In that case, however, the court granted a stay because "[n]o discovery has been conducted. In fact, no scheduling order has been entered." *Id. at 1224.*

*5 Finally, and most significantly, granting Vicon's motion to stay would impermissibly permit Vicon to abuse the reexamination process. The Defendants were aware of the allegedly invalidating prior art that is central to their request for reexamination long before they actually submitted the request to the PTO. The prior art cited in the reexamination request forms the basis of two summary judgment motions filed with this court on September 24, 2004, and November 19, 2004. In fact, defendants Sensormatic and Vicon alleged in 2000 that this prior art anticipated the '088 Patent. (Pl.'s Resp., Ex. 4, 5 (Letters dated in 2000 from Vicon and Sensormatic respectively alleging that the VPS 1200 Instruction Manual and a brochure for the SensorVision System are prior art that invalidate the '088 Patent).) There is no reason

that Vicon could not have requested a reexamination months or years earlier. Consequently, staying the case at this point in the litigation would permit Vicon to "abuse the process by applying for reexamination after protracted, expensive discovery or trial preparation." *Softview,* 56 U.S.P.Q.2d at 1635.

Not staying the case pending reexamination raises one additional issue: the possibility that this court and the PTO will render contradictory decisions. The Federal Circuit has held that inconsistency between the two forums is not a serious concern:

The awkwardness presumed to result if the PTO and court reached different conclusions is more apparent than real. The two forums take different approaches in determining invalidity and on the same evidence could quite correctly come to different conclusions.... Once again, it is important that the district court and the PTO can consider different evidence. Accordingly, different result between the two forums may be entirely reasonable.

*Ethicon,* 849 F.2d at 1428.

The easier course for the court would be to stay the action. That, however, would reward the Defendants' unexplained, and seemingly unexplainable, delay in filing the reexamination request. As the court in *Enprotech Corp. v. Autotech Corp.,* 15 U.S.P.Q.2d 1319 (N.D.Ill.1990) stated, "[w]e are too far along the road to justify halting the journey while the defendant explores an alternate route. The motion to stay is denied." *Id. at 1320.*

The Defendants have also requested an oral argument on the motion to stay. The law is clear: a decision to grant a stay is at the discretion of the trial court based on the facts before the court. The court's decision to deny the motion to stay is based largely on the fact that the Defendants have alleged for five years that the prior art cited in the reexamination request is invalidating, but waited until the close of fact discovery to request reexamination. This fact is uncontroverted. Letters between the parties in 2000 show that, from the moment a lawsuit was threatened, Vicon and Sensormatic alleged that this prior art could be used as a defense to Lectrolarm's infringement claims. Because the legal issues are clearly identified, and the

Not Reported in F.Supp.2d                                                                                              Page 6
Not Reported in F.Supp.2d, 2005 WL 2175436 (W.D.Tenn.)
**(Cite as: Not Reported in F.Supp.2d)**

key facts are uncontested, the court finds that holding
an oral argument on the motion to stay would be un-
productive.

### VI. Conclusion

*6 For the foregoing reasons, defendant Vicon's mo-
tion to stay on behalf of all defendants is DENIED.

So ORDERED.

W.D.Tenn.,2005.
Lectrolarm Custom Services, Inc. v. Vicon Indus-
tries, Inc.
Not Reported in F.Supp.2d, 2005 WL 2175436
(W.D.Tenn.)

Briefs and Other Related Documents (Back to top)

• 2003 WL 24207029 (Trial Pleading) Complaint
(May. 08, 2003)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# TAB 4

LEXSEE



Positive
As of: Jan 29, 2007

**METHODE ELECTRONICS, INC., Plaintiff, v. INFINEON TECHNOLOGIES
CORP. and OPTICAL COMMUNICATION PRODUCTS, INC., Defendants.**

**NO. C 99-21142 JW**

**UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA, SAN JOSE DIVISION**

**2000 U.S. Dist. LEXIS 20689**

**August 7, 2000, Decided
August 7, 2000, Filed**

**DISPOSITION:** [*1] Defendants' joint motion to stay proceedings as to both the '408 and '468 patents pending reexamination of the '408 patent granted. OCP's request denied without prejudice.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Plaintiff sued defendants for patent infringement. Defendants moved to stay all proceedings with respect to two of the patents at issue, pending reexamination of one of those patents.

**OVERVIEW:** Plaintiff alleged infringement of five patents pertaining to optoelectronic transceiver devices used in computer networks for the conversion of light pulses to electrical pulses and back to light pulses. Defendants denied infringement and alleged that the patents were invalid. In 1998, plaintiff had requested reexamination of one of the patents at issue. At the time of the present motion to stay proceedings, that patent was pending a third reexamination by the United States Patent and Trademark Office (PTO). The court found that it was appropriate to stay the proceedings with respect to two of the patents at issue. The present case was in its incipient stages; no depositions had been taken and no trial date had been set. A stay would allow the parties and the court to take advantage of the PTO's conclusions regarding prior art. The stay would not cause undue prejudice. Granting a stay with respect to only the patent being reexamined would be problematic since another patent at issue involved the same accused device. The issues re-

garding the second patent might be narrowed or amended as a result of the PTO's decision.

**OUTCOME:** Defendants' motion to stay proceedings was granted.

**COUNSEL:** For METHODE ELECTRONICS, INC., Plaintiff: Joseph N. Hosteny, Arthur Anthony Gasey, Paul C. Gibbons, Niro Scavone Haller & Niro, Chicago, IL.

For METHODE ELECTRONICS, INC., Plaintiff: Thomas F. Smegal, Jr., Knobbe Martens Olson & Bear LLP, San Francisco, CA.

For INFINEON TECHNOLOGIES CORPORATION, defendant: Scott D. Baker, Crosby Heafey Roach & May, Los Angeles, CA.

For OPTICAL COMMUNICATION PRODUCTS, INC., defendant: David S. Elkins, Graham & James LLP, David S. Elkins, Squire Sanders & Dempsey L.L.P., Palo Alto, CA.

For OPTICAL COMMUNICATION PRODUCTS, INC., defendant: Nathan Lane, III, Graham & James LLP, Nathan Lane, III, Squire Sanders & Dempsey LLP, San Francisco, CA.

**JUDGES:** JAMES WARE, United States District Judge.

OPINION BY: JAMES WARE

OPINION:

ORDER GRANTING DEFENDANT INFINEON TECHNOLOGIES CORP. AND DEFENDANT OPTICAL COMMUNICATION PRODUCTS, INC.'S JOINT MOTION TO STAY PROCEEDINGS PENDING REEXAMINATION OF THE '408 PATENT

[Docket No. 50]

I. INTRODUCTION

Defendant Infineon Technologies [*2] Corporation now brings a motion to stay all proceedings as to the '408 and '468 patents pending reexamination of the '408 patent. A hearing was held on July 10, 2000. Defendant Optical Communication Products, Inc. joined in and incorporated by reference Infineon's motion. Based on all papers filed to date and the oral argument of counsel, and for the reasons set forth below, the Court grants the Defendants' motion to stay the action as to the '408 and '468 patents pending reexamination of the '408 patent.

II. BACKGROUND

This case involves an action for patent infringement by Plaintiff Methode Electronics, Inc. ("Methode") against Defendants Infineon Technologies Corporation ("Infineon") and Optical Communication Products, Inc. ("OCP"). Methode alleges infringement of five patents pertaining to optoelectronic transceiver devices used in computer networks for the conversion of light pulses to electrical pulses and back to light pulses. Methode alleges that Infineon has infringed U.S. Patent 5,528,408 (" '408 patent") and U.S. Patent 5,864,468 (" '468 patent"). Methode alleges that OCP has infringed the '408 and '468 patents, as well as three additional patents: U.S. Patent 5,717,533 [*3] (" '533 patent"); U.S. Patent 5,734,558 (" '558 patent"); and U.S. Patent 5,879,173 (" '173 patent").

The accused devices at issue in this infringement action are "1x9" optoelectronic transceivers, produced by both Infineon and OCP. The "1x9" optoelectronic transceivers are alleged to infringe both the '408 and '468 patents. Infineon also produces a Small Form Factor ("SFF") transceiver which is alleged to infringe only the '468 patent. Both Defendants deny infringement and allege that the patents are invalid.

The '408 patent issued on June 18, 1996. On June 16, 1998, Methode filed a Request For Reexamination of the '408 patent on the ground that the Examiner failed to consider nine prior art references during the original prosecution. Methode's request for reexamination was granted and assigned to the original '408 Examiner.

On February 5, 1999, the Patent and Trademark Office issued a First Office Action, rejecting all claims (1-16) as obvious under 35 U.S.C. § 103(a). Methode added additional claims 17-25. In a Second Office Action, issued on September 2, 1999, the PTO rejected claims 1-25. Methode then initiated this action against Infineon and OCP on October 15, 1999. Subsequently, [*4] Methode filed another amendment to its request for reexamination. On March 2, 2000, in a Third Office Action, the PTO rejected claims 1-16 for the third time and claims 17-25 for the second time on the ground that the claims are obvious in view of the previously undisclosed prior art references. Methode's response to the Third Office Action was due on June 2, 2000.

Defendants now move for a stay of litigation and all discovery as to the '408 and '468 patents pending the PTO's reexamination of the '408 patent. n1

n1 OCP's joinder covers the same issues stated in Infineon's motion to stay. The Court finds that OCP's joinder is neither untimely nor unfair. Methode's ex parte motion to strike OCP's joinder is hereby denied.

III. STANDARDS

After a patent issues, 35 U.S.C. § 302 authorizes any person at any time to file a request with the PTO for reexamination of any claim of the patent on the basis of prior art patents and publications. Upon receipt of a request for reexamination, [*5] the PTO determines whether the cited prior art raises "a substantial new question of patentability." 35 U.S.C. § 303. If it is determined that a substantial new question of patentability is raised, then a reexamination is granted and the claim or claims in question are examined in the same manner as the claims of a patent application.

The district court has the inherent authority to order a stay pending the outcome of reexamination by the PTO. See Ethicon v. Quigg, 849 F.2d 1422, 1426 (Fed. Cir. 1988). The Court, however, must weigh the competing interests presented by a specific set of facts. See Gladish v. Tyco Toys, 1993 U.S. Dist. LEXIS 20211, 29 U.S.P.Q.2D (BNA) 1718, 1719 (E.D. Cal. 1993). "The court has the inherent ability to grant a stay of proceedings provided that it does not cause undue prejudice or present a clear tactical disadvantage to the non-moving parties." ASCII Corp. v. STD Entertainment USA, Inc., 844 F. Supp. 1378, 1380 (N.D. Cal. 1994) (internal quotations and citations omitted). Other factors considered include the stage of the litigation, whether discovery is or will be almost completed, and [*6] whether the matter has been marked for trial. See id. In determining whether

2000 U.S. Dist. LEXIS 20689, *

to grant a motion to stay, the district court has considerable latitude. See Gould v. Control Laser Corp., 705 F.2d 1340, 1341 (Fed.Cir.1983). "There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of reexamination proceedings." See ASCII Corp., 844 F. Supp. at 1381.

IV. DISCUSSION

A. Staying litigation of the '408 patent

In this case, the relevant factors weigh heavily in favor of staying the proceedings as to the '408 patent pending the PTO's reexamination of the '408 patent. First, this case is in its incipient stages. Methode's complaint was filed less than eight months ago, no depositions have been taken, and no trial date has been set. Second, a stay will allow the parties and the Court to take advantage of the PTO's conclusions regarding prior art. A stay will also further the goal of judicial economy: a PTO determination that some of the claims of the '408 patent are unpatentable may narrow the scope of this litigation. Third, if the PTO ultimately makes a determination that Methode's claims are unpatentable with [*7] respect to the '408 patent, a stay will have eliminated the need for discovery and trial of those issues that pertain solely to the '408 patent. Finally, regardless of the outcome of the reexamination, the PTO's expert opinion will help the Court focus on the pertinent issues.

Granting a stay would not cause undue prejudice. Although "substantial expense and time . . . invested in the litigation . . . would militate against a further delay of disposition," GPAC Inc. v. D.W.W. Enterprises, 144 F.R.D. 60, 23 U.S.P.Q.2D (BNA) 1129, 1133, Methode concedes that its "expenditure of fees to this point have been minimal." Plaintiff's Opposition, p. 5. Methode's argument that a stay of the '408 patent solely with respect to Infineon would be prejudicial is rendered moot since OCP has joined in and incorporated by reference Infineon's motion. A stay of the proceedings with respect to the '408 patent would apply to both Defendants Infineon and OCP.

Furthermore, the Court finds that Defendants did not unduly delay in bringing the present motion, and that there is no reason to believe that Defendants are utilizing any dilatory tactics by requesting the stay. See Guthy-Renker L.L.C. v. Icon Health and Fitness Inc., 1998 U.S. Dist. LEXIS 16553, 48 U.S.P.Q.2D (BNA) 1058, 1061 (C.D.Cal. 1998). [*8]

Therefore, the Court hereby stays all proceedings as to the '408 patent pending the PTO reexamination.

B. Staying litigation of the '468 patent

The Court agrees with both parties that granting a stay with respect to only the '408 patent would be problematic since the '468 patent involves the same accused device. Duplicative discovery may result if only the '408 patent is stayed since there are likely to be common documents and witnesses regarding the infringement litigation of the '408 and '468 patents. For example, staying the '408 patent but not the '468 patent may result in two separate tutorials and two claim construction hearings after the reexamination proceedings.

Finally, although discovery will still take place regarding the same accused product regardless of the reexamination results, the Court finds that the issues regarding the '468 patent may be narrowed or amended as a result of the PTO's decision. Furthermore, it appears that there are overlapping issues in the '408 and '468 infringement actions. Methode noted at the July 10 hearing that all elements in the '408 patent claims are contained in the '468 patent. The Court also finds that Methode will not be unduly [*9] prejudiced by staying the '468 litigation proceedings.

Methode's argument that staying proceedings as to the '468 patent would waste the patent's limited lifetime has no merit. Methode has failed to explain why money damages would not be adequate if it prevails at trial. See Guthy-Renker, 48 U.S.P.Q.2D (BNA) at 1061.

Therefore, the Court hereby grants Defendants' motion to stay proceedings regarding the '468 patent pending the PTO's reexamination of the '408 patent as well.

V. CONCLUSION

Based on the reasons set forth above, the Court grants Defendants' joint motion to stay proceedings as to both the '408 and '468 patents pending reexamination of the '408 patent by the PTO. The Court orders the parties to submit a joint statement by September 11, 2000 informing the Court of the status of the case.

At the July 10 hearing, counsel for OCP requested a stay of proceedings as to the '533, '558, and '173 patents as well. OCP has not submitted papers requesting a stay as to those patents. Therefore, OCP's request is denied without prejudice.

Dated: August 7, 2000

JAMES WARE

United States District Judge

# TAB 5

Westlaw.

Not Reported in F.Supp.2d                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Pegasus Development Corp. v. Directv,
Inc.D.Del.,2003.Only the Westlaw citation is cur-
rently available.
United States District Court,D. Delaware.
PEGASUS DEVELOPMENT CORPORATION and
Personalized Media Communications, L.L.C.,
Plaintiffs
v.
DIRECTV, INC., Hughes Electronics Corporation,
Thompson Consumer Electronics, Inc., and Philips
Electronics North America Corporation, Defendants.
**No. Civ.A. 00-1020-GMS.**

May 14, 2003.

*MEMORANDUM AND ORDER*
SLEET, J.
*1 AND RELATED COUNTERCLAIMS

I. INTRODUCTION

On December 4, 2000, Pegasus Development Cor-
poration ("Pegasus") and Personalized Media Com-
munications, L.L.C. ("PMC") filed a complaint
against several defendants, alleging infringement of
six patents, including U.S. Patent Nos. 4,965,825
("the '825 patent") and 5,335,277 ("the '277 patent").
Since that time, the original scheduling order has
been revised several times. Currently, fact discovery
is scheduled to close on August 22, 2003, and a trial
is scheduled for February of 2004.

On February 4, 2003 and March 14, 2003, respect-
ively, the defendant Thomson Consumer Electronics,
Inc. ("Thomson") filed with the Patent and Trade-
mark Office ("PTO") a request for *ex parte* reexam-
inations of the '825 and '277 patents. The request for
reexamination of the '825 patent was granted on April
10, 2003.^FN1 Presently before the court is a joint
motion by the defendants to stay the litigation
pending the completion of the patent reexaminations
(D.I.459). After careful consideration of the parties'
submissions, and for the reasons detailed below, the
court will grant the motion.

FN1. The court is not yet aware of a de-
cision by the PTO regarding reexamination
of the '277 patent.

II. DISCUSSION

The decision to stay a case is firmly within the dis-
cretion of the court. *Cost Bros., Inc. v. Travelers In-
dem. Co.,* 760 F.2d 58, 60 (3d Cir.1985). This author-
ity applies equally to patent cases in which a reexam-
ination by the PTO has been requested. *Ethicon, Inc.
v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988)
("Courts have inherent power to manage their dock-
ets and stay proceedings, including the authority to
order a stay pending conclusion of a PTO reexamina-
tion.") (internal citation omitted); *see also Emhart In-
dus. v. Sankyo Seiki Mfg.,* 3 U.S.P.Q.2d 1889, 1890
(N.D.Ill.1987) ("[I]n passing the legislation establish-
ing the reexamination proceeding, Congress stated its
approval of district courts liberally granting stays
within their discretion."); *Gould v. Control Laser
Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983) (citing le-
gislative history of reexamination statute). In deter-
ining whether a stay is appropriate, the court is
guided by the following factors: "(1) whether a stay
would unduly prejudice or present a clear tactical dis-
advantage to the non-moving party; (2) whether a
stay will simplify the issues in question and trial of
the case; and (3) whether discovery is complete and
whether a trial date has been set." *Xerox Corp v. 3
Comm Corp.,* 69 F.Supp.2d 404, 406
(W.D.N.Y.1999) (citing cases); *cf. United Sweetner
USA, Inc. v. Nutrasweet Co.,* 766 F.Supp. 212, 217
(D.Del.1991) (stating a similar test).

In this case, there are two plaintiffs, four defendants,
and several counter claimants, as well as six patents
comprising dozens of claims. In addition, the written
submissions in this case have been particularly volu-
minous; the briefing on claim construction alone, for
example, constitutes 576 pages. *See* Report and Re-
commendation of Special Master Regarding Claim
Construction at 2 (citing "copious briefing"). In these
ways, the present suit is quite complex, although, per-
haps, not extraordinarily so. The greater context of
this suit is extraordinary, however: the plaintiffs have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                      Page 2
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

filed more than 300 related patent applications based upon an original patent application filed in 1981 and supplemented in 1987. Together, these applications contain an estimated 10,000 claims. Furthermore, as observed by the Special Master appointed in this case, the 1987 application alone constitutes over 300 columns of patent text and "is, by any measure, an extremely complex document." *Id.* at 2. These related applications may become relevant to the present case in respect to several issues including claim construction, enablement, adequacy of written description, indefiniteness, and inequitable conduct. *See id.* at 21. Thus, in this case, more than many, the court would benefit from a narrowing of the issues.

**\*2** The reexamination process will serve this purpose. For example, the court will gain the benefit of the PTO's particular expertise, in that all prior art presented to the court will have been first considered by that agency. *See Braintree Laboratories, Inc. v. Nephron-Tech. Inc.,* 1997 WL 94237, at \*9 (D.Kan.1997); *Hamilton Indus., Inc. v. Midwest Folding Products Mfg.,* 1990 WL 37642, at \*1-2 (N.D.Ill.1990). Other potential efficiencies resulting from the reexamination process are numerous: (1) many discovery problems relating to the prior art may be alleviated; (2) the record of the reexamination likely would be entered at trial, reducing the complexity and length of the litigation; (3) the issues, defenses, and evidence will be more easily limited in pre-trial conferences following a reexamination; (4) the outcome of the reexamination process may encourage a settlement without further involvement of the court; and (5) if the patent is declared invalid, the suit likely will be dismissed as to that patent. *Id.* These efficiencies will result in a reduced cost of litigation for the parties and more effective utilization of the limited resources of the court. *Id.*

Thus, a stay may result in a simplification or reduction of issues for the court's consideration, or it may dispense with the litigation entirely. These are considerable economies indeed, particularly in this case. Given the involved prosecution history of the various patents-in-suit and hundreds of related patents, the number of claim terms at issue, the inordinate amount of prior art references, and the PTO's conclusion that all of the challenged claims warrant reexamination,

the court finds particular merit in permitting an additional layer of review by the PTO before expending further judicial resources. *See Digital Magnetic Systems, Inc. v. Ainsley,* 213 U.S.P.Q. 290, 290 (W.D.Okla.1982) ("Congress enacted the reexamination procedure to provide an inexpensive, expedient means of determining patent validity which, if available and practical, should be deferred to by the courts."); *Softview Computer Products Corp. v. Haworth, Inc.,* 2000 WL 1134471, at \*3 (S.D.N.Y.2000) ("[T]he grant of a stay will maximize the likelihood that neither the Court nor the parties expend their assets addressing invalid claims."). Furthermore, the court notes that discovery is not complete, and the trial, although scheduled, is some nine months in the future. In light of all these factors, and considering that the reexamination process will proceed "with special dispatch," 35 U.S.C. 305, the court concludes that a stay is the most compelling alternative.

The court recognizes that a stay will cause further delay in a case that has suffered several delays already, as well as considerable distress to the plaintiffs. The court is sensitive to the plaintiffs' right to have their day in court. Nonetheless, for the reasons already mentioned, the court is convinced that a stay is appropriate in this particular case. In addition, the court reminds the plaintiffs that they affirmatively invoked the rights of the patent statute; they can hardly be heard now to complain of the rights afforded others by that same statutory framework. Thomson is legally entitled to invoke the reexamination mechanism, and the PTO has determined that reexamination is warranted. There is nothing facially untoward in that. Moreover, the court notes that if, after reexamination, the plaintiffs' patents are again upheld, the plaintiffs' rights will only be strengthened, as the challenger's burden of proof becomes more difficult to sustain. *See Custom Accessories, Inc. v. Jeffrey-Allan Indus., Inc.,* 807 F.2d 955, 961 (Fed.Cir.1986) (holding that upon reissue, the burden of proving invalidity is 'made heavier') (quoting *Interconnect Planning Corp. v. Feil,* 774 F.2d 1132, 1139 (Fed.Cir.1985)). In this light, and given the particular circumstances of this case, the court cannot find that the prejudice to the plaintiffs is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                        Page 3
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)
(Cite as: Not Reported in F.Supp.2d)

undue.

**\*3** Objecting to a stay, the plaintiffs also have complained of dilatory conduct by the defendants, who, in turn, have accused the plaintiffs of "burying" the PTO in claims and prior art references. *See, e.g.,* Mem. of Plaintiffs in Opp. to Defs.' Joint Motion to Stay (D.I.488) at 5-22 (detailing ways in which the defendants allegedly "have repeatedly acted to complicate and delay the resolution of this litigation"); Defs.' Joint Brief in Support of Motion to Stay (D.I.460) at 4 ("Many of the Harvey patents had vast numbers of cited prior art references of record, effectively burying the most relevant ones.") and 7 ("[I]t appears that PMC sought to 'overwhelm' the PTO and the Courts.").

As a brief response to the accusation of dilatory conduct, the court notes that Thomson's request for reexamination of the '825 patent comprised 2,610 pages; its request regarding the '277 patent totaled 4,736 pages. It is presumed that such an effort requires an enormous expenditure of time and other resources; thus, the timing of Thomson's reexamination requests does not, necessarily, reflect undue delay. Furthermore, as noted above, Thomson was legally entitled to invoke the reexamination procedure when it did. As to the defendants' repeated complaint that the plaintiffs overwhelmed the PTO with prior art references during prosecution of the patents-in-suit, the implications of such alleged conduct will be explored at another time in the litigation, if necessary. At this stage in the process, the court is satisfied that the PTO has found "substantial new questions of patentability" raised by each of the cited references, and has determined that all of the challenged claims of the '825 patent necessitate a reexamination. *See* PTO's Decision Granting Reexamination, Supp. Appendix to Defs.' Joint Brief in Support of Motion to Stay (D.I.467) at 138. Although the court regrets a further delay in the present case, it is confident that the advantages of a stay outweigh the costs.

### III. CONCLUSION

Because the PTO's reexamination of one or more of the patents-in-suit may materially affect the issues in this case, the court will grant the defendants' motion

to stay. The case is stayed pending a disposition of the PTO's reexamination of patent '825, and will be stayed pending reexamination of the '277 patent, if applicable. All pending motions will be denied without prejudice; the parties may refile them following the stay and upon the entry of a new scheduling order, if applicable.

Thus, for the aforementioned reasons, IT IS HEREBY ORDERED that:
1. The defendants' Motion to Stay Pending Reexamination by the U .S. Patent and Trademark Office (D.I.459) is GRANTED. The proceedings are stayed from the date of this order until further notice.
2. The parties shall advise the court of any decision that results from the PTO's reexamination of the '825 patent, and any other decision of the PTO regarding reexamination of any of the other patents-in-suit.
**\*4** 3. The plaintiffs' Motion for Leave to Assert Claim 15 of U.S. Patent 4,965,825 (D.I.399) is DENIED without prejudice.
4. Thomson's Motion to Dismiss or in the Alternative for Summary Judgment (D.I.376) is DENIED without prejudice.
5. Phillips' Motion to Dismiss for Lack of Standing (D.I.396) is DENIED without prejudice.

D.Del.,2003.
Pegasus Development Corp. v. Directv, Inc.
Not Reported in F.Supp.2d, 2003 WL 21105073 (D.Del.)

Briefs and Other Related Documents (Back to top)

• 1:00cv01020 (Docket) (Dec. 04, 2000)

END OF DOCUMENT